**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**(DETROIT)**

In Re:

Dailey Law Firm PC                    Case No.  23-45970-mlo
                                      Chapter 11
           Debtor.                    Hon. Maria L. Oxholm
_____/

## MOTION AND INCORPORATED BRIEF IN SUPPORT BY COURT APPOINTED RECEIVER JOHN POLDERMAN, ESQ. TO CONFIRM AUTOMATIC STAY IS NOT IN EFFECT OR IN THE ALTERNATIVE TO LIFT STAY AS TO THE INTERPLEADER CASE

John Polderman, Esq., as pre-petition Receiver of the assets of the Dailey Law Firm PC ("DLF") (the "Receiver"), by and through the undersigned counsel, hereby moves (the "Motion") this Court for an order determining that the automatic stay provided section 362 of the United States Code (11 U.S.C. §§ 101 *et seq.*) (the "Bankruptcy Code") does not prevent liquidation and distribution of certain funds held in DLF's IOLTA trust account or in the alternative that the stay is lifted as to the disposition allocation and payment of the funds.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334.

2.     This is a core proceeding pursuant to 28 U.S.C. §157(B)(2)(A).

3.     Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409.

# FACTUAL BACKGROUND

4. The Wayne County Circuit Court appointed the Receiver over the assets of DLF, as well as the owner and sole shareholder of the Debtor, Brian Dailey in an interpleader action captioned *The Dailey Law Firm vs. Jody Ingram et. al*., case no. 21-007081 ("Interpleader Case") (See **Exhibit A**, Order Appointing Receiver and **Exhibit B**, Complaint).

5. As part of a settlement of a client's personal injury case, DLF claimed to be holding no-fault insurance and disability proceeds in the amount of $166,135.40 in its client trust account for payment to various medical providers.

6. However, as the initial settlement amount was $600,000, the interpleader defendants asked for an accounting of the settlement proceeds.

7. The initial accounting from The Dailey Law Firm revealed a number of problems:

   a. Under relevant personal injury protection law, Brian Dailey and the Dailey Law Firm cannot take a 1/3 fee on amounts the insurer voluntarily pays to providers. Thus, the Dailey Law Firm's fees should have been calculated by taking the $600,000, subtracting $2,404.68 in case expenses (unproven but plausible) and taking 33% of the rest. That would have been $199,198.44 in fees + $2,404.68 in expenses = $201,603.12 to DLF.

2

b. Instead, he calculated his fee based on an extra $97,146.45 voluntarily paid to pay himself-- an extra $32,382.15. This is wrong.

c. Next, he allegedly paid two of the medical providers $51,500 but ignored all the other providers. Normally, if there isn't going to be enough to pay all providers there is a motion filed under MCL 500.3112 to have the trial court allocate the settlement among the providers, the attorney, and the client. Brian Dailey and DLF didn't do this.

d. Next, instead of paying the providers (so as to protect the client from collections), he paid himself for alleged litigation over a disability insurance dispute. Brian Dailey claimed to have had $11,000 in expenses (not documented) and paid himself that plus $148,379.33 for a total payment of $159,379.33. But his fee, if warranted at all, was not calculated correctly. He paid himself 1/3 of the present value of all his client's future disability payments. But those payments were reduced when his client received Social Security Disability, and pursuant to applicable law (42 USC 406, Section 206(a)(1)), he can't take more than a $7,200 fee on getting such benefits (if he had anything to do with

that at all).

e. In sum, Brian Dailey and DLF paid themselves too much and they took it from a fund that was only there because they didn't pay the providers as they should have.

8.     After numerous machinations, the Wayne County Circuit Court ordered The Dailey Law Firm to pay back the $600,000 settlement and the funds to be placed in escrow (See **Exhibit C**, Order).

9.     Brian Dailey and The Dailey Law Firm refused to return the $600,000, and claimed that at most, only $155,000 of the original $600,000 existed in the IOLTA trust account ("Interpleader Funds") (See **Exhibit D**, Hearing Transcript):

```
1          pay back $600,000.  I've told you a million times
2          that I would adhere to your order if I could, but
3          I've already distributed funds from that fund.
4          So what I have is $155,000.  I've offered last
5          time to pay that as the court order; the Court
6          didn't think that was good enough.  I've done
7          everything I can do.  And to put a receiver on to
```

10.    As a result, the Wayne County Circuit Court appointed the Receiver to investigate and account for the $600,000 in missing client funds.

11.    To date, Brian Dailey and DLF have failed and refused to turnover the

Interpleader Funds.

## Law And Argument

### The IOLTA Funds

12.    Michigan Rules of Professional Conduct section 1.15(c) and (d) provide that:

> (c) When two or more persons (one of whom may be the lawyer) claim interest in the property, it shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

> (d) A lawyer shall hold property of clients or third persons in connection with a representation separate from the lawyer's own property. All client or third person funds shall be deposited in an IOLTA or non-IOLTA account. Other property shall be identified as such and appropriately safeguarded.

13.    Section 541(a) of the Bankruptcy Code states in part that the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." Notwithstanding the scope of the language used in § 541(a), the estate's legal and equitable interests in property are no higher or better than those of the debtor. See *In re Engman*, 395 B.R. 610, 617 (Bankr. W.D. Mich. 2008).

14.    Property interests in bankruptcy are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979).

15.    Funds held by in an attorney's client trust account are not property of the bankruptcy estate. *Alarmex Holdings, LLC v. Gowan (In re Dreier LLP)*, 527 B.R. 126, 134 (S.D.N.Y. 2014).

16.    Debtor's own bankruptcy schedules reflect the fact that it does not claim an interest in any funds held in its IOLTA account (See Dkt # 43, pages 4-5).

17.    Despite not claiming an interest in the funds, and representing to the Wayne County Circuit Court that it was prepared to turn over the Interpleader Funds in the Interpleader Case, DLF has failed to release the Interpleader Funds.

The Interpleader Case

18.    DLF is the Plaintiff in the Interpleader Case.

19.    The Interpleader Case, among other things seeks an adjudication of the rights of various claimants to the Interpleader Funds.

20.    DLF does not have an interest in the Interpleader Funds, therefore the Interpleader Case should proceed so as to allow the Wayne County Circuit Court to adjudicate the rights of the various claimants to the Interpleader Funds.

21.    Section 362(a) of the Bankruptcy Code provides an automatic stay of

(1) "the commencement or continuation . . . to recover a claim against the debtor that arose before the commencement of the case . . .;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title

22.    The Interpleader Case has absolutely no impact on the Debtor. There is no obtaining possession of property of the estate or any act to collect, assess, or recover a claim against Debtor.

23.     Alternatively, to the extent the Court determines that the automatic stay applies to the relief requested by the Receiver, cause exists in this case for the Court to grant the Receiver relief from the automatic stay.

24.     Section 362(d)(1) of the Bankruptcy Code provides that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section . . . for cause." Because the Bankruptcy Code does not define "cause," courts have discretion to determine what constitutes "cause" on a case-by-case basis based on the totality of the circumstances. *In re New York Med. Grp., P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001) (citing *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1286 (2nd Cir. 1990)); *Matter of Gatke Corp.*, 117 B.R. 406, 409 (Bankr. N.D. Ind. 1989) (*citing In re Boomgarden*, 780 F.2d 657, 660 (7th Cir. 1985)). See also *Little Creek Dev. Co. v. Commonwealth Mortgage Corp.* (In re Little Creek Dev. Co.), 779 F.2d 1068, 1072 (5th Cir. 1986) (discussing the inherent balancing required for the court's determination of whether a stay should be lifted under § 362(d)) (internal citations omitted).

25.     As the movant, the Receiver has the initial burden to show that cause exists, but any party opposing the relief has the ultimate burden of disproving the existence of cause. *In re New York Med. Grp., P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001) (citing 11 U.S.C. § 362(g)).

7

26.     Courts have developed a list of factors to consider when a party is seeking relief to continue litigation in another forum, including: (i) whether the relief will result in a partial or complete resolution of the issues; (ii) the lack of any connection with or interference with the bankruptcy case; (iii) whether the foreign proceeding involves the debtor as a fiduciary; (iv) whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; (v) whether the action essentially involves third parties and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (vi) whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee, and other interested parties; (vii) whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); (viii) whether the movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); (ix) the interest of judicial economy and the expeditious and economical determination of litigation for the parties; (x) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (xi) the impact of the stay on the parties and the balance of the hurt. *In re Armstrong & Guy Law Office, LLC*, 2007 WL 4571152, at 1-2 (Bankr. S.D. Miss. Dec. 21, 2007) (citing *In re Curtis*, 40B.R. 795, 799 (Bankr. D. Utah 1984)). See also *In re United Imports, Inc.*, 203 B.R. 162, 166– 167 (Bankr. D. Neb.1996) (considering (i)

judicial economy; (ii) trial readiness; (iii) the resolution of preliminary bankruptcy issues; (iv) the creditor's chance of success on the merits; (v) the cost of the defense or other potential burden to the bankruptcy estate; and (vi) the impact of the litigation on other creditors, in the context of a request to continue a non-bankruptcy judicial action).

27.    Not all factors will be relevant in every case. *Armstrong*, 2007 WL 4571152, at 2 (citing *In re Cook*, 232 B.R. 554, 557 (Bankr. D. Conn. 1999)). Additionally, these factors need not be assigned equal weight, and only those factors relevant to the particular case need to be considered. *In re U.S. Brass Corp.*, 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994) (citing *In re Keene Corp.*, 171 B.R. 180 (Bankr. S.D.N.Y. 1994)).

28.    In the context of the pending Interpleader Case in the Wayne County Circuit Court, the foregoing factors weigh heavily in favor of this Court granting the Receiver's request.

29.    First, rulings by the State Court would result in a resolution of the disposition of the Interpleader Funds and bring closure to a case that has been ongoing for several years.  It is time for the complete resolution of this issue for the claimants to the funds.

30.    Second, a continuation of the Interpleader Case would have absolutely no impact on the Debtor or this action.  While there have been assertions, pre-

bankruptcy, that a counter claim could be filed against DLF in the Interpleader Case, the Receiver is simply proposing that the stay be lifted to allow the disposition and allocation of the funds. To the extent that there are claims or counterclaims against DLF, those would continue to be stayed. Accordingly, allowing the Wayne County Circuit Court to rule on the disposition and allocation of the Interpleader Funds would have no impact on this case.

31.    Third, the Interpleader Case does arguably involve Debtor as a fiduciary as he was holding funds on behalf of his clients. However, to the extent those funds are turned over to the Receiver, this issue is moot and the Debtor is only functioning as a trustee or custodian of the Interpleader Funds.

32.    Fourth, allowing the Interpleader Case to continue, subject to the conditions outlined herein, would not prejudice the interests of creditors or any other interested parties.

33.    Fifth, the allocation and distribution of the Interpleader Funds would not result in any sort of judicial lien avoidable by Debtor under section 522(f) of the Bankruptcy Code. No lien would be created at all.

34.    Sixth, judicial economy would best be served by allowing the Wayne County Circuit Court to administer and determine the ultimate recipients of the Interpleader Funds. There is no reason the Wayne County Circuit should not go forward with ruling on the ultimate recipients of the Interpleader Funds and

determine their respective rights.

35. Based on the foregoing factors, there is good reason to grant the Receiver's requested relief and allow to allow the Interpleader Case to continue to allow the Wayne County Circuit Court to hear motions and enter orders as to the disposition, allocation and payment of the Interpleader Funds.

**<u>Conclusion</u>**

**WHEREFORE** the Receiver respectfully requests that an Order be entered confirming that the automatic stay is not in effect and that the Interpleader Funds be turned over to the Receiver for administration in the Interpleader Case and that the Interpleader Case continue to allow the Wayne County Circuit Court to hear motions and enter orders as to the disposition, allocation and payment of the Interpleader Funds.. A proposed order is attached hereto as **Exhibit E**.

Respectfully submitted,

**SIMON PLC ATTORNEYS & COUNSELORS**

/s/ *John Polderman*
John Polderman (P65720)
*Court Appointed Receiver*
363 W. Big Beaver Road, Suite 410
Troy, MI 48084
Phone: 248-720-0290
jpolderman@simonattys.com

Dated: July 26, 2023

# EXHIBIT "A"

DAILEY LAW FIRM, PC,

      Plaintiff/Counter-Defendant

v.

MICHIGAN SPINE AND PAIN,              Case No. 21-007081-CZ
      Defendant/Counter-Plaintiff

                                      Hon. Adel Harb

AND

JODY INGRAM; INTEGRATED COUNSELING
SERVICES; SUMMIT PSYCHIATRIC SERVICES;
CAPS CONSULTINC, L.L.C.; TOTAL TOXICOLOGY;
MED TRUST L.L.C.; OPEN MRI OF LIVONIA;
AMERICAN SPECIALTY PHARMACY D/B/A ASP
CARES; MI IMAGING; PAIN ASSOCIATES OF
MICHIGAN; CRAIG PEPPLER, D.O.; HENRY FORD
HEALTH SYSTEM; BLUE CROSS BLUE SHIELD
OF MICHIGAN; HEALHCARE IMAGING PARTNERS;
KRANS REHAB, L.L.C.; SPECTRUM REHABILITATION;
ASSOCIATED ORTHOPEDICS OF DETROIT; MICHIGAN
SPINE AND PAIN; MICHIGAN NEURO OPTHALMOLOGY;
BINSON'S HOME HEALTHCARE; LABCORP;
PERFORMANCE ORTHO; METRO DETROIT
ENDOCRINOLOGY; MICHIGAN CRNAS STAFFING,
LLC; SUSAN NELSON; ATI PHYSICAL THERAPY,

      Defendants

AND


MICHIGAN SPINE AND PAIN, a DBA of
MICHIGAN REHABILITATION PHYSICIANS, PLC,

      Counter/Third Party Plaintiff
v.

BRIAN T. DAILEY,

      Third Party Defendant

21-007081-CZ FILED IN MY OFFICE    Cathy M. Garrett    WAYNE COUNTY CLERK    6/26/2023 2:34 PM    Deborah Royal

Brian T Dailey (39945)
Eric C Hoort (P84656)
William D Savage (P82146)
**THE DAILEY LAW FIRM, PC**
*Attorneys for Plaintiff*
36700 Woodward Ave., Suite 107 Bloomfield Hills, MI 48304
P: 313-640-1111 | F: 313-640-9999

**STARK REAGAN**
By: Peter L. Arvant (P52809)
*Attorney for Defendant Total Toxicology*
1111 W. Long Lake Avenue Suite 202
Troy, MI 48098
T: 248-641-9955
F: 248-641-9921

Elizabeth Downey
**ELIZABETH A. DOWNEY, PLLC**
*For CRAIG PEPPLER, DO*
30445 Northwestern Highway, Suite 250
Farmington Hills, MI 48334
248-539-7407

Robert S. Drazin (P23707)
**DRAZIN & ASSOCIATES**
*Attorney for Jody Ingram*
23855 Northwestern Highway
Southfield, MI 48075
248-948-9696

Jonathan A. Green (P51461)
**GREEN & GREEN, PLLC**
*Attorneys for Michigan Spine & Pain* 30300
Northwestern Highway, Suite 250
Farmington Hills, MI 48334-3475
248-932-0500

Ziyad Ihsan Hermiz (P72236)
**VARNUM, LLP**
*Attorney for M1 Imaging*
260 Brown Street, Suite 160
Birmingham, MI 48009-6222
248-567-7800

Amerique Philyaw Dockery (P79496)
**ASSISTANT GENERAL COUNSEL BCBS MICHIGAN**

2

600 Lafayette Blvd., Mail Code 1925
Detroit, MI 48221
313 653 7006

Phillip A Jaffe (P25997)
*Attorney for Open MRI of Livonia*
P.O. BOX 25092
West Bloomfield, MI 48325-0902
248 224 1463

Bruce K. Panzer (P39913)
**BRUCE K. PAZNER, PC**
*Attorney for Michigan Neuro*
15200 E. Jefferson Ave, Suite 104
Grosse Pointe Park, MI 48230-2055
313 822 6097

Tim Sulolli (P58798)
**GOODMAN ACKER, P.C.**
*Attorney for Krans Rehab*
17000 W. 10 Mile Road, 2nd Floor
Southfield, MI 48075
(248) 483-5000

_____/

## ORDER APPOINTING COURT APPOINTED RECEIVER

At a session of said Court held on __6/26/2023_____,
in the County of Wayne, State of Michigan

Present: Hon. Adel Harb

This matter having come before the Court pursuant to Defendant Ingram's Motion

for Entry of Order compelling Plaintiff Dailey Law Firm, PC and Third party Defendant

Brian Dailey, individually to show cause why they should not be held in contempt of Court

for failure to comply with Court orders dated February 27, 2023, and May 12, 2023, both

of which require Dailey and the Dailey Law firm to interplead the sum of Six Hundred

Thousand Dollars ($600,000.00) into an escrow account created by Robert S. Drazin,

said account to be under the control of the Court (hereinafter referred to as "the Court's

Orders"); Dailey and the Daily Law firm having failed to comply with this Court's orders

3

regarding the same, by failing to interplead any funds; a request having been made by Defendants in this matter for the appointment of a Receiver for purposes of gaining compliance with this Court's orders, and the Court being otherwise informed as to the premises:

IT IS HEREBY ORDERED that JOHN W. POLDERMAN, ESQ., 363 West Big Beaver Rd., #410, Troy MI 48084 ("Receiver"), is hereby authorized to act with full powers over the interests in personal, real, mixed and business assets ("assets") of Brian T. Dailey, Individually, and the Dailey Law Firm, PC. wherever said assets are situated, for purposes of enforcement of this Court's Orders of February 27, 2023 and May 12, 2023.

<u>AUTHORITY OF RECEIVER</u>

IT IS HEREBY FURTHER ORDERED that the Receiver is hereby granted all powers and authority conferred by statutes and case law, including but not limited to MCL 554.1011 et. seq., to control, sell, encumber, take possession of, lease or liquidate said personal, real, mixed and business assets of Brian T. Dailey, Individually, and the Dailey Law Firm, PC in order to gain compliance with the Court's orders of February 27, 2023 and May 12, 2023.

IT IS HEREBY FURTHER ORDERED that the Receiver shall deposit into a fiduciary checking account any and all monies, cash, funds, etc. from the liquidation of the personal and interests in business assets of Brian T. Dailey, Individually, and the Dailey Law Firm, PC, and that the Receiver shall not disburse said without an Order of this Court.

IT IS HEREBY FURTHER ORDERED that the Register of Deeds shall accept a certified copy of this Order for recording, against any real property in which the Receiver

4

determines that Brian T. Dailey, Individually, and the Dailey Law Firm, PC has an interest in.

IT IS HEREBY FURTHER ORDERED that responsibility for the Receiver's costs and fees are solely the responsibility of Brian T. Dailey, Individually, and the Dailey Law Firm, PC.

IT IS HEREBY FURTHER ORDERED that the Receiver, while exercising his duties, is deemed a ministerial officer of this Court whose jurisdiction over the assets named in this Order shall be the same as the Court itself. *See Cohen v Bologna,* 52 Mich App 149; 216 NW2d 586 (1974). No action, suit, proceeding, claim, or demand arising from, in connection with, or relating to any of the assets and/or in the course of acting in such court-appointed capacity shall be pursued against the Receiver by any party or non-party without an allegation that the Receiver has acted in bad faith and without first obtaining leave of this Court. *See In re Motion to Sue Receiver of Venus Plaza Shopping Center,* 228 Mich App 357; 579 NW2d 99 (1998).

<u>THE RECEIVERSHIP ESTATE</u>

IT IS HEREBY FURTHER ORDERED that the Receiver shall be empowered, but not obligated to:

(a)     Preserve, hold, and manage all receivership assets, and perform all acts necessary to preserve the value of those assets, to prevent any loss, damage, or injury;

(b)     Prevent the withdrawal or misapplication of funds;

(c)     Initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal, or foreign court necessary to preserve or increase the assets of either party or to carry out her duties pursuant to this Order;

5

(d)     Choose, engage, and employ realtors, attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

(e)     Issue subpoenas to obtain documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate; and

(f)     Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of this Court, or exercising the authority granted by this Order.

## RESTRAINT ON TRANSFER OF PROPERTY

IT IS HEREBY FURTHER ORDERED that except as otherwise ordered by this Court, the Brian T. Dailey, Individually, and the Dailey Law Firm, PC and any and all persons acting in concert with him or on his behalf, are restrained and enjoined from directly or indirectly transferring, selling, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning, concealing, dissipating, converting, withdrawing, or otherwise disposing of the assets, except as otherwise ordered by this Court. This includes disbursement of any settlement fund proceeds for any ongoing litigation for cases being handled by the Brian T. Dailey, Individually, and the Dailey Law Firm, PC, excepting the client's share and/or any lienholders.

IT IS HEREBY FURTHER ORDERED that Brian T. Dailey, Individually, and the Dailey Law Firm, PC and all persons or entities who receive notice of this Order by personal service or otherwise, are restrained and enjoined from directly or indirectly destroying, mutilating, erasing, altering, concealing, or disposing of, in any manner,

6

directly or indirectly, any documents that relate to the business practices or business or personal finances of Brian T. Dailey, Individually, and the Dailey Law Firm, PC

<u>BOND OF RECEIVER</u>

IT IS HEREBY FURTHER ORDERED that pursuant to MCR 2.622(C)(1) and (G), bond shall be a personal bond based upon consideration of the following, but not limited to, the following:

1.      The value of the receivership estate, if known;

2.      The amount of cash or cash equivalents expected to be received into the receivership estate;

3.      The amount of assets in the receivership estate on deposit in insured financial institutions or invested in US treasury obligations;

4.      Whether the assets in the receivership estate cannot be sold without further order of the Court;

5.      If the Receiver is an entity, whether the Receiver has sufficient assets or acceptable errors and omissions insurance to cover any potential losses or liabilities of the receivership estate;

6.      The extent to which any secured creditor is under-secured;

7.      Whether the receivership estate is a single parcel of real estate involving few trade creditors; and

8.      Whether parties have agreed to a nominal bond.

<u>RECEIVER'S LIEN</u>

IT IS HEREBY FURTHER ORDERED that the Receiver shall be authorized to record a claim of interest against any real and/or personal property in which Brian T. Dailey, Individually, and the Dailey Law Firm, PC retains a fee simple interest in and the

7

recordation of the Receiver's claim of interest shall constitute notice of the Receiver's lien for any of the Receiver's unpaid fees and costs.

<u>RETENTION OF JURISDICTION</u>

IT IS HEREBY FURTHER ORDERED that the balance of any Judgment or orders of this Court previously entered shall remain in full force and effect and this Court retains jurisdiction of this matter for all purposes.

IT IS SO ORDERED.

/s/ Adel A. Harb   6/26/2023
_____
CIRCUIT COURT JUDGE

# EXHIBIT "B"

DAILEY LAW FIRM, PC.

                Plaintiff,

                                            Case No.: 21        CZ
                                              Honorable:

vs.

JODY INGRAM; INTEGRATED COUNSELING
SERVICES,; SUMMIT PSYCHIATRIC SERVICES;
CAPS CONSULTING, L.C.C.; TOTAL
TOXICOLOGY ;MED TRUST L.L.C.;
OPEN MRI OF LIVONIA; AMERICAN
SPECIALTY PHARMACY D/B/A ASP CARES;
M1 IMAGING; PAIN ASSOCIATES OF
MICHIGAN; CRAIG PEPPLER, D.O.
HENRY FORD HEALTH SYSTEM;
BLUE CROSS BLUE SHIELD OF MICHIGAN;
HEALTHCARE IMAGING; HEALTHCARE
IMAGING PARTNERS; KRANS REHAB, L.L.C.;
SPECTRUM REHABILITATION; ASSOCIATED
ORTHOPEDICS OF DETROIT; MICHIGAN
SPINE AND PAIN; MICHIGAN NEURO
OPTHALMOLOGY; BINSON'S HOME
HEALTHCARE; LABCORP; PERFORMANCE
ORTHO; METRO DETROIT ENDOCRINOLOGY;
MICHIGAN CRNAS STAFFING, LLC;
SUSAN NELSON; ATI PHYSICAL THERAPY

                Defendants.

---

DAILEY LAW FIRM, PC
Brian T. Dailey (P39945)
Eric C. Hoort (P84656)
Attorneys for Plaintiff
63 Kercheval Avenue, Suite 215
Grosse Pointe Farms, Michigan 48236
T: (313) 640-1111
F: (313) 640-9999
Brian@DaileyLawyers.com
Eric@daileylawyers.com

---

Document received by the MI Wayne 3rd Circuit Court.

*There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.*

*/s/ Brian Thomas Dailey (P39945*
Brian Thomas Dailey (P39945)

## COMPLAINT

## GENERAL ALLEGATIONS PARTIES JURISDICTION AND VENUE

NOW COMES Plaintiff, **DAILEY LAW FIRM, PC,** and for its complaint states:

1. Dailey Law Firm, PC is a Michigan Law Firm organized under the laws of the State of Michigan as a Professional Corporation with its principal place of business in the City of Grosse Pointe Farms, County of Wayne, and State of Michigan.

2. That each and every one of the Defendants, not including Jody Ingram (Ingram), or Susan Nelson (Nelson) are business organizations which have done business in the City of Detroit County of Wayne State of Michigan and claim to have provided medical, transportation and/or financial services to or for the benefit of Ingram for her care recovery and rehabilitation from injuries sustained in an auto collision.

3. That Ingram at all times relevant was and is still believed to be a resident of the county of County of Oakland and State of Michigan whose last known address is 2068 Orpington Drive, Troy, MI 48083.

4. That Nelson, at all times relevant, was and continues to be a resident of the County of Wayne and State of Michigan whose last known address is 650 Light Tower Drive, Bellville, MI 48111

5. That this Honorable Court has subject matter jurisdiction of this case since the amount in controversy is in excess of $25,000.00.

Document received by the MI Wayne 3rd Circuit Court.

6. That this honorable Court has personal jurisdiction over the parties to this action as all of them either reside or do business in the City of Detroit, County of Wayne and State of Michigan.

## COUNT I

## FACTUAL ALLEGATIONS

7. Plaintiff restates all allegations contained in paragraphs 1 – 6 above as though fully stated herein.

8. That on April 29, 2016 Ingram was in a vehicle travelling eastbound on Big Beaver Road when she collided with a car stopped at light ahead of her causing significant collision damage to both vehicles.

9. That Ingram sustained injury as result of the collision that included a severe and debilitating traumatic brain injury.

10. That defendants listed above claim to have provided services to Ingram for her care recovery and rehabilitation from her injuries from the collision.

11. That FRANKENMUTH MUTUAL INSURANCE COMPANY was the no fault insurance carrier in the nearest priority and thus was required to provide no fault benefits to Ingram including allowable expenses, work loss reimbursement and replacement services.

12. That FRANKENMUTH MUTUAL INSURANCE COMPANY did not readily nor timely make payments of Ingram's no-fault benefits so Ingram Retained Plaintiff, Dailey Law Firm, PC to pursue FRANKENMUTH MUTUAL INSURANCE COMPANY to compel payment of the no fault benefits at issue and to pursue CIGNA to enforce and compel

Document received by the MI Wayne 3rd Circuit Court.

payment of long-term disability benefits that had been cut off by CIGNA wrongfully and without Justification.

13. That Plaintiff filed a complaint on behalf of Ingram against FRANKENMUTH MUTUAL INSURANCE COMPANY in the Wayne County Circuit Court bearing Wayne County Circuit Court Case No. in 17-003226-NF and assigned to the Honorable Patricia Perez Fresard.

14. That June 21, 2018 the parties reached a settlement of the no fault claims.

15. That on or about August 14, 2020, Cigna capitulated to the demands by Counsel undersigned base upon the evidence presented by Counsel undersigned and reversed the earlier cut off of benefits and then reinstated benefits.

16. That after deduction expenses incurred by and Attorney Fees earned by Dailey Law Firm, PC in both matters i.e. No Fault (Frankenmuth) and LTD (CIGNA) incurred by Dailey Law Firm, PC there remains the sum of $166,135.40 in the Dailey Law Firm PC IOLTA for distribution as the Court may see fit and just.

17. That presently the amount of funds remaining for distribution is not enough to cover all claims in full.

18. It is believed that the outstanding claims are more than $275,000.00 and that the remaining funds should return approximately 50% payment for the outstanding bills, assuming that all bills have been revealed.

## COUNT II – DISTRIBUTION PURSUANT TO MCL 500.3112

19. Plaintiff restates all allegations contained in paragraphs 1 – 18 above as though fully stated herein.

Document received by the MI Wayne 3rd Circuit Court.

20. That there is substantial doubt about the proper person to receive the benefits or the proper apportionment among the persons entitled to the benefits.

21. Pursuant to MCL 500.3112 this Honorable Court has authority to designate the payees and make an equitable apportionment, taking into account the relationship of the payees to the injured person and other factors as the court considers appropriate.

## COUNT III – PETITION FOR INTERPLEADER

22. Plaintiff restates all allegations contained in paragraphs 1 – 21 above as though fully stated herein.

23. That MCR 3.603(A) (1) states in relevant part as follows: Persons having claims against the Plaintiff may be joined as Defendants and required to interplead when their claims are such that the Plaintiff is or may be exposed to double or multiple liability. It is not a ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical, but are adverse to and independent of one another, or that the plaintiff denies liability to any or all of the claimants in whole or in part.

24. That Dailey Law Firm, PC has expended time and money in filing this action for interpleader and will continue to expend additional time and money in litigating this interpleader action to its natural conclusion and Dailey Law Firm, PC is entitled to receive attorney fees and reimbursement of expenses incurred in this action

WHEREFORE, Plaintiff Dailey Law Firm, PC prays this Honorable Court enter an order providing the following relief:

Document received by the MI Wayne 3rd Circuit Court.

A. Enter an order to distribute the remaining funds among the various Defendant/Claimants pursuant to MCL 500.3112 or in the alternative order the following relief:

B. That this Honorable Court enter an order for the safe keeping of the remaining funds held in the Dailey Law Firm, PC IOLTA account by either requiring payment into the Court or by requiring the funds be held in the Dailey Law Firm, PC IOLTA account pending final resolution of all liens against the proceeds of the settlement referred to above.

B. That **Interpleading** Plaintiff then be discharged from any further liability to the **Interpleaded** Defendants in this matter, including but not limited to responsibility for costs, interest, or attorney fees above.

C. That the **Interpleaded** Defendants in this matter then be required to **interplead** their respective claims to these proceeds within 30 days of their receipt of service;

D. That Interpleading Plaintiff be awarded costs and reasonable attorney fees pursuant to MCR 3.603(E).

DAILEY LAW FIRM, PC

BY: /S/ BRIAN THOMAS DAILEY
Brian T. Dailey (P39945)
Attorneys for Plaintiff
63 Kercheval Avenue, Suite 215
Grosse Pointe Farms, Michigan 48236
T: (313) 640-1111
F: (313) 640-9999
Brian@DaileyLawyers.com

Date: June 11, 2021

Document received by the MI Wayne 3rd Circuit Court.

# EXHIBIT "C"

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

DAILEY LAW FIRM, PC,

Plaintiff,

v.                                                    Case No. 21-007081-CZ
                                                      Hon. Adel A. Harb
JODY INGRAM; INTEGRATED COUNSELIING
SERVICES; SUMMIT PSYCHIATRIC SERVICES;
TOTAL TOXICOLOGY; MED TRUST L.L.C.; OPEN MRI OF LIVONIA;
AMERICAN SPECIALTY PHARMACY D/B/A ASP
CARES; MI IMAGING; PAIN ASSOCIATES OF
MICHIGAN; CRAIG PEPPLER, D.O.; HENRY FORD
HEALTH SYSTEM; BLUE CROSS BLUE SHIELD
OF MICHIGAN; HEALHCARE IMAGING PARTNERS;
KRANS REHAB, L.L.C.; SPECTRUM REHABILITATION;
ASSOCIATED ORTHOPEDICS OF DETROIT; MICHIGAN
SPINE AND PAIN; MICHIGAN NEURO OPTHALMOLOGY;
BINSON'S HOME HEALTHCARE; LABCORP;
PERFORMANCE ORTHO; METRO DETROIT
ENDOCRINOLOGY; MICHIGAN CRNAS STAFFING,
LLC; SUSAN NELSON,

Defendants.

| | |
|---|---|
| DAILEY LAW FIRM, PC<br>BRIAN T. DAILEY (P39945)<br>WILLIAM DANAHER SAVAGE (P82146)<br>ERIC C. HOORT (P84656)<br>Attorneys for Plaintiff<br>63 Kercheval Ave., Ste. 215<br>Grosse Pointe Farms, MI 48236<br>(313) 640-1111<br>Brian@DaileyLawyers.com<br>Eric@DaileyLawyers.com | GREEN & GREEN, PLLC<br>JONATHAN A. GREEN (P51461)<br>Attorney for Defendant, Michigan Spine<br>and Pain<br>30300 Northwestern Hwy., Ste. 250<br>Farmington Hills, MI 48334<br>(248) 932-0500<br>jgreen@greenandgreenpllc.com |
| ROBERT S. DRAZIN (P23707)<br>RAVID AND ASSOCIATES, P.C.<br>Attorney for Defendant Ingram<br>23855 Northwestern Hwy.<br>Southfield, MI 48075<br>(248) 948-9696 / (248) 948-5055 Fax<br>bobd@drazinpc.com | DYLAN E. STEC (P82291)<br>Attorney for Blue Cross Blue Shield<br>600 East Lafayette Blvd., Suite 1925<br>Detroit, MI 48226<br>(313) 763-8239 / (877) 277-1143 Fax<br>dstec@bcbsm.com |

1

ELIZABETH A. DOWNEY (P37036)
ELIZABETH A. DOWNEY, PLLC
Attorney for Defendants Craig Peppler,
D.O. and Pain Associates of Michigan
30445 Northwestern Hwy., Suite 250
Farmington Hills, MI 48334
(248) 539-7407/ (248) 419-3593
attylizdowney@aol.com

PHILIP A. JAFFE (P25997)
Attorney for Defendant Open MRI of Livonia
P.O. Box 25092
West Bloomfield, MI 48325
(248) 224-1463/ (248) 593-3574 Fax
Pjaff50@aol.com

PETER L. ARVANT (P52809)
STARK REAGAN
Attorney for Defendant Total Toxicology
1111 W. Long Lake Ave., Suite 202
Troy, MI 48098
(248) 641-9955 / (248) 641-9921 Fax
parvant@starkreagan.com

TIM SULOLLI (P58798)
GOODMAN ACKER, P.C.
Attorney for Krans Rehab
17000 W. 10 Mile Road, 2nd Floor
Southfield, MI 48075
(248) 483-5000
tsulolli@goodmanacker.com

KEVIN S. GREEN (P67515)
BASHORE GREEN LAW GROUP
Attorney for Michigan CRNA Staffing, LLC
17 S. Saginaw Street
Pontiac, MI 48342
(586) 803-0500 / (586) 803-0501 Fax
kevin@bglaw.com

BRUCE K. PANZER (P39913)
BRUCE K. PANZER, PC
Attorney for Michigan Neuro
15200 E. Jefferson Ave., Suite 104
Grosse Pointe Park, MI 48230
(313) 822-6097
bruce@panzerlaw.com

ZIYAD IHSAN HERMIZ (P72236)
VARNUM, LLP
Attorney for MI Imaging
260 Brown Street, Suite 160
Birmingham, MI 48009
(248) 567-7800
zihermiz@varnumlaw.com

---

## ORDER GRANTING DEFENDANT INGRAM'S MOTION TO INTERPLEAD FUNDS AND OTHER RELATED RELIEF

At a session of said Court held this ___5/12/2023___

Present: Hon Adel Harb

This matter having come before the Court pursuant to Defendant Ingram's Motion to Interplead Funds; briefs having been filed, and oral argument having been heard, and the Court being otherwise informed as to the premises:

2

RECEIVED by MCOA 6/2/2023 10:08:51 PM

**IT IS HEREBY ORDERED** that Plaintiff Dailey Law Firm, PC and Third-Party Defendant Brian T. Dailey shall pay interplead the total sum of six hundred thousand dollars ($600,000.00), as set forth below:

**IT IS HEREBY FURTHER ORDERED** that said funds shall be delivered to Attorney Robert S. Drazin at his above-listed address in certified funds no later than 5:00 p.m. on May 22, 2023.

**IT IS HEREBY FURTHER ORDERED** that said funds shall thereafter be deposited into an escrow account to be created by Mr. Drazin for the purpose of holding these funds, and kept in said account until further order of the Court.

**IT IS HEREBY FURTHER ORDERED** that Mr. Drazin, as Counsel for Defendant Ingram, shall file notice to this Court upon receipt of the funds, and shall further file notice upon placing the funds have been deposited into an escrow account, and provide information to this Court as to the name of the bank and last 4 digits of the account number.

**IT IS HEREBY FURTHER ORDERED** that no withdrawals shall be taken from said escrow account, until so ordered by this Court.

This is not a final order and does not close this case.

/s/ Adel A. Harb   5/12/2023
_____
Hon. Adel Harb

RECEIVED by MCOA 6/2/2023 10:08:51 PM

3

# EXHIBIT "D"

```
 1                  STATE OF MICHIGAN

 2        IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

 3
      DAILEY LAW FIRM, P.C.
 4
               Plaintiff,        Case No. 21-007081-CZ
 5       vs.

 6       JODY INGRAM, et. al,

 7               Defendants.
         --------------------------/
 8

 9               Zoom proceedings taken in the

10       above-entitled matter before HONORABLE ADEL HARB,

11       Third Judicial Circuit Court Judge, Detroit, Michigan,

12       on June 16, 2023.

13
         APPEARANCES:
14

15       FOR PLAINTIFF:      MR. BRIAN DAILEY
                             63 Kercheval Ave,  Ste 215
16                           Grosse Pointe Farms, MI 48236

17       FOR MI Spine:       MR. JONATHAN GREEN
                             30300 Northwestern Hwy #250
18                           Farmington Hills, MI 48334

19       FOR JODY INGRAM:    MR. ROBERT DRAZIN
                             23855 Northwestern Hwy
20                           Southfield, MI 48075

21       FOR PEPPLER:        MS. ELIZABETH DOWNEY
                             30445 Northwestern Hwy, #250
22                           Farmington Hills, MI 48334

23       FOR M1 IMAGING:     MS. JAILAH EMERSON
                             480 Pierce St., Ste 300
24                           Birmingham, MI 48009

25
```

RECEIVED by MCOA 7/11/2023 1:11:58 PM

```
 1      APPEARANCES CONTINUED:

 2

        FOR MI NEURO
 3       OPHTHALMOLOGY:        MR. JOSH HAVENS
                               15200 E. Jefferson Ave #104
 4
        FOR BCBS:              MR. DYLAN STEC
 5                             600 E. Lafayette Blvd. #1925
                               Detroit, MI 48226
 6
        FOR MRI LIVONIA:       MR. PHILIP JAFFE
 7                             P.O. Box 25092
                               W. Bloomfield, MI 48325
 8
        FOR KRANS REHAB:       MR. TIMOTHY SULOLLI
 9                             17000 W. 10 Mile Rd. 2nd Fl
                               Southfield, MI 48075
10
        FOR CRNA STAFFING:     MR. IAN COOTE
11                             17 S. Saginaw St., Flr 2
                               Pontiac, MI 48342
12

13

14

15

16

17

18

19      Shelee Beard
        Official Court Reporter
20

21

22

23

24

25
```

RECEIVED by MCOA 7/11/2023 1:1:58 PM

1          T A B L E   O F   C O N T E N T S

2

3     WITNESS                                      Page

      N/A
4

5              E X H I B I T S
6
      NUMBER              ADMITTED
7
      N/A
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

RECEIVED by MCOA 7/11/2023 1:11:58 PM

```
 1                              Detroit, Michigan
 2                              June 16, 2023
 3                        - - -
 4              THE CLERK:  Calling 21-007081-CZ
 5              THE COURT:  Good morning.
 6              MR. DAILEY:  Brian Dailey on behalf
 7       of Plaintiff, Dailey Law Firm.
 8              MR. HAVENS:  Josh Havens on behalf of
 9       Defendant, Michigan Neuro Ophthalmology.
10              MR. DRAZIN:  Bob Drazin on behalf of
11       Defendant, Jody Ingram.
12              MS. EMERSON:  Jailah Emerson on
13       behalf of Defendant, M-1 Imaging.
14              MR. COOTE:  Ian Coote here for
15       Defendant, CRNA Staffing.
16              MR. SULOLLI:  Tim Sulolli appearing
17       on behalf of Krans Rehab.
18              MR. GREEN:  Jonathan Green on behalf
19       of Michigan Spine and Pain.
20              MR. JAFFE:  Philip Jaffe on behalf of
21       Open MRI of Livonia.
22              MR. STEC:  Dylan Stec for Blue Cross.
23              MS. DOWNEY:  Elizabeth Downey on
24       behalf of Craig Peppler, D.O. and Pain Associates
25       of Michigan.
```

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1                    THE COURT:  Is that everyone?

2                    MS. DOWNEY:  I believe so, your

3         Honor.

4                    THE COURT:  All right.  Today is the

5         time and date scheduled for a show cause.

6                    Counsel.

7                    MR. DAILEY:  Your Honor, I'm not

8         aware of a show cause order being entered.  This

9         is a motion for an order to show cause.  So I

10        don't think the Court, unless I missed it, I

11        apologize, but I'm not aware of any order being

12        entered yet requiring me to show cause.  This is

13        a motion asking the Court to require me to show

14        cause.  If the Court enters that order to show

15        cause that would implicate issues of civil

16        contempt for which this Court has the authority

17        to impose fine of $7,500 or incarceration for up

18        to 93 days depending upon whether or not the

19        Court finds that the failure to follow the order

20        is subject to the show cause for the willful

21        failure.

22                   I'm telling the Court -- I'm asking

23        this Court to adjourn this hearing so I can have

24        counsel.  I don't have counsel.  I attempted to

25        get intervention from the court of appeals; they

RECEIVED by MCOA 7/11/2023 1:11:58 PM

```
1          have denied that intervention because there is no
2          harm as yet.  I intend to go back to the court of
3          appeals depending on what this Court does.
4                    Given the fact that this Court has
5          the power to deprive me of liberty and property,
6          I am demanding that I be allowed to have counsel.
7          I don't have counsel.  I've not been able to find
8          counsel.  I would ask the Court to adjourn this
9          for a period sufficient to allow me to do that.
10         That's the first thing.  The second thing is I'm
11         still under a doctor's order not to participate
12         in hearings.  That is an order that goes through
13         August of 2023 due to a virus that I had, a lung
14         infection in April.  I do want to indicate to the
15         Court that as I mentioned earlier in the earlier
16         hearing, I'm unable to adhere to the Court's
17         order because I don't have the money to do so.
18         It's not a willful violation, Judge.  It's a
19         violation, if at all, based upon an inability to
20         provide the funds.  And that's because the fees
21         on this case were earned in 2018 and distributed
22         with Ms. Ingram's permission, knowledge and
23         notice which then reduced the fund to somewhere
24         in the neighborhood of $370,000.  And then there
25         were payments made to medical providers that had
```

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1          valid liens for services rendered, transportation
2          company, which then reduced it to probably in the
3          neighborhood of $300,000.  Then there was further
4          reduction in 2020 after I had been successful in
5          a litigation for Ms. Ingram to restore her
6          long-term disability benefits.  I met with them
7          and provided to them an accounting to explain how
8          to work, were the fees were, all the fees
9          distributed to Dailey law firm were supported by
10         a valid contingent fee agreement signed by the
11         client and called for contingencies that were
12         paid.  That then further reduced the fund to
13         $155,000 approximately.  That all took place more
14         than two years ago.  In the case of the no-fault
15         fee, it was close to four years, actually five
16         years ago.
17              So there is no willful violation of
18         the order here, Judge.  This order is an order
19         that is impossible for me to adhere to because
20         the funds had been distributed prior to today
21         with permission of Ms. Ingram.  And I note Ms.
22         Ingram is not here on Zoom call and would be an
23         important witness for the Court to make a
24         determination as to whether or not there were a
25         prior (inaudible) and approved distributions.

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1              I'd ask the Court to adjourn this so

2       I can obtain counsel.  I have a right to counsel

3       under sixth amendment because this Court has the

4       ability to deprive me of my property and also

5       liberty depending on what the Court finds.  I'm

6       reminding the Court that I have an illness that

7       prevents me -- I've been ordered not to

8       participate in hearings like this; I shouldn't

9       be.

10              THE COURT:  Wait.  What hearings are

11       you allowed to participate in if you're not

12       allowed to participate in hearings like this?

13       Which ones are you allowed by your doctor to

14       participate in?

15              MR. DAILEY:  My doctor told me to

16       stay out of hearings and stay out of trials.  So

17       I've done my best.

18              THE COURT:  Those are your doctor's

19       orders to stay out of trial, but not to stay out

20       of your office?

21              MR. DAILEY:  Because of the nature of

22       the illness, Judge, affecting my vocal cords, the

23       doctor is treating me for my vocal cords and

24       damage to my vocal cords as a result of it.  He

25       told me to stay out of hearings where I have to

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1    speak at length and to stay out of trials.  I
2    have a trial in Chicago I got to go and adjourn
3    next week.
4            I'm not required to stay out of my
5    office; I can still work.  I've been called on to
6    participate in hearings and trial.  Not every
7    Judge has afforded me the ability to avoid
8    hearings.  Some Judges have made me go forward no
9    matter what.  I have a duty to my client so I
10   have to do that even though it's deleterious to
11   my health and my welfare.  There's nothing I
12   could do.
13           I do tell every Judge ahead of time
14   about my condition.  I can show the Court the
15   doctor's orders if the Court would like.  I'd
16   hate to do that in front of these attorneys.  If
17   the Court would join me in a break out room to
18   show you, I'd be happy to do that.  I've asked
19   the doctor to sign an affidavit.  I think he has.
20   I haven't picked it up yet.  He's at Henry Ford
21   Hospital.  That's one issue.
22           The other issue is because this
23   Court, depending upon the finding it makes, has
24   the ability and authority to deprive me of
25   liberty and property, I'm entitled to an attorney

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1    to represent me, and I don't have one.  So I'm
2    asking this Court to adjourn this to allow me to
3    do so.
4                    THE COURT:  All right.  Anybody want
5    to respond?
6                    MR. DRAZIN:  If I may, your Honor,
7    there's a lot to respond to, but I'll be brief.
8    I represent Jody Ingram and anything he said
9    about Jody Ingram's agreement to what has
10   happened is not correct.  She never agreed to the
11   disbursement.  She was improperly advised.  So
12   any statements regarding Jody Ingram that Mr.
13   Dailey says is incorrect.
14                   Also, I originally filed my motion,
15   your Honor, in October of 2022.  It has
16   continually been adjourned because of Mr.
17   Dailey's request for adjournment because of
18   illness and/or because he needs an attorney.
19   When we last heard this motion, it was on a
20   Monday, I believe, Mr. Dailey made a comment to
21   you that he was meeting that evening with an
22   attorney.  That was two months ago, a month ago,
23   whenever that was.  We are all accustomed to be
24   getting all these motions and hearing the same
25   from Mr. Dailey that he's ill and that he needs

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1          to hire an attorney.  It's not that hard for an

2          attorney to find an attorney.  So I ask you to

3          ignore that and go ahead with the motions that

4          are before you.

5                    When we had the last motion, you were

6          aware Jody Ingram had filed a bar grievance

7          against Mr. Dailey.  You asked Mr. Dailey what is

8          the status of that bar grievance.  His response

9          was it has been two years; he hasn't heard

10         anything.  And the inference he was setting forth

11         was that, therefore it must not be accurate.  If

12         you wish me to comment on that response, I'd be

13         glad to, your Honor.

14                   MR. DAILEY:  Your Honor, I can

15         comment on that.  That's true I did tell you that

16         at the last hearing because that's what the state

17         of affairs was at that time.  After that, I

18         received a subpoena from the Attorney Grievance

19         Commission asking for information related to the

20         distributions from the $600,000 settlement and

21         that is something I'm working on right now; it's

22         not yet due.  I'll have it turned in to the

23         Attorney Grievance Commission by the time that

24         it's due.  That is a new development, but there

25         was a significant long period of time that I went

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1  without hearing a single thing from the grievance

2  commission about that.  I think just given a

3  subpoena does not mean that it is going to any

4  higher level.  They're just investigating.

5  By the way, Judge, Michigan Rules of

6  Professional Conduct and the rules that govern

7  the operation of the Attorney Grievance

8  Commission requires that all of that remain

9  confidential.  Mr. Drazin has violated that rule

10 twice by bringing to the Court's attention the

11 fact that Ms. Ingram filed that against me.  And

12 she did it, I might add, in connection with an

13 attorney who was representing her before we

14 decided not to represent her.

15 THE COURT:  Didn't you kind of open

16 the door because you said you had not heard

17 anything for two years; isn't that really

18 disclosing confidential information if you bring

19 that point up; didn't you just open that door

20 when you said that?

21 MR. DAILEY:  Judge, I didn't raise

22 that issue in the last hearing.  That was raised

23 by Mr. Drazin in the last hearing, so I

24 responded.  I'm trying to be forthright and

25 forthcoming to this Court.  The Court has

RECEIVED by MCOA 7/11/2023 1:11:58 PM

```
 1          significant duties and responsibilities here
 2          which I perceive the Court attempting to meet
 3          with great professionalism, and I appreciate
 4          that.  It's my duty to provide information to the
 5          extent I can.  It doesn't mean I have to agree
 6          and Mr. Drazin can continually berate me as he
 7          has in the hearings.
 8                    The last time he told me I stole her
 9          money.  That's not true.  I didn't steal
10          anything.  Everything I've done is according to
11          the Rules of Professional Conduct and the
12          Michigan Court Rules.  I have contingency
13          agreements that have been in place since 2016 and
14          '17 signed by the client with notice and sat down
15          with me in terms of the ARISA claim, which I
16          think is the biggest issue in terms of most of
17          these lawyers here, there's an ethics opinion
18          that supports my fees that were paid to me; they
19          were paid to me and they all know that.
20                    THE COURT:  Mr. Dailey, we keep going
21          in circles here.  All I want you to do is put
22          back the money; that's what I ordered you to do.
23                    MR. DAILEY:  And I can't because I
24          don't have it.
25                    MR. SULOLLI:  Your Honor, there's
```

RECEIVED by MCOA 7/11/2023 1:11:58 PM

```
1        been no good-faith attempt for Mr. Dailey to pay
2        anything.  He didn't even put the money in that
3        he told you and told us he had, the $260,000.  He
4        simply chose to ignore your order.  There's no
5        good-faith effort.  If Mr. Dailey at least had
6        paid that amount, I would get some argument here
7        in terms of what he's trying to same.  He didn't
8        even do that at a minimum.
9                    MR. DAILEY:  Your Honor, if I may,
10       when we were at the last hearing, I did ask the
11       Court to allow me to do that and the Court said
12       no.
13                   THE COURT:  It wasn't 255; what was
14       the amount you stated at that time?
15                   MR. DAILEY:  $155,000.
16                   THE COURT:  That's a difference of
17       $100,000 from what you stated.  I want that clear
18       because when you did suggest that, I said that
19       was not good enough.
20                   MR. DAILEY:  Right.
21                   THE COURT:  It was not 255,000.
22                   MR. DAILEY:  Thank you Judge, for
23       pointing that out.  I appreciate that.
24                   THE COURT:  Somebody else want to --
25       go ahead counsel.
```

RECEIVED by MCOA 7/11/2023 1:1:58 PM

```
 1              MR. HAVENS:  Just not this Court
 2        originally ordered Mr. Dailey to interplead the
 3        funds back in February.  We're four months out.
 4        Every time we come it's the same story, same song
 5        and dance.  I'll just note again that $155,000
 6        your Honor did order him to interplead $600,000.
 7        He did indicate at all times he could interplead
 8        $155,000.  I don't think the Court told him you
 9        can't interplead $155,000.  I think we'd all
10        agree if there was any showing of good faith
11        whatsoever and this wasn't willful, he would at
12        least interplead what he does have.  He's saying
13        he can't comply with the Court's order.  You'd
14        think that for somebody who's under court order
15        they would comply to the extent that they can.
16              To Mr. Dailey's point, we're here
17        today asking the Court to order -- order Mr.
18        Dailey to come forth and show cause why he should
19        not be held in contempt.  For that kind of
20        hearing it's pretty straight forward.  The
21        Court's got an order he hasn't complied with.
22        It's a relative routine matter that the Court
23        would issue that order.  And if he needs time to
24        find an attorney to appear and argue why he
25        shouldn't be held in contempt, that's a different
```

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1         matter than what we're here for today, which is

2         asking the Court to issue an order for him to

3         come to court at a later date and show cause.

4                        MR. DAILEY:  Your Honor, I just want

5         to point out that, and I want to remind all

6         counsel that when I did the analysis of the

7         attorneys fees or the payment of attorney fees on

8         ARISA claims, my contingency fee agreement says

9         that I can do one or two things.  I can take my

10        fees out of any lump sum that is provided, but if

11        there's no lump sum and I have a fund of money

12        over which I have a possessory lien, which she

13        gave me in my fee agreements, then I can take

14        one-third of the present value of the total

15        lifetime payments.

16                        I hired an accountant to figure out

17        what was the one-third value and total -- the

18        present value of the total lifetime payments, and

19        I'm looking at taking one-third of that.  I

20        decided I didn't want to do that.  So I already

21        reduced my fees on the ARISA claims to one-third,

22        which she entitled me to, to just 20 percent,

23        Judge.

24                        It's not like I'm not trying to work

25        with these people.  And the other, Judge, because

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1          I think it's really important, you take a look at

2          all of the bills that's been submitted by all of

3          these providers, they add up to not much more

4          than $155,000.  That's at full amount, which no

5          medical provider, no medical provider ever gets.

6          They always have to reduce it in order to take

7          into consideration the attorney fees that were

8          paid in order to create that fund.  And if this

9          goes according to the way it should go and the

10         way it normally goes, then every single one of

11         these providers that were reduced by one-third

12         would recognize attorney fees Ms. Ingram paid, we

13         would be done with this within that $155,000.

14                    In addition to that, Judge --

15                    THE COURT:  You can argue in mirror.

16         I don't want to hear about that.  All I want to

17         hear about is I ordered the money be put back in

18         place.  You can make that argument at the

19         appropriate time, but you are in violation of my

20         order to put the money back.  You keep wanting to

21         go into what should have been paid off or paid

22         on, or whatever.  I don't want to hear that.

23                    MR. DAILEY:  I understand.

24                    THE COURT:  All I want to hear is

25         that I ordered you to put the money back.  You

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1    have either refused, or whatever you want to

2    describe it as; you don't have the money; the

3    money is gone, whatever description you have.  I

4    ordered you to put the money back and you didn't.

5    That's all I'm looking at today.

6             MR. DAILEY:  I want to be clear.

7    I've not refused, absolutely not.  I would not

8    refuse to follow the Court's order.  I can't

9    follow the order; it's an impossible order for me

10   to follow.  I don't have the resources to do so.

11   I'm not refusing to follow your order, Judge.  In

12   fact, I've never refused an order of you.  I've

13   shown up at every hearing.  I've produced what

14   you told me to produce that was in my power to

15   produce.  I've done everything I'm supposed to

16   do.

17            THE COURT:  Except pay the money,

18   which is what I want you to do.  You've done

19   everything but pay the money back.  You keep

20   telling me you're doing everything that I ordered

21   you to do.  All I want you to do is one thing;

22   put money back.  I don't care about everything

23   else.  That doesn't matter right now.  We'll deal

24   with that issue at the appropriate time.  You

25   didn't even put an extra dollar from the amount

RECEIVED by MCOA 7/11/2023 1:11:58 PM

```
1          you say you owe.
2                    MR. DAILEY:  I don't understand, your
3          Honor.
4                    THE COURT:  Not even a dollar more,
5          right?
6                    MR. DAILEY:  I don't understand what
7          you're saying.
8                    THE COURT:  What number are you
9          saying you still have in the bank?
10                   MR. DAILEY:  155,000.
11                   THE COURT:  Did you come to this
12         Court and say, well, I don't have the 600; I have
13         another 100,000 or 200,000 to put back?
14                   MR. DAILEY:  I don't have another
15         100,000 to put back.
16                   THE COURT:  Okay.
17                   MR. DAILEY:  The thing is, it is not
18         sufficient for you to find a violation to order
19         me to show cause.  You have to find a willful
20         violation.  There's no evidence here in relation
21         to that accept my evidence and my testimony I
22         don't have the money.  There's nobody that
23         testified or can testify that there's a willful
24         violation of your order.  I'm testifying --
25                   THE COURT:  That's your opinion, Mr.
```

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1          Dailey.

2                    MR. DAILEY:  I understand.

3                    THE COURT:  We'll see.

4                    MR. DAILEY:  I'd like to have an

5          evidentiary hearing, Judge, on that issue.

6                    THE COURT:  Who else?

7                    MR. HAVENS:  I would just note I

8          don't now if we're here today to argue what

9          willful and what's not.

10                   THE COURT:  We're not, so I don't

11         want to go into that.

12                   MR. HAVENS:  I think there would be a

13         willful violation to an extent, which would be to

14         the extent he's capable of paying back, which he

15         willfully hasn't?

16                   MR. DAILEY:  I disagree with that,

17         Judge, and I object to those comments in view of

18         the fact that you yourself just remarked that I

19         offered to do that and was told that wasn't good

20         enough by this Court.  So for Mr. Haven to

21         continue arguing that point I think is

22         disingenuous and improper.

23                   THE COURT:  Go ahead, Mr. Green.

24                   MR. GREEN:  I think at this point we

25         know that the order hasn't been complied with

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1          maybe the remedy at this point would be to

2          appoint a receiver in the interim to gain

3          compliance with the Court's order separate and

4          apart from any issues about contempt.  I

5          understand Mr. Nathanson is here.  He has another

6          matter apparently before the Court, but he is

7          experienced as a receiver.  He might be somebody

8          the Court would consider at this point.  Really I

9          have nothing further to add other than that.

10                    MR. DAILEY:  Your Honor, may I

11          respond.

12                    THE COURT:  Go ahead.

13                    MR. DAILEY:  I think you need make to

14          a decision as to whether or not there was a

15          willful violation before you take any remedial

16          action.  I need an evidentiary hearing and

17          counsel on that issue; that's the second thing.

18          The third thing is Mr. Nathanson is here because

19          he's watching this hearing because he and I are

20          involved litigation right now where we have

21          motions up in front of Judge Gibson.  Mr.

22          Nathanson has filed a request for investigation

23          against me as a result of that litigation.  He

24          clearly is a biased individual.  He's not

25          qualified to serve in capacity of receiver.

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1          There's no basis upon which to appoint a receiver

2          because this Court has not made a decision as to

3          whether or not there's a willful violation.  As I

4          understand it, the Court is going to hold another

5          hearing to determine if there's a willful

6          violation at which I want to be represented by

7          counsel.

8                    THE COURT:  You keep saying you want

9          to be represented by counsel.  What's stopping

10         you from doing that?  Isn't that something you

11         said you were working on doing last time?

12                   MR. DAILEY:  I did.  I've spoken with

13         a number of attorneys, and I have been unable to

14         find one who feels qualified to handle this case.

15         And I'm still looking.  I'm doing the best I can.

16         The attorney I told you I was meeting with after

17         the last hearing, I did.  They were not willing

18         to represent me on it.  So I'm doing the best I

19         can.

20                   THE COURT:  Let me ask you this; how

21         many attorneys have you talked to since the last

22         hearing?

23                   MR. DAILEY:  Five.

24                   THE COURT:  From the five you were

25         unable to retain any of them.

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1          MR. DAILEY:  That's correct.  It's

2    not because I can't retain them, it's because

3    they were not willing to be retained.  There's

4    not a lot of people, far as I can tell, with

5    experience and comfort in civil contempt

6    proceedings.  I can give you in camera the names

7    of the attorneys I contacted, Judge.

8          THE COURT:  I'm okay not knowing

9    right now.

10          Anybody else?  Ms. Downey.

11          MS. DOWNEY:  If the Court is

12    intending to hold a hearing at a later date to

13    determine whether or not the noncompliance was

14    willful or not willful, I'd request that we have

15    an opportunity to have forensic accountants

16    investigate what assets and liability the firm

17    and Mr. Dailey actually has so we're in position

18    to argue from a basis of fact as to whether there

19    was or was not an ability to comply.  That's all

20    I have.

21          MR. DAILEY:  Your Honor, that sounds

22    like a collection action.  There's never ever a

23    basis upon which to institute collection

24    procedures before there's a finding or before

25    there's a judgment.  I would object to that.

RECEIVED by MCOA 7/11/2023 1:1:58 PM

1            MR. DRAZIN:  Your Honor, if I may,
2        Mr. Dailey is telling the Court repeatedly he
3        doesn't have the funds to obey your order.  The
4        only way to make that determination would be
5        appoint00 a receiver.  My understanding is Ms.
6        Downey talked to Plante Moran who has people well
7        experienced in this area and glad to serve.  I've
8        spoken with another attorney same kind of
9        experience and would be glad to serve.  I would
10       ask the Court if you order a receiver to comment
11       on the truthfulness of Mr. Dailey that he has no
12       money, that that be done at the sole expense of
13       Mr. Dailey.
14           MR. DAILEY:  Your Honor, I can show
15       the Court and I can show counsel proof of the
16       distributions that have been made and to whom
17       they've been made from the funds of money that
18       was received in the settlement.  Mr. Sulolli's
19       partner received approximately $50,000 of the
20       funds with permission from Ms. Ingram early on
21       because Mr. Goodman had a valid lien for Life
22       Skills Village.  He presented it early on.  I
23       talked to my client about it.  My client approved
24       it.
25           My point is you don't need a forensic

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1          accountant for me to show where the money went.

2          The money I have in my trust account belongs to

3          other clients in addition to Ms. Ingram or these

4          providers to the extent of $155,000. So I can

5          within seven days put together the accounting

6          showing what the distributions were and with the

7          back up showing checks and wire transfers to the

8          extent they exist. In the nature of a collection

9          action there's been no judgment made here. I'm

10         asking the Court to not appoint that.

11              A receiver would have far greater

12         powers than necessary here. There's just an

13         accounting that's due. I did an accounting.

14         Nobody ever asked me for further detail. I'm

15         happy to provide it. I'm more than happy to show

16         where the funds had gone.

17              THE COURT: Mr. Green.

18              MR. GREEN: Thank you, your Honor.

19         The more I'm hearing, the more I'm thinking a

20         receiver is a good idea. He's an arm of the

21         Court. He can enforce compliance with this

22         Court's order or be that third party to tell the

23         Court what can and cannot come from the estate.

24         I think for our purposes it's probably the best

25         way to go. Again, we're not relying on argument

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1       of counsel.  He's an arm of the Court, whether

2       it's Mr. Nathanson or someone else.  I've got a

3       couple other names I can thing of.

4              THE COURT:  If I consider it, I

5       certainly want somebody who's not connected to

6       this case or any of the parties involved.

7              MR. GREEN:  One name that comes to

8       mind is John Polderman.  I think that's probably

9       the best way to approach this issue.  I know he

10      does quite a few of these things.

11             MR. DAILEY:  Your Honor, wouldn't it

12      be better to start out with an accounting that

13      has details showing copies of checks and

14      distributions and wire transfers and transfers?

15      I can show --

16             THE COURT:  I'm thinking it may be a

17      good start and spot for a receiver.  It may be a

18      good spot for a receiver to look at.

19             MR. DAILEY:  Your Honor, what I'm

20      suggesting is the Court allow me to put that

21      together and submit it to all counsel.  Then if

22      they have a problem with what I submitted, I'm

23      sure they won't because they'll be all documents

24      from the bank unquestionable and show to the

25      penny what's left and what's been distributed on

RECEIVED by MCOA 7/11/2023 1:11:58 PM

```
 1          Jody Ingram's behalf.  I think it's better to
 2          start with that because I don't think we would
 3          need to have a receiver.
 4                 If the Court wants a receiver after I
 5          submit that, then that's something the Court
 6          should consider.  But right now nobody ever asked
 7          me for that detail.
 8                 THE COURT:  I think we're a little
 9          beyond that right now.  I don't speak on behalf
10          of anybody.  I'm saying as far as I'm concerned,
11          I think we're a little beyond that.
12                 Who else wants to jump in and say
13          anything?
14                 MR. HAVENS:  I concur with the
15          request for a receiver.  I understand what Mr.
16          Dailey is suggesting but it's not as if all
17          counsels are here alleging this $600,000 is still
18          sitting in his IOLTA Trust Account.  We have no
19          doubt that he made himself to the tune of
20          $450,000.  I don't think that's really in
21          dispute.  It's a question about whether he
22          complied with this Court's order.  I think an
23          accounting by a neutral third party is the best
24          way to get us, as Ms. Downey said, on a factual
25          footing in that regard.
```

RECEIVED by MCOA 7/11/2023 1:1:58 PM

1          MR. DAILEY:  My response just is all

2     I'm telling you is based upon the last comment

3     that I heard, They've already assuming you made a

4     finding of willful violation of your order.

5     They're already going to collection procedures

6     which is inappropriate, unsupportable in the law.

7          MR. DRAZIN:  Your Honor, if I may.

8          THE COURT:  Go ahead.

9          MR. DRAZIN:  The request for the

10    appointment of a receiver isn't solely directed

11    toward any disbursement Mr. Dailey made.  It's

12    based upon whether Dailey's statement he can't

13    afford to put the money in the account is correct

14    or not.  And that means the receiver has to go

15    beyond just the money Mr. Dailey computed Ms.

16    Ingram was entitled to.  Well, I'll be quiet.

17         MR. DAILEY:  Again, Judge, they're

18    arguing now as if you've already found I

19    willfully violated your order.  You haven't found

20    that as far as I know.  That's collections

21    procedures, which are never ever appropriate

22    until there's a finding of something to collect,

23    until there's a judgment or an order finding

24    there's a debt.

25              I understand that you ordered me to

RECEIVED by MCOA 7/11/2023 1:1:1:58 PM

1    pay back $600,000.  I've told you a million times

2    that I would adhere to your order if I could, but

3    I've already distributed funds from that fund.

4    So what I have is $155,000.  I've offered last

5    time to pay that as the court order; the Court

6    didn't think that was good enough.  I've done

7    everything I can do.  And to put a receiver on to

8    do a creditor exam, which is what they're asking

9    for, is inappropriate and it's unsupported.

10               I would ask that the Court schedule

11   an evidentiary hearing, make a determination

12   after that evidentiary hearings as to whether it

13   was a willful violation and fashion what ever

14   remedy the Court think is appropriate.

15               THE COURT:  It not about collection.

16   It's about you telling the Court you don't have

17   the money to pay to put back into the account; is

18   it not?

19               MR. DAILEY:  That is collections.

20               THE COURT:  How's that collections?

21               MR DAILEY:  Because what you're doing

22   here is taking money -- what you're attempting to

23   order me to take money that's already been paid

24   to me and put it back in the court four years

25   later; that is collection.  In other words, it's

RECEIVED by MCOA 7/11/2023 1:11:58 PM

```
1          tacit to a finding that my fees were not
2          appropriate.  There's been no finding to support
3          that.  It is collections.  Those funds have
4          already been paid to me by permission of my
5          client pursuant to the contingency agreement
6          supported by Michigan Court Rules, the ethics
7          opinion.  That's what you're doing.  That's why
8          I'm asking the Court to hold an evidentiary
9          hearing before you fashion any remedial relief.
10              THE COURT:  Somebody else wanted to
11         say something?
12              MR. SULOLLI:  Mr. Dailey is entitled
13         to make a claim.  What he's entitled (inaudible)
14         the money put in the fund.  That's why you
15         ordered $600,000 to be put in.  It doesn't
16         distinguish Mr. Dailey's ability to argue he's
17         entitled to X amount of dollars and that's the
18         evidentiary hearing.  For Mr. Dailey to suggest
19         let's have an evidentiary hearing and let me give
20         you an accounting, how do we know if that
21         accounting is correct if we don't have an
22         independent party to look at his financial and
23         determine whether, in fact, he's accurate in
24         terms of his inability to pay and whether or not
25         that was willful or not.  How do we not establish
```

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1     that if we don't have an independent party come

2     in and look at his financials?

3                 MR. DAILEY:  The way they will know

4     is by looking at what I provided in terms of back

5     up and the detail showing where the $600,000

6     went.  His partner --

7                 THE COURT:  What you want me to do is

8     go through this process only to come back in four

9     to six months and be where we're at today.

10                 MR. DAILEY:  No, Judge, I don't.  I

11    want you to hold an evidentiary hearing on all

12    issues here before making any remedial decisions.

13    And do it as quickly as you can.  Do it in two

14    weeks; do it in a week.  Give me the time I need

15    in order to present these issues to the Court.

16    I'm sure the Court will be satisfied that I've

17    been honest, forthright and professional, that

18    I'm entitled to the fees that I took, I was paid.

19    That's what I'm asking for.  I'm asking you to

20    put the cart behind the horse not the other way

21    around.  What they want to do is have you start

22    collection procedures and creditor hearings

23    before you even determine if that's a necessary

24    issue.

25                 The $50,000 that was paid to Barry

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1        Goodman, Mr. Sulolli's partner, would have to

2        come back into the court, too.  Why would I have

3        to make up $50,000 that somebody else got with

4        permission from my client in 2018?

5              THE COURT:  Mr. Havens, you wanted to

6        say something?

7              MR. HAVENS:  Yes.  To the extent it's

8        on the table about whether or not the Court has

9        power to order a receiver, I think the law is

10       clear, I've done research while sitting here.  I

11       turn the Court's attention to MCL 600.2926 which

12       circuit court judges in the exercise of their

13       equitable powers may appoint receivers when cases

14       allow by law.  I don't think there's any law in

15       this circumstance that disallows it.  Again, I

16       think Mr. Dailey is --  I think it's him putting

17       the cart before the horse that is our argument

18       this is some kind of situation where willfulness

19       is presumed.  We don't even get there until we

20       have an accurate factual footing.  That what a

21       receiver would do.

22              MR. DAILEY:  Your Honor, the receiver

23       would do far more than that.  Unless the Court is

24       going --

25              MR. HAVENS:  The same statute I

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1          quoted says the Court has the inherent power to

2          define and limit the duties of the receiver, so

3          to the extent Mr. Dailey believes there's a risk

4          that a receiver would go too far, this Court can

5          express concerns.  And this Court can

6          specifically define the role and duties and

7          limitations of the receiver in this situation if

8          one were to be appointed.

9                    MR. DAILEY:  Your Honor, if the

10         defendant counsel wants to put together a name or

11         two names of accountants they would propose as

12         witnesses, I can provide those accountants the

13         documentation they would need in order to

14         determine what it is they're looking for in terms

15         of the distribution and the diminution of this

16         fund.  What they keep asking for is tantamount to

17         a creditor's exam.  With all due respect --

18                    THE COURT:  I don't get that.  I

19         don't know why you keep going to this creditor

20         exam and collection when a receiver is mentioned.

21         I don't know why you keep wanting to --

22                    MR. DAILEY:  Here's why, Judge.  The

23         reason why is because the funds that they want me

24         to pay back that you ordered me to pay back, the

25         fund that have already been distributed by

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1    permission of Jody Ingram.  $50,000 of it was

2    distributed to Tim Sulolli's partner, Barry

3    Goodman, because he presented a valid lien.

4            Now what you're telling me to do is

5    go to Barry Goodman and tell Barry Goodman to cut

6    a check for $50,000 back into the Court.  I

7    brought this to the Court's attention last time,

8    and the Court said, no, I'm not going to make him

9    do that.  You pay it.  So it's already been taken

10   out of the $600,000.  This is a taking from Brian

11   Dailey without adequate support legally to do so;

12   that's what this is.  I am quite positive if they

13   want to hire an independent accountant to look at

14   the documentation I'm proposing to provide to

15   them, they'll be more than satisfied that the

16   funds have been distributed pursuant to

17   permission from Ms. Ingram.

18           There's no need to appoint a

19   receiver.  I'm not suggest the Court doesn't have

20   the authority to do that, but there has to be a

21   need for it, and there is no need for it.

22           THE COURT:  If you don't think

23   there's a need for it after all these hearings

24   and all these claims, I must be missing

25   something.

RECEIVED by MCOA 7/11/2023 1:1:58 PM

```
1                    MR. DAILEY:  Not to say you're
2         missing anything, Judge.
3                    THE COURT:  I must be because if any
4         case -- I'll be honest with you.  I thought about
5         a receiver even before it was mentioned because
6         if any case probably needs a receiver it's this
7         case.
8                    MR. DAILEY:  I respectfully disagree,
9         Judge.  I think it's a fairly simple case to show
10        what happened to the $600,000.
11                   THE COURT:  You keep saying that but
12        obviously that hasn't been the case.
13                   Mr. Havens, go ahead.
14                   MR. HAVENS:  I think Mr. Dailey
15        already made the distinction and we already know,
16        let me prove to you that I paid myself $450,000.
17        We know we paid himself $450,000.  The question
18        then is where is that money.  He said he doesn't
19        have it.  He can't pay it back.  Where is it?  To
20        the extent he can't pay it back I think we all
21        deserve that factual footing to know exactly what
22        he can pay back.
23                   THE COURT:  I'll give you the last
24        word, Mr. Dailey.
25                   MR. DAILEY:  I tell you exactly where
```

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1         it went.  It went to rent.  It went to health

2         insurance.  It went to malpractice insurance.

3         It's funds that were put into an office that I

4         earned legitimately pursuant to contingency

5         agreements approved and signed by my client,

6         received for the work called for in those

7         agreements.  That's where it went.  Everything

8         else is taking money out of my pocket.  That is

9         not appropriate.  This is not a collection

10        action.  That's it, Judge.  I made my argument.

11               I just really want to make one last

12        argument.  I'm entitled to counsel in a hearing

13        involving contempt.  I'm asking the Court to

14        allow me to do that, to have counsel.

15               THE COURT:  Anybody that has not said

16        anything wants to say anything before --

17               I know somebody mentioned the name of

18        Holderman (sic).  Did somebody say Holderman?

19               MR. DRAZIN:  It's Polderman; P as in

20        Paul.

21               THE COURT:  Okay.  Polderman.  I'm

22        going to appoint -- is John the first name?

23               MR. HAVENS:  Correct.

24               THE COURT:  I'm going to appoint him

25        as a receiver.  I think this case needs a

```
1          receiver.  We keep going in circles as far as
2          what the arguments are.  And we'll come back.
3          I'm going to go ahead and sign the Order to Show
4          Cause today.  We'll come back in 30 days or so
5          hopefully with the receiver in attendance to see
6          what is going on.
7                    MR. DAILEY:  Can I ask what you're
8          allowing the receiver to do.  Is it just related
9          to the $600,000; are you allowing him to see my
10         personal assets and finances?  I think you need
11         to define that.
12                   THE COURT:  Let's start with him just
13         seeing regarding the $600,000.  I'm not going to
14         give him a blank check just yet.  We'll deal with
15         as far as the $600,000 is concerned.
16                   MR. DRAZIN:  Your Honor --
17                   MR. DAILEY:  I'm not finished, Mr.
18         Drazin.
19                   Thank you very much, Judge, for that.
20         We'll submit an order.  My other question is, in
21         the last hearing we submitted an order and the
22         Court rejected it telling us to follow the court
23         rules.  We need that order entered.  It was an
24         order denying motion for summary disposition
25         limiting Blue Cross Blue Shield's claim.  I'd
```

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1    like to know how do you want me to submit that
2    order.
3              THE COURT:  That was granted last
4    time, was it not?  I think Mr. Dailey isn't that
5    something we addressed last time?
6              MR. DAILEY:  You did grant it, but
7    didn't enter an order.  We need an order.  Your
8    court indicated that they were not going to enter
9    the order I submitted.  I was just wondering how
10   to get it entered.
11             THE COURT:  Hold on.  Eric or Debra.
12             THE LAW CLERK:  We can do July 28th
13   at 9:30.
14             THE COURT:  No, not the date.  I need
15   to find out what happened.
16             THE CLERK:  On the order I would have
17   to do an investigation.
18             THE COURT:  We'll look into that
19   today, Mr. Dailey.
20             MR. DAILEY:  Who should I call back
21   to find out about that order?
22             THE COURT:  We'll be in touch.  Did
23   you get a copy of that order, Mr. Stec?
24             MR. STEC:  Yes, sir.  It was limited
25   to (inaudible) I agree to that.

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1          MR. DAILEY:  The order that I

2      submitted, Judge, was more than just that.  I was

3      a whole bunch of things that this Court ordered.

4      I can re-submit it if you want.

5          THE COURT:  Well, make sure Mr. Stec

6      gets a copy of it first.

7          MR. DAILEY:  I'll make sure everybody

8      does.  I'll submit it through the MiFile.

9          THE COURT:  I'll take a look at it.

10          MR. DRAZIN:  Your Honor, if I may, is

11      Mr. Polderman being appointed at attorney

12      Dailey's expense?

13          MR. DAILEY:  I object to that, Judge.

14          THE COURT:  It is at your expense,

15      Mr. Dailey.

16          MR. DAILEY:  It's at my expense?

17          THE COURT:  Yes.

18          MR. DAILEY:  May I ask the Court the

19      basis upon which I'm required to pay for their

20      expert?

21          THE COURT:  Go ahead, Mr. Green.

22          MR. GREEN:  The receiver is an arm of

23      the Court.  He's not anybody's expert.  He does

24      not represent the interest of the parties.  He is

25      there as an arm of the Court.  For that purpose,

RECEIVED by MCOA 7/11/2023 1:11:58 PM

```
1        as I understand and correct me, your Honor, if
2        I'm wrong, he's there to enforce the Court's
3        order, to get the Court's order complied with
4        that $600,000 is to be placed into escrow.
5                    MR. DAILEY:  Your Honor, there's no
6        basis upon which to support me having to pay the
7        cost.
8                    THE COURT:  The basis that I have is
9        simply I want him to basically help me enforce
10       the order that I signed already.  I'm ordering
11       that you pay for the receiver.
12                   MR. DAILEY:  Your Honor, I'm
13       objecting.  I'm asking the Court to --.
14                   THE COURT:  You can objection all you
15       want, Mr. Dailey.  I'm telling you it's at your
16       expense.
17                   MR. DAILEY:  I understand.
18                   THE COURT:  Anything else?
19                   Eric, give me a date; what's the day
20       that we have?
21                   THE CLERK:  July 28th at 9:30.
22                   MR. DAILEY:  Your Honor, my
23       disability goes through August 12th.  Can we put
24       it after?
25                   THE COURT:  Your disability as to
```

RECEIVED by MCOA 7/11/2023 1:11:58 PM

```
1          what?  This is the doctor who told you cannot be
2          at hearings or trials?
3                    MR. DAILEY:  He told me to avoid
4          hearings and trials.  To the extent that I can't
5          adhere to his order, I'd like to.  After today's
6          hearing, my voice is going to be shot.  Every
7          time I do something like this, it delays me
8          getting better.  So I'm asking this Court to put
9          it at the end of August so I can get through
10         that.
11                   MR. SULOLLI:  Your Honor, this is the
12         same attorney who argued a few minutes ago we can
13         have an evidentiary hearing in two weeks.
14                   MR. DAILEY:  Your Honor, I'm planning
15         on bringing counsel with me.
16                   THE COURT:  You can bring one July
17         28th.
18                   MR. DAILEY:  I'm asking the Court for
19         accommodation for my health condition.
20                   THE COURT:  Mr. Dailey, I can
21         appreciate your health concerns, but the 28th
22         will give you enough time I think.  This is six
23         weeks away from today.
24                   MR. DAILEY:  Okay, Judge.  I'm just
25         trying to do what my doctor told me.
```

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1           THE COURT:  I understand and
2     appreciate what you're saying.  We'll see you on
3     the 28th at --
4               -- what time do we have, Eric?
5           THE CLERK:  9:30.
6           MR. DAILEY:  Will this be by Zoom,
7     Judge?
8           THE COURT:  We'll keep you posted.  I
9     think I might have everybody come in for that.
10    We're starting to get people back in person.
11    We'll keep you posted.  If it's going to be in
12    person, we'll let you guys know.
13          MS. EMERSON:  Your Honor, I also have
14    a motion before the Court today.  It's our motion
15    to assert a claim against Dailey Law as well as a
16    third-party complaint against Brian Dailey.
17          MR. DAILEY:  We would resist that,
18    your Honor.  Long time passed to bring a
19    counterclaim.  It would be a statute of
20    limitation issue.  I object to any amendment to
21    bring in counterclaims.
22          MS. EMERSON:  Your Honor, there is no
23    statute of limitations issues pursuant to MCR
24    2.118(A)(2), leave to amend shall be freely
25    granted as justice requires.  Alternatively, we

RECEIVED by MCOA 7/11/2023 1:11:58 PM

```
1              should be allowed to amend our answer to assert a
2              counterclaim and third party complaint to conform
3              to the pleadings in this case based upon the
4              information that has arisen with respect to Mr.
5              Dailey's failure to interplead funds as required
6              by this Court.  As a reminder, Mr. Dailey filed
7              this case in 2021 asking this Court to determine
8              how funds should be distributed to providers.
9              Thereafter, he refused to interplead any money.
10                  He has admitted he has over $150,000
11             that are a part of the settlement proceeds that
12             he has not even interplead into this court
13             despite the fact he filed this lawsuit requesting
14             that amounts be distributed.  There's no
15             prejudice.  This information has recently come
16             about at the last hearing.  At that last hearing
17             status conference, the Court ordered several
18             parties, including my client M-1 Imaging to amend
19             our answers to attach liens showing that we did,
20             in fact, have proper claim in this case.
21                  Based upon the recent court order of
22             amendment we believe there's no prejudice.
23             There's no bad faith as we found this information
24             out recently and continues to develop.  It's
25             clear based upon this case being pending for two
```

RECEIVED by MCOA 7/11/2023 1:11:58 PM

1        years and Mr. Dailey failed to interplead any

2        funds, it's our assumption he will not do so.

3        For that reason we'd like to assert a

4        counterclaim against Dailey Law Firm and third

5        party complaint against Brian Dailey.

6             We've attached a copy of our amended

7        answer which includes the counter complaint and

8        third-party complaint to our motion; it's Exhibit

9        B.  We request that the Court enter that Exhibit

10       B attached to our motion and otherwise we rest

11       and rely on our motion as filed with this court.

12       Thank you.

13            MR. DAILEY:  Your Honor, I

14       respectfully object and ask the Court to deny

15       that relief.

16            THE COURT:  Based on what?

17            MR. DAILEY:  It's not timely.  This

18       has been in place since 2021.  There's no

19       counterclaim against Brian Dailey individually.

20       Brian Dailey individually has no responsibility

21       whatsoever.  If anything, it's Dailey Law Firm

22       and Dailey Law Firm doesn't have any

23       responsibility except $155,000.  I understand

24       there are different opinions on that, but that is

25       my position.  And there is no reason for a

RECEIVED by MCOA 7/11/2023 1:11:58 PM

```
 1          counterclaim against attorney Brian Dailey.  This
 2          is all Dailey Law Firm, and Dailey Law Firm can
 3          still assert a statute of limitations.  In
 4          addition to that Dailey Law Firm has never been
 5          involved in a contractual relationship with any
 6          of these parties.  It's always been Ms. Ingram
 7          not Dailey Law Firm or Brian Dailey.  There's no
 8          basis upon which to allow amendment for
 9          counterclaims.
10               MS. EMERSON:  Your Honor, pursuant to
11          MCR 2.118(b)(1) amendments are routinely granted
12          to conform to the pleadings in the case or
13          discovery in the case.  We recently discovered he
14          continuously fails to interplead funds he had
15          admitted he has.  We think based upon that we
16          have a basis to assert a counterclaim regardless
17          it seems like he's arguing to the merits of our
18          counterclaim and third-party complaint.  We
19          believe under Michigan Court Rule we have basis
20          to file those claims.  Again, those amendments
21          are granted freely as justice requires.  We
22          believe justice requires an amendment based on
23          the facts that have developed in this case.
24               MR. DAILEY:  Your Honor, briefly,
25          amendments are granted routinely; I agree.  But
```

RECEIVED by MCOA 7/11/2023 1:11:58 PM

```
1          it doesn't breathe life in to a statute of
2          limitations that's expired.  It doesn't give
3          liability where there is no contractual liability
4          to begin with.  It doesn't create a cause of
5          action.  There is no cause of action.  This would
6          be a futile amendment.  They need to amend their
7          answer (inaudible) which is what this Court
8          ordered when we were before you.  In terms of
9          suing Brian Dailey or Dailey Law Firm on any
10         claim, there is no claim.  Dailey Law Firm and
11         Brian Dailey never was in any contractual
12         relationship or agreement with any of these
13         parties under any circumstances with one
14         exception, and that is Jody Ingram.  And Jody
15         Ingram signed my contingency fee agreements
16         approving what I did.  Nobody else has a
17         contractual against me individually or Dailey Law
18         Firm.  I would ask the Court to deny that relief.
19                  THE COURT:  I will decide that later
20         today.  Anything else?
21                  MR. DAILEY:  That's it, Judge.
22                  THE COURT:  Anything else from anyone
23         else?  You all have a good weekend.
24                  (Whereupon proceedings concluded.)
25                  -   -   -
```

RECEIVED by MCOA 7/11/2023 1:11:58 PM

```
 1     STATE OF MICHIGAN )
 2                       )  SS
 3     COUNTY OF WAYNE   )
 4
 5
 6              R E P O R T E R ' S   C E R T I F I C A T E
 7
 8              I, Shelee Beard, CSR-5493, do hereby
 9     certify that I have transcribed the ZOOM proceedings
10     had in the above-entitled matter at the time and place
11     hereinbefore set forth and that the foregoing is a
12     true and correct transcript of proceedings.
13
14
15
16                     /s/   Shelee Beard
                        Shelee D. Beard, CSR-5493
17                     770 Coleman A. Young Municipal Center
                        Detroit, MI  48226
18                     (313) 224-0409
19
20
21
22
23
24
25
```

# EXHIBIT "E"

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## (DETROIT)

In Re:

Dailey Law Firm PC            Case No. 23-45970-mlo

                                   Chapter 11

           Debtor.                 Hon. Maria L. Oxholm

_____/

## ORDER CONFIRMING AUTOMATIC STAY IS NOT IN EFFECT AS TO INTERPLEADER FUNDS

Movant John Polderman, pre-petition State Court Appointed Receiver ("Receiver"), having filed a Motion to Confirm Automatic Stay is Not in Effect; Debtor having maintained IOLTA accounts with US Bank, Fifth Third Bank and Huntington Bank ("IOLTA Accounts"), Debtor having also filed an interpleader action in Wayne County Circuit Court ("State Court"), captioned *The Dailey Law Firm vs. Jody Ingram et. al*., case no. 21-007081 ("Interpleader Case"), and the Debtor having asserted in the Interpleader Case that $155,135.40 ("Interpleader Funds") is available to be interpled in the Interpleader Case, due notice and opportunity for hearing having been given; no objection having been filed; and the Court being duly advised in the premises;

IT IS ORDERED that the Court finds that the Interpleader Funds are not assets of the bankruptcy estate, and that the automatic stay does not apply to the Receiver's collection, receipt or administration of the Interpleader Funds.

IT IS FURTHER ORDERED that the Debtor shall, within three (3) days of

entry of this Order, cause the Interpleader Funds to be deposited with the Receiver, either by certified check or wire transfer.

IT IS FURTHER ORDERED that the Receiver shall hold the Interpleader Funds pending further order of the State Court in the Interpleader Case.

IT IS FURTHER ORDERED that the automatic stay is modified to allow the State Court to hear motions and enter orders as to the disposition, allocation and payment of the Interpleader Funds.

IT IS FURTHER ORDERED that this Order is effective immediately upon entry by this Court notwithstanding the provisions of FRBP 4001(a)(3).