## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN (DETROIT)

In Re:

Dailey Law Firm PC

      Debtor.

Case No.  23-45970-mlo
Chapter 11
Hon. Maria L. Oxholm

_____/

## STATE COURT APPOINTED RECEIVER'S SUPPLEMENTAL OBJECTIONS TO DEBTOR'S FIRST DAY MOTIONS FOR ORDER AUTHORIZING PAYMENT OF PREPETITION WAGES, SALARIES AND EMPLOYEE BENEFITS AND FOR USE OF CASH COLLATERAL

John Polderman, State Court Appointed Receiver, ("Receiver") by and through undersigned counsel, hereby files this supplemental objection (the "**Objection**") to the motions (collectively the "**Motion**") of the above-captioned debtor and debtor in possession (the "**Debtor**"). In support of the Objection, Receiver respectfully represents as follows:

Brian Dailey and the Dailey Law Firm are subject to numerous ethical complaints, a pending disciplinary action from the State Bar of Michigan, as well as a pending show cause action for contempt for failure to properly administer client funds. To avoid the consequences of its malfeasance, the Debtor initiated this bankruptcy case. Brian Dailey and The Dailey Law Firm have shown that they cannot be trusted to act in a fiduciary capacity with client funds.

Since the interim hearing on the Motion, Debtor has disclosed that it is paying Brian Dailey $200,000 per year in wages. These wages and the business operations

1

are funded through legal services provided to clients of the Debtor.

But Debtor does not act ethically with respect to its clients. On thirteen documented instances, Debtor and its member have withheld funds due to third parties, and have taken settlement proceeds to which they are not due. These actions are subject of a lawsuit in Wayne County, as well as complaint filed on behalf of the Michigan Attorney Grievance Commission ("Complaint") (See Exhibit A, Complaint).

Given these prior bad acts, there is a substantial likelihood that this Debtor is funding its operations with money that has been stolen or misappropriated from clients or third parties.

Furthermore, the State Bar of Michigan has asked for the Debtor to provide basic information regarding its allegations in the Complaint, and the Debtor has failed and refused to provide information:

## COUNT TWELVE – FAILURE TO TIMELY ANSWER REQUEST'S FOR INFORMATION

### (Factual Allegations)

258. The following requests for investigation were mailed to Respondent's address of record with the State Bar of Michigan in accordance with MCR 9.112(C)(1)(b), requiring his signed written Answer within twenty-one (21) days as follows:

| AGC File No. | Dated Mailed to Respondent | Complainant |
|---|---|---|
| 19-0376 | 02/19/2019 | Dalen Hanna |
| 19-0692 | 03/06/2019 | Aron Orth |
| 19-1187 | 05/13/2019 | Arthur Orofino |
| 19-2664 | 12/05/2019 | Samira Bazzi |
| 21-1780 | 10/27/2021 | Kent Siegel |

259. On October 27, 2021, the request for investigation in AGC File No. 21-1780 was mailed and emailed to Respondent at the following address: briandailey@daileylawyers.com.

260. Respondent failed to answer the Request for Investigation listed above in the time allowed and final notices enclosing a second copy of the Request for Investigation was served via certified mail on Respondent in accordance with MCR

This Court should not approve the Motion until the Debtor provides the following: (1) full disclosure and copies of its fee agreements (2) an accounting of the source of fees received; (3) a certification and verification that the fees collected are in accordance with any fee agreements; (4) audit of its IOLTA account by an independent third party; and (5) certification and confirmation of full cooperation with the State Bar of Michigan.

The Receiver therefore objects to the payment of wages, salaries and

3

employment benefits or use of cash collateral in accordance with any budget, pending confirmation of cooperation with the State Bar of Michigan's request for information, as well as confirmation that the funds received by Debtor are not the result of fraud, deceit or unethical behavior.

Furthermore, aside from the ethical issues, Brian Dailey should not be on a fixed salary. His compensation, to the extent he deserves any at all, should be tied to revenue. Already the first month of revenue is half of what his projections show. Any income he is paid should be tied to the performance of the Debtor, and to the extent it fails to meet projections, then his salary should be adjusted accordingly. Rather than attempting to bleed the Debtor during bankruptcy. Brian Dailey should be incentivized to ensure proper, ethical performance of the Debtor.

The Receiver further reserves all of his rights to object to other and further relief sought by any party in this chapter 11 case, and assert any other rights, claims and remedies available to him under the Bankruptcy Code or other applicable law.

**WHEREFORE,** the Receiver respectfully requests that the Court enter an order denying the Motion and granting such other and further relief as this Court deems just and proper; or in the alternative, granting the Debtor's Motion conditioned upon disclosure and verification of: (1) full disclosure and copies of its fee agreements (2) an accounting of the source of fees received; (3) a certification and verification that the fees collected are in accordance with any fee agreements;

4

(4) audit of its IOLTA account by an independent third party; and (5) certification

and confirmation of full cooperation with the State Bar of Michigan.

SIMON PLC ATTORNEYS

& COUNSELORS

*/s/ John W. Polderman*
JOHN W. POLDERMAN (P65720)
State Court Appointed Receiver
363 W. Big Beaver Road, Suite 410
Troy, MI 48084
(248) 720-0290
Dated: July 31, 2023     jpolderman@simonattys.com

# EXHIBIT "A"

## State of Michigan

## Attorney Discipline Board

**Grievance Administrator,**
**Michigan Attorney Grievance Commission,**

     Petitioner,

**Case No. 22-77-GA**

v

**Brian T. Dailey, P39945,**

     Respondent.

_____/

## Formal Complaint

## (Parties and Jurisdiction)

1.    Petitioner, Grievance Administrator, is authorized by MCR 9.109(B)(6) to prosecute this Formal Complaint by the Attorney Grievance Commission, which is the prosecution arm of the Supreme Court for the discharge of its constitutional responsibility to supervise and discipline Michigan attorneys.

2.    As a licensed Michigan attorney, Respondent Brian T. Dailey, P39945, is subject to the jurisdiction of the Supreme Court and the Attorney Discipline Board as set forth in MCR 9.104.

3.    Michigan attorneys have a duty to conduct themselves personally and professionally at all times in conformity with the standards imposed on members of the bar as a condition of the privilege to practice law.

4.    Respondent is a Michigan attorney who was licensed in 1987 and who resides or has his place of business in the County of Wayne.

## COUNT ONE – DAYA CASE

### (Factual Allegations)

5.    On or about early November of 2010, Respondent was retained to replace Plaintiff's counsel in *Christopher Daya v Onaissa Zahra Bacha and Fatima Bacha*, in Wayne County Circuit Court Case No. 09-029003-NI (*Daya*).

6.    On or about November 1, 2010, an Order Granting Plaintiff's Counsel Motion to Withdraw was entered by Hon. Robert L. Ziolkowski.

7.    On or about November 1, 2010, Respondent was ordered to reimburse Gursten, Christensen and Raitt, PC (Gursten) the full amount of costs totaling $5,495.15 that was paid to Respondent.

8.    Respondent initially agreed to reimburse Gursten per the order, but then refused to do so.

9.    After Gursten made repeated requests for payment from Respondent, a Motion to Show Cause was filed in Wayne County Circuit Court in 2012.

10.    On March 16, 2012, a Hearing on Motion to Show Cause and for Order of Garnishment was held before Judge Ziolkowski and Respondent was again ordered to repay Gursten $5,495.15 within 10 days.

11.    On March 20, 2012, a seven-day order was submitted to the court and on March 27, 2012, the Order Granting Motion to Show Cause and for Order of

2

Garnishment was entered ordering Respondent to repay Gursten $5,495.15 as ordered on March 16, 2012.

12.     Over the next two years, Respondent refused to make payment to Gursten as ordered on March 16, 2012 and as reflected in the written order dated March 27, 2012.

13.     On March 5, 2014, a Motion to Quash the November 1, 2010, Order Granting Plaintiff's Motion to Withdraw and reimburse Gursten, PC and the March 27, 2012, Order granting Motion to Show Cause for Order of Garnishment to reimburse Gurston, PC was filed and on March 6, 2014, a hearing on the Motion to Quash was held before Judge Ziolkowski in *Daya* to determine if the court would set aside the order of March 27, 2012, for the purpose of resolving the outstanding attorney fees and costs due to Gursten from Respondent.

14.     Judge Ziolkowski stated on the record that the Order Granting Motion to Show Cause and For Order of Garnishment entered on March 27, 2012 was valid and accurately reflected his rulings, and that they had not been followed by Respondent.

15.     On or about March 20, 2014, an order was entered by stipulation between Respondent and Paul Broschay, attorney for Mr. Daya, and Joshua Terebelo, attorney for Michigan Auto Law, that Gursten be paid $7,000 for the costs owed from the Order dated March 27, 2102, plus additional attorney fees pursuant to MCR 2.114 from the $10,000 in funds to be received by Respondent.

16.     Respondent did not pay the funds to Gursten as ordered.

3

**(Grounds for Discipline)**

17.     By reason of the conduct described above in Count One of this Formal Complaint, Respondent has committed the following misconduct and is subject to discipline under MCR 9.104 as follows:

a)     Failed to promptly pay or deliver any funds that a third person is entitled to receive, in violation of MRPC 1.15(b)(3);

b)     knowingly disobeyed an obligation under the rules of a tribunal, in violation of MRPC 3.4(c);

c)     engaged in conduct involving dishonesty, fraud, deceit or misrepresentation or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b);

d)     engaged in conduct that is prejudicial to the proper administration of justice, in violation of MRPC 9.104(1);

e)     engaged in conduct that exposes the legal profession or the court to obloquy, contempt, censure, or reproach, in violation of MCR 9.104(2); and,

4

f) engaged in conduct that is contrary to justice, ethics, honesty, or good morals, in violation of MCR 9.104(3).

## COUNT TWO – HERMIZ CASE
### (Factual Allegations)

18. At all times relevant to this complaint, Respondent represented the Plaintiff in *Sultana Hermiz v Rahul Mahajan and Rakesh Mahajan*, Macomb County Circuit Court, Case No. 09-2170-NI (*Hermiz*).

19. On or about September 9, 2011, an arbitration award was entered in *Hermiz* in the amount of $60,000.00.

20. On or about September 9, 2011, Progressive Michigan Insurance issued check number 471535850 in the amount of $60,000.00 on a PNC Bank account for full and final settlement of claims.

21. The check was jointly payable to Sultana Hermiz, The Dailey Law Firm, PC and Gursten, Koltonow, Gursten, Christensen & Raitt, PC only.

22. On or about September 13, 2011, Sultana Hermiz signed an Invoice for Attorney Fees & Costs agreeing to client expenses for Gursten in the amount of $1,338.98.

23. At all times relevant to this formal complaint and prior to 2012, Respondent maintained an IOLTA with Talmer Bank (f/k/a First Place Bank), titled DAILEY LAW FIRM PC IOLTA ACCOUNT, account number xxxxxx5575. (IOLTA Account #5575).

5

24.     On or about September 13, 2011, Respondent deposited Settlement Check No. 471535850 in the amount of $60,000.00 into IOLTA Account #5575.

25.     On September 13, 2011, Respondent drafted the following checks from his IOLTA Account #5575:

    a)     Check No. 2108 payable to Dailey Law Firm PC in the amount of $4,368.98 for expenses;

    b)     Check No. 2109 payable to Dailey Law Firm PC in the amount of $18,843.00 for his fee; and,

    c)     Check No. 2110 payable to Sultana Hermiz for $37,087.35.

26.     Respondent's drafting of check numbers 2108, 2109 and 2110 from IOLTA Account #5575 totaled $60,299.33.

27.     Thereafter, Respondent did not pay Gursten for attorney fees ordered and Respondent did not hold Gursten's fees in his IOLTA Account #5575.

28.     At all times relevant to this formal complaint and prior to 2012, Respondent maintained a Business Account with Talmer Bank (f/k/a First Place Bank, titled DAILEY LAW FIRM, PC, Account Number xxxxxx5525 (Business Account #5525).

29.     On or about April 8, 2015, and only after settlement of *Daya,* did Respondent pay Gursten $1,338.98 with funds from his Business Account #5525 with Check No. 5525.

6

## (Grounds for Discipline)

30.    By reason of the conduct described above in Count Two of this Formal Complaint, Respondent has committed the following misconduct and is subject to discipline under MCR 9.104 as follows:

a)    failed to promptly pay or deliver any funds that a third person is entitled to receive in violation of MRPPC 1.15(b)(3)

b)    failed to hold disputed property separate from the lawyer's property until the dispute is resolved in violation of MRPC 1.15(c);

c)    failed to hold property of clients or third persons in connection with a representation separate from the lawyer's own property, in violation of MRPC 1.15(d).

d)    engaged in conduct involving dishonesty, fraud, deceit or misrepresentation or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b);

e)    engaged in conduct prejudicial to the administration of justice, in violation of MRPC 8.4(c) and MCR 9.104(1); and,

7

f)      engaged conduct that exposes the legal profession or

the court to obloquy, contempt, censure, or reproach,

in violation of MCR 9.104(2).


## COUNT THREE – STEVEN LEHTO

### (Factual Allegations)

31.     Attorney Steven Lehto, (Mr. Lehto) and Respondent entered into an

agreement in or about 2010 whereby Mr. Lehto and Respondent would serve as co-

counsel on lemon law cases in Michigan.

32.     Respondent agreed that Mr. Lehto would retain clients, work on files,

and settle cases remotely while living in Florida and Respondent would attend court

proceedings in Michigan when necessary.

33.     Respondent agreed that his firm, Dailey Law Firm, PC, would split the

net value of any settlements, less costs which included 10 percent of the total fee to

his associate, attorney Justin Grove, and the remaining balance would be split 50/50

between Mr. Lehto and Respondent.

34.     A retainer fee agreement was prepared to be used in conjunction with

Michigan "Lemon Law" cases Mr. Lehto would have with Respondent.

35.     During the years of 2012-2013, Respondent received settlement funds

for the following cases shared with Mr. Lehto:

a)      William Williamson –*William Williamson v Ford

Motor Co, et al*, Wayne County Circuit Court Case

8

No. 12-001376-CP, filed February 1, 2012 and resolved January 22, 2013;

b)  Renee Vives –*Renee Vives v Ford Motor Co. et al*, Wayne County Circuit Court Case No. 12-005256-CP, filed April 18, 2012 and settled March 7, 2013;

c)  Tamera Malkowski – *Tamera Malkowski v Mazda Motor of America et al*, Wayne County Circuit Court Case No. 12-000274-CP, filed January 6, 2012 and settled March 6, 2013;

d)  Rochelle Price – *Rochelle Price v Chrysler Group*, Oakland County Circuit Court Case No. 12-016342-CP, filed January 22, 2013 and settled September 12, 2013;

e)  Catherine Kuban- *Catherine Kuban v Ford Motor Co. et al*, Wayne County Circuit Court Case No. 12-001917-CP, filed September 11, 2012 and settled April 29, 2013;

f)  Frank Sorrentino – *Frank Sorrentino v General Motors et al*, St. Clair County Circuit Court Case No. 12-001917-CP, filed August 6, 2012 and settled March 27, 2013; and,

9

g)      Milton Spokojny – *Milton Spokojny v Ford Motor Co. et al*, Wayne County Circuit Court Case # 12-007343-CP, filed May 31, 2012 and settled March 5, 2013.

36.      Respondent deposited settlement funds from *William v. Ford Motor Co.* directly into his Dailey Law Firm, PC, Business Account #5525 on January 22, 2013, in the amount of $6,000.00.

37.      On January 24, 2013, Respondent wire transferred $6,000.00 from his Business Account #5525 to his IOLTA Account #5575 to correct the earlier deposit.

38.      On or about March 1, 2013, Mr. Lehto began attempting to contact Respondent by telephone for payment on the seven aforementioned cases and when unable to reach Respondent by telephone, Mr. Lehto also sent Respondent text messages and email messages seeking payment.

39.      In March of 2013, Respondent told Mr. Lehto that payment to him was forthcoming but that Respondent was having trouble with funds and needed additional time to pay Mr. Lehto the money Respondent owed him.

40.      Respondent has failed to pay Mr. Lehto the money Respondent owes Mr. Lehto to date.

### (Grounds for Discipline)

41.      By reason of the conduct described above in Count Three of this Formal Complaint, Respondent has committed the following misconduct and is subject to discipline under MCR 9.104 as follows:

10

a) failed to promptly pay or deliver any funds that a third person is entitled to receive, and failed to promptly render a full accounting regarding the funds, in violation of MRPC 1.15(b)(3);

b) engaged in conduct involving dishonesty, fraud, deceit or misrepresentation or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b);

c) conduct that is prejudicial to the proper administration of justice, in violation of MRPC 8.4(c) and 9.104(1);

d) engaged in conduct that exposed the legal profession or the courts to obloquy, contempt, censure or reproach, in violation of MCR 9.104(2); and,

e) engaged in conduct that is contrary to justice, ethics, honesty, or good morals, in violation of MCR 9.104(3).

## COUNT FOUR – SUZANNE M. WICKETT

### (Factual Allegations)

42. On or about July 19, 2017, Suzanne M. Wickett (Ms. Wickett) was hired by Respondent to work as a bookkeeper in Respondent's law firm.

11

43.    Respondent was to pay Ms. Wickett by check for her services rendered to Respondent and Dailey Law Firm, PC.

44.    On or about August 22, 2017, Ms. Wickett deposited check #6115 in the amount of $1,1480.00 from Respondent's Business Account #5525 for wages.

45.    Respondent's check was retuned for nonsufficient funds.

46.    Respondent did not pay Ms. Wickett her wages for the weeks of September 1, 2017 and September 8, 2017.

47.    On September 15, 2017, Respondent promised Ms. Wickett that he would pay her back wages.

48.    Ms. Wickett's final day in Respondent's employment was September 15, 2017.

49.    On September 18, 2017, Ms. Wickett was instructed not to come to work at Dailey Law Firm, PC, and Ms. Wickett requested that Respondent pay her back wages as promised to her by Respondent on September 15, 2017.

50.    Thereafter, Ms. Wickett's requests for payment for her wages from Respondent were ignored by Respondent.

51.    On or about November 21, 2017, Ms. Wickett filed claim number 195406 with the Michigan Department of Licensing and Regulatory Affairs (LARA) associated with Respondent's failure to pay her wages.

52.    A Regulation Agent with LARA mailed Respondent a letter on December 18, 2017, advising that the investigation disclosed $2,210.00 was due to

Ms. Wickett and that Respondent was to pay this amount no later than December 21, 2017.

53.     Respondent did not pay the amount owed to Ms. Wickett by December 21, 2017.

54.     On January 31, 2018, LARA issued a Determination Order finding Respondent violated MCL 408.472(1), 408.475(2), 408.479(1)-(3) of the Payment of Wages and Fringe Benefits Act.

55.     The Determination Order required Respondent to pay Ms. Wickett $2,210 in gross wages, 10% a year interest of $.60 per day beginning November 12, 2017, until the determined amount was paid. Respondent was further assessed a civil penalty of $1,000 for his violation of the Act.

56.     Respondent appealed the LARA Determination Order.

57.     A hearing was held on May 4, 2018, before Administrative Law Judge David Cohen.

58.     Ms. Wickett, LARA representatives, and Respondent were present for the hearing.

59.     On June 4, 2018, Judge Cohen issued a decision affirming the LARA Determination Order and required Respondent to pay Ms. Wickett and submit payment to the State of Michigan.

60.     On September 18, 2018, LARA notified Ms. Wickett that payment had not been made in accordance with the Determination Order and that the matter

13

was referred to the Michigan Attorney General's Office (Attorney General) to collect the amount due to Ms. Wickett.

61.     The office of Attorney General engaged in collection efforts from Respondent to ensure that he paid the amount due to Ms. Wickett.

62.     On or about September 3, 2019, approximately one year after the amount due was sent to collections with the Attorney General and two years after Ms. Wickett's employment ended with Respondent, payment was finally received by Ms. Wickett from the State of Michigan in the amount of $2,462.00.

### (Grounds for Discipline)

63.     By reason of the conduct set forth in Count Four of this Formal Complaint, Respondent has committed the following misconduct and is subject to discipline under MCR 9.104 as follows:

    a)    knowingly disobeyed an obligation under the rules of a tribunal, in violation of MRPC 3.4(c);

    b)    engaged in conduct involving dishonesty, fraud, deceit or misrepresentation or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b);

    c)    engaged in conduct prejudicial to the administration of justice, in violation of MRPC 8.4(c) and MCR 9.104(1);

14

d)       engaged in conduct that exposed the legal profession or the courts to obloquy, contempt, censure or reproach, in violation of MCR 9.104(2); and,

e)       engaged in conduct that is contrary to justice, ethics, honesty or good morals, in violation of MCR 9.104(3).

## COUNT FIVE – DALEN HANNA

### (Factual Allegations)

64.     In or about 2017, Respondent employed Rodney Lloyd (Mr. Lloyd) as an assistant and made payments to Mr. Lloyd via business check.

65.     Mr. Lloyd would tender the checks from Respondent to Greenfield Super Market (GSM) in use of check cashing services offered by GSM.

66.     From November 17 to November 22, 2017, three checks that Respondent issued to Mr. Lloyd, totaling the sum of $2,600.00, were returned for Not Sufficient Funds that were cashed at GSM, each resulting in a $25 fee, for a total of $2,675.00

67.     GSM contacted Respondent and was promised by Respondent that the checks would be replaced after November 17, 2017.

68.     On or about December 8, 2017, Respondent issued Check No. 11341 from his Dailey Law Firm, PC Business Account #5525, payable to GSM in the amount of $2,675.00.

15

69.     On or about December 12, 2017, Check No. 11341 was returned for Not Sufficient Funds.

70.     Respondent's conduct for issuing a non-sufficient fund check in the amount of $2,675.00 is a violation of MCL 750.131.

71.     GSM made further attempts to be paid by Respondent after Check No. 11341 was deemed Not Sufficient Funds by the bank, but Respondent did not respond to these further attempts of GSM for payment, from December of 2017 to August of 2018.

72.     GSM then retained Dalen Patrick Hanna, P81533 (Attorney Hanna) to collect the funds that were owed by Respondent.

73.     Attorney Hanna made several attempts to collect the funds Respondent owed GSM without litigation, from August to December of 2018.

74.     On August 6, 2018, Attorney Hanna sent Respondent a Notice of Dishonored Check & Demand for Immediate Payment.

75.     Respondent did not pay the amount owed to GSM.

76.     On August 27, 2018, Attorney Hanna advised Respondent that he would be filing a lawsuit if Respondent did not pay the money he owed to GSM.

77.     Respondent did not respond to Attorney Hanna's attempt to settle the matter prior to filing a lawsuit.

78.     On December 14, 2018, Respondent filed a complaint for declaratory judgment in the matter captioned *Dailey Law Firm PC v Greenfield Super Market, Inc.*, 36th District Court, Case No. 18-179031-GC.

16

79.     On December 14, 2018, Attorney Hanna, on behalf of GSM, filed a Complaint against Respondent, in *Greenfield Supermarket, Inc., v Brian Thomas Dailey and Dailey Law Firm, PC*, 48th District Court, Case No. 18-34476-GCZ before the Hon. Diane D'Agostini.

80.     Respondent filed a motion to dismiss the civil case in the 48th District Court, which was denied on February 28, 2019, before Judge D'Agostini.

81.     On April 4, 2019, Judge D'Agostini granted Plaintiff's Motion for Sanctions Against Respondent and Defendant Dailey Law Firm, PC.

82.     Judge D'Agostini ordered sanctions be paid by Respondent pursuant to MCR 2.114(D), (E), and MCL 600.2591 in the amount of $1,500 within seven days of the entry of the order.

83.     In making her ruling, Judge D'Agostini stated that she found Respondent's defense "to absolutely be frivolous."

84.     On April 24, 2019, *Dailey v. Greenfield Supermarket* was dismissed with prejudice with no costs or fees to either party in the 36th District Court after Attorney Hanna filed a Motion for Summary Disposition on behalf of GSM.

85.     On May 2, 2019, a judgment was entered against Respondent and Dailey Law Firm PC, in the 48th District Court for $2,805, not including statutory interest, which was then served on the parties or their attorneys by first-class mail addressed to their last known addresses as defined by MCR 2.107(C)(3).

86.     To date, Respondent has not paid the sanction amount and the judgment amount entered to date in the 48th District Court case.

17

## (Grounds for Discipline)

87.     By reason of the conduct described above in Count Five of this Formal Complaint, Respondent has committed the following misconduct and is subject to discipline under MCR 9.104 as follows:

a)    failed to promptly pay or deliver any funds that a third person is entitled to receive, in violation of MRPC 1.15(b)(3);

b)    asserted a frivolous to a proceeding, in violation of MRPC 3.1;

c)    knowingly disobeyed an obligation under the rules of a tribunal, in violation of MRPC 3.4(c);

d)    violated or attempted to violate the Rules of Professional Conduct, in violation of MRPC 8.4(a);

e)    engaged in conduct involving dishonesty, fraud, deceit or misrepresentation or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b);

f)    engaged in conduct that is prejudicial to the proper administration of justice, in violation of MRPC 8.4(c) and MCR 9.104(1);

18

g)      engaged in conduct that exposes the legal profession to obloquy, contempt, censure, or reproach, in violation of MCR 9.104(2);

h)      engaged in conduct that is contrary to justice, ethics, honesty, or good morals, in violation of MCR 9.104(3); and,

i)      engaged in conduct that violated a criminal law of a state or of the United States in violation of MCR 9.104(5).

## COUNT SIX – ARON ORTH

### (Factual Allegations)

88.      On or about August 10, 2011, Maria Orth (Mrs. Orth) was involved in an automobile accident and suffered injuries as a result of this incident.

89.      In 2013, Mrs. Orth retained Respondent for representation.

90.      On April 7, 2014, Respondent filed a complaint in the matter captioned *Maria Orth v Bristol West Preferred Insurance Company*, Wayne County Circuit Court Case No. 14-004466-NI.

91.      The case settled and a check in the amount of $175,000.00 was issued on March 27, 2015, jointly payable to Dailey Law Firm, PC and Maria Orth.

92.      A deposit slip shows the settlement check was deposited into Respondent's IOLTA Account #5575 on April 7, 2015.

93.      Mrs. Orth passed away on December 22, 2015.

94. At the time of Mrs. Orth's death, Respondent had not disbursed all of the settlement funds.

95. Mrs. Orth's family contacted Respondent for disbursement of the settlement funds to pay for her funeral expenses.

96. Bank records from Respondent's IOLTA Account #5575 reflect that the following wire transfers were made to Mrs. Orth and/or Michael Orth (her spouse):

- 07/07/2015: $3,000
- 08/21/2015: $3,000
- 10/16/2015: $3,000
- 12/04/2015 $3,000
- 01/06/2016: $5,000
- 09/21/2016: $5,000
- 01/10/2017: $3,025

97. There was a Medicaid lien on the settlement funds in the amount of $13,889.98.

98. Additionally, the amount of $8,495.00 was owed to Plaintiff Investment Funding.

99. Expenses in the case totaled $1,531.19.

100. Payment from Respondent's IOLTA Account #5575 show that Plaintiff Investment Funding was paid in full on April of 2015.

101. Attorney fees and expenses in the total amount of $29,622.68 were paid to attorney Scott Decius, an associate of Respondent's firm. The total attorney fee from the settlement was $57,827.94.

102. Because Respondent did not disburse Mrs. Orth's settlement funds timely prior to her death, the settlement funds became a part of her probate estate.

103. On or about January 4, 2016, Mr. Orth retained Respondent to file a probate court case for the estate of Mrs. Orth.

104. Respondent's minimum fee was listed for $7,500, but his proposed retainer agreement is unsigned, and Respondent did not open a probate estate for Mrs. Orth.

105. Respondent's fee agreement violated MCR 5.313 because the retainer agreement is unsigned.

106. On January 5, 2016, Respondent wire transferred $7,500 from his IOLTA Account #5575 to his Business Account #5525, before an estate was opened.

107. On January 6, 2016, Respondent disbursed additional settlement funds to Mr. Orth in the sum of $5,000. On September 21, 2016 Respondent disbursed additional settlement funds to Mr. Orth in the sum of $5,000 and on January 10, 2017, Respondent disbursed additional settlement funds to Mr. Orth in the sum of $3,025.00

108. In or about February of 2017, the family of Maria Orth retained Anthony McClerklin, P74296, (Attorney McClerklin) to open and probate the Estate of Maria Orth.

21

109. On February 14, 2017, Attorney McClerklin commenced a probate action titled *Estate of Maria Orth*, Eaton County Probate Court, Case No. 17-52997-DE.

110. On August 4, 2017, Mr. Orth passed away.

111. On January 26, 2018, Maria Orth's son, Aron Orth, was appointed as the personal representative of her estate.

112. On September 17, 2017, Respondent's associate, Kyle Dupuy, filed a statement and proof of claim asserting an attorney fee in the amount of $10,795.00 for professional services rendered in the probate matter and for a Medicaid lien in the amount of $13,889.98. Respondent's fee was clearly excessive.

113. The statement filed by Respondent's firm includes an account statement that falsely stated that $7,500 of Respondent's fee was retained in his IOLTA Account #5575.

114. Respondent's IOLTA Account #5575 records show a wire transfer of the amount of $7,500.00 from Respondent's IOLTA to Respondent's Business Account #5525 on January 5, 2016.

115. On April 27, 2018, a Notice of Disallowance of Claim regarding Respondent's firm's request for the attorney fee was filed.

116. On June 26, 2018, Respondent filed a civil complaint against the Estate of Maria Orth, in *Dailey Law Firm PC v Michael Orth Individually as Personal Representative of the Estate of Maria Elidia Orth and Aaron Orth as*

*Personal Representative of the Estate of Maire Elidia Orth*, Wayne County Circuit Court, Case No. 18-007194-CK.

117. In Respondent's first amended complaint filed on October 2, 2018, Respondent alleged breach of contract, unjust enrichment, and detrimental reliance, and sought declaratory and equitable relief.

118. Respondent's amended civil complaint specifically alleged that Respondent was owed costs and fees in the amount of $10,795.

119. Respondent further alleged in his civil complaint that he was attempting to disburse funds to the proper payees, including Medicaid and Medicare, but that the civil defendants had not given authority to disburse the funds.

120. Respondent alleged that the liens to Medicaid and Medicare "are believed to be in an amount in excess of $25,000."

121. On or about July 17, 2019, the parties to the civil complaint brought by Respondent negotiated a settlement and placed the settlement on the court's record.

122. Under the terms of the settlement agreement Respondent was to pay the Medicare lien, leaving a settlement fund balance of $57,755.89.

123. Respondent was to retain $17,000 as full and final settlement of Respondent's claim.

124. A payment of $40,755.89 was owed to the estate within 24 hours of signature by the civil defendant.

125.   On August 7, 2019, Respondent requested that Aron Orth sign the settlement agreement and release.

126.   On August 12, 2019, a settlement agreement and release of claims was executed by Aron Orth, individually and as personal representative of the estate.

127.   Thereafter, Respondent did not pay the estate or the Medicare lien.

128.   On or about August 30, 2019, a motion to enforce settlement and compel payment of coasts and attorney fees was filed by the civil defendants and served on Respondent.

129.   On September 6, 2019, Respondent issued checks payable to the estate and the Michigan Department of Community Health.

### (Grounds for Discipline)

130.   By reason of the conduct set forth in Court Six of this Formal Complaint, Respondent has committed the following misconduct and is subject to discipline under MCR 9.104:

   a)   Neglected a legal matter, in violation of MRPC 1.1(c);

   b)   failed to act with reasonable diligence and promptness in representing a client, in violation of MRPC 1.3;

   c)   failed to promptly pay or deliver any funds that a third person is entitled to receive, in violation of MRPC 1.15(b)(3);

24

d)  knowingly disobeyed an obligation under the rules of a tribunal, in violation of MRPC 3.4(c);

e)  Charging or collecting, or attempting to charge or collect, clearly illegal or excessive fees in violation of MRPC 1.5(a) and MCR 5.313 (B).

f)  engaged in conduct involving dishonesty, fraud, deceit or misrepresentation or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b);

g)  engaged in conduct that is prejudicial to the proper administration of justice, in violation of MRPC 9.104(1);

h)  engaged in conduct that exposed the legal profession of the courts to obloquy, contempt, censure or reproach, in violation of MCR 9.104(2); and,

i)  engaged in conduct that is contrary to justice, ethics, honesty or good morals, in violation of MCR 9.104(3).

## COUNT SEVEN – ARTHUR OROFINO

### (Factual Allegations)

131.  On or about November 29, 2016, Arthur Orofino (Mr. Orofino) was involved in an automobile accident.

132. On or about May 3, 2017, Mr. Orofino retained Respondent by contingent fee agreement for all claims arising from the automobile accident including first- and third-party claims.

133. On July 11, 2017, Respondent filed the matter captioned *Arthur Andrew Orofino v Travelers Indemnity Company*, Wayne County Circuit Court Case No. 17-101508-NF (*Travelers*).

134. On March 29, 2018, Respondent filed a case against the driver of the other automobile in a matter captioned *Arthur Orofino v Bassam Naoum*, Oakland County Circuit Court Case No. 2018-164734-NI (*Naoum*).

135. *Travelers* settled in June of 2018, for $80,000.

136. The $80,000 settlement check for Travelers was deposited into Respondent's IOLTA Account #5575 on July 12, 2018.

137. On June 11, 2019, approximately one year after receiving the settlement funds, Respondent drafted a distribution statement for Mr. Orofino to execute.

138. The no fault claims totaled just over $160,000. Respondent calculated his one-third fee on the amount of the no fault claims ($160,000), rather than on the settlement amount obtained ($80,000).

139. Also, on or about June 11, 2019, Respondent issued a check in the amount of $27,799.20 payable from his IOLTA Account #5575 to Mr. Orofino, from the *Travelers* settlement funds.

140.   On June 12, 2019, Respondent deposited a settlement check for $110,000 representing the settlement funds for *Naoum*.

141.   The $110,000 settlement check for Naoum was deposited in Respondent's IOLTA Account #5575 on June 12, 2019.

142.   On July 3, 2019, Respondent's distribution statement for the $110,000 settlement in *Naoum* showed the net due to Mr. Orofino was $71,962.81 after deduction of costs and Respondent's one-third fee.

143.   On July 3, 2019, Respondent issued check number 16154 from his Business Account #5525 to Mr. Orofino in the amount of $71,962.81.

144.   Respondent's check number 16154 to Mr. Orofino was returned for nonsufficient funds on July 5, 2019.

145.   Respondent issued Mr. Orofino a second check number 15360 from his IOLTA Account #5575.

146.   Respondent dated this second check to Mr. Orofino as July 3, 2019.

147.   The check dated July 3, 2019 was then negotiated on July 9, 2019.

148.   Respondent issued the following additional checks from his IOLTA Account #5575 on behalf of Mr. Orofino: (1) check payable to Executive Case Management LLC for $3,829.37 on August 15, 2019; and (2) check payable to Equian LLC for $2,670.64 on October 9, 2019.

149.   Respondent did not promptly pay all the providers with outstanding balances on behalf of Mr. Orofino.

150. As a result of Respondent not promptly paying all the providers on behalf of Mr. Orofino, creditors continue to pursue payment.

151. Respondent answered that he paid half of the outstanding bills for Mr. Orofino and has not provided an update on the remainder due.

## (Grounds for Discipline)

152. By reason of the conduct set forth in Count Seven of this Formal Complaint, Respondent has committed the following misconduct and is subject to discipline under MCR 9.104 as follows:

a) failed to act with reasonable diligence and promptness in representing a client, in violation of MRPC 1.3;

b) Respondent charged or attempted to charge a clearly excessive fee in violation of MRPC 1.5(a);

c) failed to promptly pay or deliver funds that a third person is entitled to receive, in violation of MRPC 1.15(b)(3);

d) engaged in conduct involving dishonesty, fraud, deceit or misrepresentation or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b);

28

e)      engaged in conduct that is prejudicial to the proper administration of justice, in violation of MRPC 9.104(1);

f)      engaged in conduct that exposed the legal profession or the courts to obloquy, contempt, censure or reproach, in violation of MCR 9.104(2); and,

g)      engaged in conduct that is contrary to justice, ethics, honesty or good morals, in violation of MCR 9.104(3).

## COUNT EIGHT – STEPHANIE DALLAS

### (Factual Allegations)

153. On or about February 21, 2019, Stephanie Dallas (Ms. Dallas) was involved in an automobile accident.

154. On March 5, 2019, Ms. Dallas met with Robert Smith, an associate of Respondent's firm.

155. Ms. Dallas informed Respondent's associate that she had completed an application for no fault benefits with her insurer AAA Auto insurance (AAA) but had not been notified if AAA would voluntarily pay her benefits.

156. Ms. Dallas was encouraged to retain Respondent's firm to handle the first-party benefits.

157. On March 5, 2019, Ms. Dallas executed a contingent fee agreement with Respondent that would allow for Respondent to recover one-third of the proceeds after costs.

158. After Ms. Dallas signed the contingent fee agreement with Respondent, AAA decided to voluntarily pay her first-party benefits.

159. Respondent received the first-party benefit checks for Ms. Dallas and deducted one-third of the money for his fee.

160. Respondent did not pay providers for Ms. Dallas.

161. As a result of Respondent's not paying these providers, Ms. Dallas had to pay the providers in order to continue to receive treatment.

162. As a result of Respondent's failure to pay providers for Ms. Dallas, her credit score was negatively impacted, and collection agencies began collection efforts.

163. In or about the summer of 2019, Respondent received and held lost wage benefit checks for Ms. Dallas for multiple months.

164. On or about September 16, 2019, Ms. Dallas terminated representation with Respondent, and requested her complete file and an accounting of AAA's payments to Respondent.

165. Respondent did not provide Ms. Dallas with her file or an accounting as requested.

166. On or about September 25, 2019, Ms. Dallas retained new counsel, Craig Nemier, P26476, who sent a letter to Respondent requesting the file for Ms. Dallas and the AAA Accounting.

167. Respondent did not respond to Attorney Nemier's correspondence.

168. On or about October 3, 2019, Attorney Nemier sent Respondent a copy of his previous letter requesting the file and the AAA Accounting regarding Ms. Dallas by email to Respondent.

169. Respondent did not answer.

170. On October 17, 2019, Attorney Nemier left a voicemail message and sent another email to Respondent regarding Ms. Dallas.

171. Respondent still did not respond to Attorney Nemier.

172. On February 5, 2020, Attorney Nemier filed a civil case against Respondent and his law firm in the matter captioned *Stephanie Dallas v ACIA et al*, Oakland County, Case No. 200-170465-NF.

173. Respondent filed an answer and a counter-complaint on March 12, 2020.

174. On June 18, 2020, Attorney Nemier filed a motion for partial summary disposition.

175. On August 5, 2020, Hon. Martha Anderson granted partial summary disposition in a written opinion and order.

176. On August 17, 2020, the Court entered an order requiring Respondent within 10 days of the entry of the order to:

      a)     Pay Ms. Dallas whatever money she was owed for past lost wages less any attorney fee claimed through the present;

      b)     Pay every provider all monies owed to them without deducting any attorney fee; and,

      c)     Provide Ms. Dallas and her attorney a complete accounting or all checks received and all payments made.

177.    Respondent did not comply with the Court's order.

178.    As a result of Respondent failing to comply with the order of Judge Anderson, a provider for Ms. Dallas, Affiliated Diagnostics (Count Nine herein), filed an ex-parte motion for order to show cause on September 10, 2020.

179.    An order for Respondent to show cause was issued on September 15, 2020, providing a date for hearing of September 30, 2020.

180.    Attorney Nemier filed a motion to be included in the show cause order of September 18, 2020.

181.    Respondent issued a check to Ms. Dallas on September 29, 2020, in the amount of $172.73.

182.    Respondent did not provide an accounting as ordered.

183.    On October 23, 2020, Attorney Nemier filed a show cause motion regarding the failure to provide an accounting.

184. A hearing was conducted on November 25, 2020, at the Court found that Respondent had not yet complied with the August 17, 2020 order.

185. The Court warned Respondent to file his accounting by December 2, 2020.

186. Respondent filed his accounting with the court on December 1, 2020.

**(Grounds for Discipline)**

187. By reason of the conduct set forth in Count Eight of this Formal Complaint, Respondent has committed the following misconduct and is subject to discipline under MCR 9.104 as follows:

    a)     failed to act with reasonable diligence and promptness in representing a client, in violation of MRPC 1.3;

    b)     failed to promptly comply with a client's reasonable request for information, in violation of MRPC 1.4(a);

    c)     failed to explain a matter to client to the extent reasonably necessary to permit the client to make informed decisions about the representation, in violation of MRCP 1.4(b);

    d)     failed to promptly pay or deliver funds that a third person is entitled to receive and failed to promptly

render a full accounting of such funds, in violation of MRCP 1.15(b)(3);

e) knowingly disobeyed an obligation under the rules of a tribunal, in violation of MRPC 3.4(c);

f) engaged in conduct involving dishonesty, fraud, deceit or misrepresentation or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b);

g) engaged in conduct that is prejudicial to the proper administration of justice, in violation of MRPC 8.4(c) and MCR 9.104(1);

h) engaged in conduct that exposed the legal profession or the courts to obloquy, contempt, censure or reproach, in violation of MCR 9.104(2); and,

i) engaged in conduct that is contrary to justice, ethics, honesty or good morals, in violation of MCR 9.104(3).

## COUNT NINE - AFFILIATED DIAGNOSTICS

### (Factual Allegations)

188. Petitioner realleges, as if cited verbatim, the Factual Allegations from Count Eight of this Formal Complaint.

34

189.     On or around April of 2019, Affiliated Diagnostics performed MRI services for Ms. Dallas related to her February 12, 2019 automobile accident.

190.     AAA allowed payments for two bills submitted by Affiliated Diagnostics in the amounts of $30,925 and $2,317.

191.     AAA issued a check for $ $30,925 on April 26, 2019, which was deposited into Respondent's IOLTA Account #5575 on May 1, 2019.

192.     AAA issued a check for $2,317 on May 14, 2019, which was deposited into Respondent's IOLTA Account #5575 on May 21, 2019.

193.     Respondent did not promptly disburse the funds from AAA to Affiliated Diagnostics.

194.     Respondent claimed a one-third fee on these funds.

195.     On September 16, 2019, Ms. Dallas terminated Respondent.

196.     The civil suit filed by Attorney Nemier resulted in an order to pay every provider all monies owed to them without holding out any money for attorney fees within ten days of entry of the order.

197.     On August 20, 2020, attorney John Betz, P24468, filed a demand for payment on behalf of Affiliated Diagnostics in *Dallas v ACIA*.

198.     Due to Respondent's failure to comply with the August 17, 2020 order of Judge Anderson in the civil action, Affiliated Diagnostics filed an ex-parte show cause motion against Respondent.

199.     The motion for an order to show cause was granted on September 15, 2020.

35

200.  The Court scheduled an evidentiary hearing for September 30, 2020.

201.  On September 29, 2020, Affiliated Diagnostics filed an acknowledgement of receipt of a check from Respondent in the total amount of $23,242.

**(Grounds for Discipline)**

202.  By reason of the conduct set forth in Count Nine of this Formal Complaint, Respondent has committed the following misconduct and is subject to discipline under MCR 9.104 as follows:

a)  failed to promptly pay or deliver funds that a third person is entitled to receive, and failing to promptly render a full accounting regarding such funds, in violation of MRPC 1.15(b)(3);

b)  knowingly disobeyed an obligation under the rules of a tribunal, in violation of MRPC 3.4(c);

c)  engaged in conduct involving dishonesty, fraud, deceit or misrepresentation or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b);

d)  engaged in conduct prejudicial to the administration of justice in violation of MRPC 8.4(c) and MCR 9.104(1);

36

     e)     engaged in conduct that exposed the legal profession or the courts to obloquy, contempt, censure or reproach, in violation of MCR 9.104(2); and,

     f)     engaged in conduct that is contrary to justice, ethics, honesty or good morals, in violation of MCR 9.104(3).

## COUNT TEN – JULIUS HARDEN

### (Factual Allegations)

203.   On October 27, 2017, Julius Harden (Mr. Harden) was injured in an automobile accident.

204.   On or around November 15, 2017, Respondent entered into a contingent fee agreement with Mr. Harden.

205.   Mr. Harden submitted a third-party automobile negligence claim against the other driver involved in the accident with Mr. Harden.

206.   The other driver had insurance with GEICO in the amount of $20,000 per person and $40,000 per accident.

207.   Respondent recovered $20,000 from the insurance company for Mr. Harden's claim.

208.   On December 5, 2018, the $20,000 check was deposited into Respondent's IOLTA Account #5575.

209.   On March 1, 2019, nearly 90 days later, Respondent issued check number 15284 in the amount of $12,835.96 payable to Mr. Harden.

210. On January 18, 2019, Respondent filed in Wayne County Circuit Court the case of *Julius Harden v Meemic Insurance Company*, Case No. 19-000859-NI, seeking underinsured motorist benefits.

211. On March 1, 2019, Respondent filed an amended complaint.

212. Between October 2017 and October of 2019, Mr. Harden's wife performed household services for Mr. Harden.

213. Mr. Harden submitted monthly household services statements directly to Meemic and would receive payment for these services directly from Meemic.

214. However, the checks issued by Meemic for September and October of 2019 for services were mistakenly sent to Respondent.

215. Respondent accepted the two checks from Meemic for household services, in the amounts of $380 and $320 respectively, and deposited same into Respondent's IOLTA Account #5575 on October 21, 2019, and November 8, 2019.

216. Respondent did not notify Mr. Harden that Respondent received the two household service checks, nor did Respondent obtain permission from Mr. Harden to deposit the funds from those two household service checks.

217. Mr. Harden, having not received the two household service checks, contacted Meemic and was informed the checks had been sent to Respondent.

218. Respondent asserted to Mr. Harden that the contingent fee agreement was never amended to provide for a contingent fee regarding the no fault PIP benefit claims, therefore an hourly fee was due.

38

219.     Respondent told Mr. Harden if he distributed the funds received, Mr. Harden would not recover because the law firm had more hours worked collecting the PIP benefits than the $700 would cover.

220.     Respondent refused to pay Mr. Harden the proceeds from the two household services checks.

221.     The underinsured motorist claim against Meemic proceeded to arbitration, on November 19, 2019.

222.     The arbitrators awarded underinsurance benefits in the amount of $22,500 in an arbitration award entered on November 20, 2019.

223.     On November 26, 2019, Meemic issued a check in the amount of $22,500 to Respondent. This check was deposited into Respondent's IOLTA Account #5575 on December 6, 2019.

224.     Meemic moved for summary disposition regarding any medical provider bills. Mr. Harden had a coordinated policy and, as such, the providers were to bill the medical insurer Blue Care Network.

225.     On September 8, 2020, the motion for summary disposition was granted in Meemic's favor.

226.     After more than 90 days without receipt of payment from Respondent, Mr. Harden retained attorney Jordan Altus, P82384, on March 17, 2021, to recover the proceeds from Respondent.

227. On March 26, 2021, Attorney Altus sent a demand letter to Respondent for payment of the money owed to Mr. Harden from the arbitration, and to Mrs. Harden for attendant care.

228. Respondent failed to reply to the demand letter.

229. Attorney Altus made continued attempts to contact Respondent and was unsuccessful.

230. In or about April of 2021, Respondent demanded that Mr. Harden sign a new contingent fee agreement.

231. Respondent prepared a new contingent fee agreement and settlement accounting dated April 14, 2021 and sent it to Attorney Altus.

232. Under the accounting prepared by Respondent, the total proceeds were $23,200. Expenses totaled $2,175.19 and attorney fees totaled $7,008.27.

233. As the parties negotiated a one-third contingent fee for all three checks involved, net proceeds owing to Mr. Harden totaled $14,016.72.

234. Attorney Altus returned the signed documents to Respondent.

235. Respondent then returned the accounting to Attorney Altus and asked that it be notarized resulting in further delay in disbursement to Mr. Harden. Attorney Altus complied with this additional request and returned the documents to Respondent on May 21, 2021.

236. Respondent refused to promptly disburse the funds to Mr. Harden upon receipt of the notarized accounting provided by Attorney Altus to Respondent.

237. On June 14, 2021, Attorney Altus filed a complaint in the Oakland County Circuit Court in *Julius Harden v Brian Dailey Law Firm*, Case 210188483-CZ.

238. Only after this litigation was initiated did Respondent issue a check dated June 18, 2021, in the amount of $14,016.72 for payment to Mr. Harden.

239. Respondent's failure to promptly turn over the proceeds to Mr. Harden caused Mr. Harden to expend money to recover the funds Mr. Harden was owed from Respondent.

240. Mr. Harden had a 50% contingency fee agreement with Attorney Altus to recover his funds from Respondent, resulting in Mr. Harden collecting less than he would have if he did not have to retain additional counsel.

### (Grounds for Discipline)

241. By reason of the conduct set forth in Count Ten of this Formal Complaint, Respondent committed the following misconduct and is subject to discipline under MCR 9.104 as follows:

    a)      failed to act with reasonable diligence and promptness in representing a client, in violation of MRPC 1.3;

    b)      failed to promptly comply with a client's reasonable requests for information, in violation of MRPC 1.4(a);

c) failed to explain a matter to client to the extent reasonably necessary to permit the client to make informed decisions about the representation, MRPC 1.4(b);

d) failed to promptly pay or deliver funds that a third person is entitled to receive, in violation of MRPC 1.15(b)(3);

e) failed to promptly render a full accounting regarding such funds, in violation of MRPC 1.15(b)(3);

f) engaged in conduct involving dishonesty, fraud, deceit or misrepresentation or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b);

g) engaged in conduct that is prejudicial to the proper administration of justice, in violation of MRPC 9.104(1);

h) engaged in conduct that exposed the legal profession or the courts to obloquy, contempt, censure or reproach, in violation of MCR 9.104(2); and,

i) engaged in conduct that is contrary to justice, ethics, honesty or good morals, in violation of MCR 9.104(3).

## COUNT ELEVEN – KENT S. SIEGEL

### (Factual Allegations)

242.     Respondent represented plaintiff in *Sherry Diehl v Citizens Insurance Co.*, in Wayne County Circuit Court Case No. 19-01466-NI filed on November 1, 2019.

243.     In March of 2021, an order for mediation was entered.

244.     On April 14, 2021, Kent S. Siegel, served as mediator in the pending civil case and the parties were required to pay fees associated with mediation.

245.     On June 28, 2021, Respondent paid his portion of the mediation fee with check number 39107 in the amount of $500.00 from his Business Account with TCF Bank ending in #0427.

246.     On July 1, 2021, Account #0427 was garnished $6,174.28 by "MI Garn."

247.     On July 7, 2021, Respondent's check number 39107 was returned for insufficient funds.

248.     On or about July 12, 2021, Respondent was notified by Mr. Siegel that check number 39107 for $500 was not honored and that payment was due.

249.     On July 12, 2021, Respondent falsely stated to Mr. Siegel that Respondent's bounced check was a "bank error" and that the check would be replaced.

250.     Respondent did not promptly send the funds he owed to Mr. Siegel.

43

251. On or about July 26, 2021, after having not received the payment from Respondent, Mr. Siegel again contacted Respondent about the payment.

252. During this conversation, on or about July 26, 2021, Respondent expressed surprise to Mr. Siegel that Mr. Siegel had not received the replacement check, despite knowing that he had not sent the replacement check to Mr. Siegel and at that time Account #0427 had a balance of less than $500.

253. During the conversation on or about July 26, 2021, Respondent again promised Mr. Siegel he would send payment, assuring Mr. Siegel that he was overnighting another replacement check.

254. Respondent did not send the funds owed to Mr. Siegel when promised on or about July 26, 2021.

255. On August 5, 2021, having still not received a replacement check from Respondent, Mr. Siegel filed a Request for Investigation with the Attorney Grievance Commission relaying the bounced check and inaccurate representations of Respondent.

256. On August 13, 2021, Respondent sent Mr. Siegel the funds he owed Mr. Sigel by wire transfer from Respondent's Bank Account with TCF ending in #0427.

**(Grounds for Discipline)**

257. By reason of the conduct described above in Count Eleven of this Formal Complaint, Respondent has committed the following misconduct as is subject to discipline under MCR 9.104 as follows:

44

a) failed to promptly pay or deliver funds that a third person is entitled to receive, and failed to promptly render a full accounting regarding such funds, in violation of MRPC 1.15(b)(3);

b) knowingly disobeyed an obligation under rules of the tribunal, in violation of MRPC 3.4(c);

c) engaged in conduct involving dishonesty, fraud, deceit or misrepresentation or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b);

d) engaged in conduct that is prejudicial to the administration of justice, in violation of MRPC 8.4(c);

e) engaged in conduct that is prejudicial to the proper administration of justice, in violation of MRPC 9.104(1);

f) engaged in conduct that exposed the legal profession or the courts to obloquy, contempt, censure or reproach, in violation of MCR 9.104(2); and,

g) engaged in conduct that is contrary to justice, ethics, honesty or good morals, in violation of MCR 9.104(3).

## COUNT TWELVE – FAILURE TO TIMELY ANSWER REQUEST'S FOR INFORMATION

### (Factual Allegations)

258.    The following requests for investigation were mailed to Respondent's address of record with the State Bar of Michigan in accordance with MCR 9.112(C)(1)(b), requiring his signed written Answer within twenty-one (21) days as follows:

| AGC File No. | Dated Mailed to Respondent | Complainant |
|---|---|---|
| 19-0376 | 02/19/2019 | Dalen Hanna |
| 19-0692 | 03/06/2019 | Aron Orth |
| 19-1187 | 05/13/2019 | Arthur Orofino |
| 19-2664 | 12/05/2019 | Samira Bazzi |
| 21-1780 | 10/27/2021 | Kent Siegel |

259.    On October 27, 2021, the request for investigation in AGC File No. 21-1780 was mailed and emailed to Respondent at the following address: briandailey@daileylawyers.com.

260.    Respondent failed to answer the Request for Investigation listed above in the time allowed and final notices enclosing a second copy of the Request for Investigation was served via certified mail on Respondent in accordance with MCR 9.112(C)(1)(b) as follows:

| AGC File No. | Certified Mailing Date | Complainant |
|---|---|---|
| 19-0376 | 03/24/2019 | Dalen Hanna |

46

| | | |
|---|---|---|
| 19-0692 | 05/22/2019 | Aron Orth |
| 19-1187 | 07/18/2019 | Arthur Orofino |
| 19-2851 | 01/24/2020 | Samira Bazzi |
| 21-1780 | 11/30/2021 | Kent Siegel |

261.    The final notices also allowed Respondent an additional 10 days to answer the Request for Investigation.

262.    Respondent was granted an extension on April 19, 2019, in AGC File No. 19-0692 until May 5, 2019.  Respondent failed to comply with the extended deadline.

263.    On January 3, 2022, in AGC File No. 21-1780, Respondent was sent another copy of the Request for Investigation as a courtesy, via email.

264.    Counsel for Petitioner received a certified mail receipt on each of the aforementioned Requests for Information, confirming that the final notices were accepted at Respondent's address.

265.    Respondent failed to answer each Request for Investigation in the time allowed pursuant to MCR 9.112(C)(b), having provided untimely responses as follows:

| AGC File Number | Date Answer Received | Complainant |
|---|---|---|
| 19-0376 | 04/01/2019 | Dalen Hanna |
| 19-0692 | 06/03/2019 | Aron Orth |
| 19-1187 | 07/26/2019 | Arthur Orofino |

47

| 19-2851 | 02/03/202 | Samira Bazzi |
| 21-1780 | 03/11/2022 | Kent Siegel |

### (Grounds for Discipline)

266. By reason of the conduct described in Count Twelve of this Complaint, Respondent has committed the following misconduct and is subject to discipline under MCR 9.104:

a) failure to answer the Request for Investigation in conformity with MCR 9.113(A) and (B)(2), and in violation of MCR 9.104(7);

b) knowingly failed to respond to a lawful demand for information in violation of MRPC 8.1(a)(2);

c) engaged in conduct involving dishonesty, fraud, deceit or misrepresentation or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b);

d) engaged in conduct that is prejudicial to the administration of justice, in violation of MRPC 8.4(c) and MCR 9.104(1);

e) engaged in conduct that exposes the legal profession or the courts to obloquy, contempt, censure, or reproach, in violation of MCR 9.104(2); and,

48

f)     engaged in conduct that is contrary to justice, ethics,

honesty or good morals, in violation of MCR 9.104(3).


Wherefore, Respondent should be subjected to such discipline as may be warranted by the facts or circumstances of such misconduct, including any restitution owed.


Dated: October 7, 2022            **MICHIGAN ATTORNEY**
**GRIEVANCE COMMISSION**

**MICHAEL V. GOETZ, P41139**
**Grievance Administrator**
PNC Center
755 W. Big Beaver Rd., Suite 2100
Troy, MI 48084
(313) 961-6585

**State of Michigan**

**Attorney Discipline Board**

**Grievance Administrator,**
**Michigan Attorney Grievance Commission,**

      Petitioner,

v

                                 **Case No. 22-77-GA**

**Brian T. Dailey, P39945,**

      Respondent.

_____/

## Discovery Demand

As permitted by MCR 9.115(F)(4), Petitioner makes the following demand for discovery:

    1)    Copies of all documentary evidence to be introduced at the hearing, or access to such documentary evidence so that it can be inspected and copied, in accordance with MCR 9.115(F)(4)(a); and,

    2)    The names and addresses of any persons to be called as witnesses at the hearing, in accordance with MCR 9.115(F)(4)(a)(i).

Under MCR 9.115(F)(4)(c), your failure to comply timely with the above demands may subject you to one or more of the sanctions set forth in MCR 2.313(B)(2)(a)-(c).

Dated: October 7, 2022

                                */s/ Kenneth E. Frazee*
                                Kenneth E. Frazee, P51903
                                Senior Associate Counsel
                                Attorney Grievance Commission
                                PNC Center
                                755 W. Big Beaver, Suite 2100
                                Troy, MI 48084
                                (313) 961-6585