UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

IN THE MATTER OF:

Dailey Law Firm PC

Debtor.

_____/

Case No. 23-45970
Chapter 11
Hon. Maria L. Oxholm

## ANSWER TO MOTION OF COURT APPOINTED RECEIVER TO CONFIRM AUTOMATIC STAY IS NOT IN EFFECT OR IN THE ALTERNATIVE TO LIFT STAY AS TO THE INTERPLEADER CASE

Debtor, Dailey Law Firm, P.C., ("Debtor") through counsel, Goldstein Bershad & Fried PC, in response to Pre Petition Receiver's Motion, states as follows:

The Pre Petition's Receiver Motion for Relief from the Automatic Stay must be denied for the following reasons:

#1 The Debtor has an interest in the funds that are currently held in the IOLTA account; therefore, the Pre Petition Receiver's request is one for turnover, which must be done by an adversary proceeding. If the Pre Petition Receiver's current motion for relief from the automatic stay is granted the transfer of the funds would be an unauthorized transfer of estate property without notice.

#2 The Pre Petition Receiver cannot satisfy his burden for lifting the automatic stay.

## I. Introduction

The Debtor filed an interpleader action in the Wayne County Circuit Court as it relates to the settlement proceeds from a client of the Debtor, Jody Ingram ("Ingram"). Unfortunately, the Pre Petition's Receiver's recitation of facts regarding the disposition of the settlement funds is grossly inaccurate. The Debtor represented Ingram in two separate matters. First, a no fault case in which he successfully obtained a settlement of $600,000.00 and indemnification against certain medical

providers in the amount of $97,146.45. After expenses, the contingency fee paid was $230,319.46. Importantly, Ingram agreed to and signed off on the settlement. As set forth in the retainer agreement attached to Exhibit A, the Debtor contingency fee included the gross amount of the settlement which included the indemnification award. Therefore, the Debtor's calculation of the fee based upon the retainer agreement between the Debtor and Ingram is accurate.

The Pre Petition receiver's argument falls flat as it pertains to the Debtor's second legal representation of Ingram. The Debtor represented Ingram in a dispute retarding the denial of her long term disability benefits. The Debtor was successful in obtaining said benefits for Ingram and the total value of the recovery was $1,098,586.00. The Debtor and Ingram agreed and executed a retainer agreement agreeing that the Debtor was entitled to a contingent fee of 1/3 of the current present value of the future interest of the stream of disability payment.(Attached to Exhibit A) At the time of the award, the present value of the future interest of the disability payments was $678,528.03; therefore, the agreed fee was $226,176.01. After payments of the witness fee and provider the remaining balance is $75,298.75. A line by line analysis of the settlement proceeds along with relevant supporting documents is attached as Exhibit A. The analysis as set forth in Exhibit A unequivocally demonstrates not only the disposition of the proceeds of the Ingram representation, but sets forth that the Debtor has an interest in the funds.

Therefore, based on the written agreement of the Debtor and Ingram there are funds that are currently held in the IOLTA account of which the Debtor has an interest in. The Debtor's agreement to provide for payment of $155,000 to the Wayne County Circuit Court, was in effort to resolve the Interpleader and was a voluntary reduction of its attorney fees to do so. However, due to the filing of the Chapter 11 bankruptcy the Debtor cannot settle litigation or transfer funds of which he has an interest in without filing the proper motions with notice to all creditors.

The Debtor's analysis illustrates that the Debtor has a cognizable interest in the funds in the

IOLTA account. The Debtor has maintained the funds in the IOLTA as required by MRPC 1.15 and will continue to do so. Further, any remainder of the funds will be dealt with in connection with the Debtor's Chapter 11 case. The automatic stay should unequivocally remain in place as it relates to the Debtor's property. The Debtor's property should not be turned over for the benefit of disputed creditors to the detriment of creditors with a higher statutory priority.

## II. ANALYSIS

### A. Factors For Stay Relief

The United States Court of Appeals for the Sixth Circuit has held in order to determine whether to grant relief to allow a lawsuit to proceed in a different forum, bankruptcy courts have considered the following factors: 1) judicial economy; 2)trial readiness; 3) the resolution of preliminary bankruptcy issues; 4) the creditor's chance of success on the merits; and 5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors. Garzoni v. K-Mart Corp. (In re Garzoni), 35 F. App'x 179, 181 (6th Cir. May 8, 2002).

The Creditor's Motion for Relief from the automatic stay cannot be successful as the factors outlined by 6th Circuit weigh in favor of the Debtor as follows:

#1 Judicial economy- The Pre Petition Receiver motion seeks turnover of property of the estate to the Pre Petition Receiver. First, an action for turnover must be done by Adversary Proceeding pursuant to Bankruptcy Rule 7001. Second, the Receiver is seeking to continue administration of the Debtor by such request. The only duty of the Pre Petition Receiver is to comply with 11 U.S.C. 543, which in this case since the Pre Petition Receiver never had control or custody of the Debtor's property there is no role for him. The consequence of lifting the automatic stay and forcing the Debtor to turn over property of the estate to the Pre Petition Receiver only increases the litigation. The Debtor will be forced to argue in the Wayne County Circuit Court over an issue that is within the exclusive jurisdiction of this Court. Furthermore, the Pre Petition Receivers claims can

be handled within the context of the Chapter 11 plan; therefore, judicial economy heavily weighs in favor of the Debtor.

#2 Trial Readiness: Lifting the automatic stay does not advance the trial readiness to favor the Pre Petition Receiver or the disputed creditors he represents. Lifting the stay only provides for a dual track of litigation over who is the owner of the funds, which leads to potential of inconsistent rulings. The bankruptcy court routinely handles claims objections and adversary proceedings; therefore, by litigating the matters in the bankruptcy court there is procedure and one forum to litigate.

#3 Resolution of preliminary bankruptcy issues: The Debtor asserts that it has an interest in the funds sequestered in the Debtor's Huntington IOLTA account. Therefore, this Court should deny the Pre Petition receiver request and continue ruling on the bankruptcy issues as set forth. The Debtor and its creditors can deal with the asserted interest of interpleader action in the context of the Chapter 11 Plan. Further, the Pre Pretition Receiver, has no standing to seek turnover of property of the estate.

#4 Creditor's chance of success on the merits: The Creditor's chance of success on the merits is speculative at best; therefore, this factors weighs in favor of the Debtor. The Debtor has documentary support for the calculations on Exhibit A. Therefore, it is clear that the Debtor has an interest in the funds currently held in the IOLTA account. The Pre Petition Receiver recitation of facts regarding the disposition of funds lacks the entire scope of dealings with the Debtor and Ingram; therefore, it makes assumptions as to the disposition of funds. The Debtor's analysis lacks assumptions and clearly delineates how the funds were properly allocated. For these reasons this factor is in favor of the Debtor.

#5 The cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors- This factor weighs heavily in favor of the Debtor. If the Pre Petition

Receiver's request is granted the Debtor is forced to turn over funds in which it has an interest thereby depriving the rights of his creditors to those funds. Further, the Debtor will be forced to continue defending against the Pre Petition Receiver in state court as it relates to funds that are owned by him. The Debtor was willing to waive a portion of its fee and attempted to resolve all of the matters by way of the Interpleader lawsuit. However, in the context of a Chapter 11 proceeding the Debtor rights in the funds cannot be forfeited to the detriment of his creditors. Furthermore, without approval of this Court this would be an authorized transfer of estate property.

Lifting the stay as requested by Pre Petition Receiver would create a substantial risk of inconsistent verdicts and would unnecessarily duplicate judicial effort and waste judicial resources. It is far more efficient for all issues relating to Pre Petition Receiver's claims and Debtor's ability to reorganize under Title 11, United States Code, be determined in one court, in one proceeding, and at one time. Furthermore, it is the Debtor's position that the Pre Petition Receiver has no standing to assert any claims against the Debtor as his role is statutorily defined by 11 USC 543. Notwithstanding the fact that the Pre Petition has not complied with 543(b)(2), his role as it relates to the administration of the Debtor's Chapter 11 case is over.

## III. RESPONSES TO ALLEGATIONS IN PRE PETITION RECEIVER'S MOTION

1.  In response to paragraph 1 of Receiver's Motion, Debtor admits the allegations as true.

2.  In response to paragraph 2 of Receiver's Motion, Debtor admits the allegation as true.

3.  In response to paragraph 3 of Receiver's Motion, Debtor admits the allegation as true.

4.  In response to paragraph 4 of Receiver's Motion, Document speaks for itself.

5.  In response to paragraph 5 of Receiver's Motion, Debtor neither admits nor denies

the allegation and leaves the movant to its own proofs.

6.	In response to paragraph 6 of Receiver's Motion, Debtor neither admits nor denies the allegation. However, attached as Exhibit A outlines the exact disposition of the funds and illustrates the Debtor has an interest in the funds.

7.	In response to paragraph 7 of Receiver's Motion, Debtor denies the allegation as untrue and in further response states that as outlined in the Exhibit A. The Debtor obtained for Ingram releases of $97,146.45. Therefore, Ingram received $97,146.45 in medical services which she was never required to pay; thereby giving her a non cash benefit of $97,146.45 and pursuant to the Fee Agreement between Debtor and Ingram compensable as part of the gross amount of the settlement. Further, the Debtor represented Ingram and successfully obtained long term disability payments with an total value of $1,098,566 with a present value of $678,528.03 of which his contractual attorney fee was $226, 176.01. The Receiver' Motion does not take into account the fees of the Debtor and makes unsubstantiated allegations regarding his documented fees.

8.	In response to paragraph 8 of Receiver's Motion, document speaks for itself.

9.	In response to paragraph 9 of Receiver's Motion, document speaks for itself.

10.	In response to paragraph 10 of Receiver's Motion, order speaks for itself. However, the Debtor denies there are any missing client funds and asserts his interest in the funds and his right to attorney fees in the interpleader case.

11.	In response to paragraph 11 of Receiver's Motion, Debtor has an interest in said funds and turning those funds over to the Pre Petition receiver would be an authorized transfer of property of the estate.

12.	In response to paragraph 12 of Receiver's Motion, statute speaks for itself.

13.	In response to paragraph 13 of Receiver's Motion, statue speaks for itself.

14.	In response to paragraph 14 of Receiver's Motion, no response necessary.

15.    In response to paragraph 15 of Receiver's Motion, no response necessary. However, funds in the IOLTA account in this case the Debtor has an interest in and it has maintained the funds in the IOLTA until a ruling is made as to his interest in the funds.

16.    In response to paragraph 16 of Receiver's Motion, Debtor admits that the intial schedules did not have the interest listed; however, upon review of the Debtor's financials as it relates to the Ingram matter it became clear that the Debtor had an interest in the funds in the IOLTA account and the Debtor Schedule A/B has been amended to disclose this interest as supported by Exhibit A.

17.    In response to paragraph 17 of Receiver's Motion, Debtor denies the allegation. Debtor has an interest in the funds as illustrated by Schedule A/B. Further, the Debtor was prepared to turnover the amount as a resolution of claims in the Wayne County Circuit Court. After the filing of the Chapter 11 petition the Debtor could not turn over the funds as it would be an unauthorized transfer of estate property.

18.    In response to paragraph 18 of Receiver's Motion, Debtor admits the allegation as true.

19.    In response to paragraph 19 of Receiver's Motion, Debtor neither admits nor denies the allegation and leaves the movant to his own proofs.

20.    In response to paragraph 20 of Receiver's Motion, Debtor denies the allegation as untrue as set forth in Exhibit A.

21.    In response to paragraph 21 of Receiver's Motion, statute speaks for itself.

22.    In response to paragraph 22 of Receiver's Motion, Debtor denies the allegation as untrue.

23.    In response to paragraph 23 of Receiver's Motion, Debtor denies the allegation as untrue.

24. In response to paragraph 24 of Receiver's Motion, Debtor denies the movant has illustrated cause to lift the automatic stay.

25. In response to paragraph 25 of Receiver's Motion, Debtor denies the movant has met its intial burden to show cause exists. The Debtor has provided IOLTA bank records to the Movant that illustrate the funds are being held in the IOLTA account. The Debtor's Exhibit A clearly shows that it has an interest in the IOLTA funds.

26. In response to paragraph 26 of Receiver's Motion, caselaw speaks for itself.

27. In response to paragraph 27 of Receiver's Motion, no response necessary.

28. In response to paragraph 28 of Receiver's Motion, Debtor denies for the reasons set forth in this response.

29. In response to paragraph 29 of Receiver's Motion, Debtor denies for the reasons set forth in this response.

30. In response to paragraph 30 of Receiver's Motion, Debtor denies for the reasons set forth in this response.

31. In response to paragraph 31 of Receiver's Motion, Debtor denies for the reasons set forth in this response. Further states the Receiver should have no role in this case as he is not a party in interest.

32. In response to paragraph 32 of Receiver's Motion, Debtor denies for the reasons set forth in this response.

33. In response to paragraph 33 of Receiver's Motion, Debtor denies for the reasons set forth in this response.

34. In response to paragraph 34 of Receiver's Motion, Debtor denies for the reasons set forth in this response.

35.    In response to paragraph 35 of Receiver's Motion, Debtor denies for the reasons set forth in this response.

WHEREFORE, Debtor pray that this Honorable Court deny Receiver's Motion and award your Debtor such other and further relief as this Court determines to be just and equitable.

Respectfully submitted,

Goldstein Bershad & Fried PC

By: /s/ Scott M. Kwiatkowski
    Scott M. Kwiatkowski P67871
    Attorneys for Debtor
    4000 Town Center, Suite 1200
    Southfield, MI 48075
    (248) 355-5300
    Fax (248) 355-4644
    email scott@bk-lawyer.net

Dated: August 8, 2023

# EXHIBIT A

# CLIENT SETTLEMENT ACCOUNTING (REVISED 08.07.2023)

## INGRAM VS. FRANKENMUTH FEE CALCULATIONS:

Gross Settlement Frankenmuth:

| | | |
|---|---|---|
| No Fault Settlement (Cash) | | $600,000.00 |
| Total Cash | | $600,000.00 |
| Value of Indemnification: [1] | | |
| American Surgical Centers | | $36,213.45 |
| Synergy Spine/Orthopedic Surgery Center | | $49,892.00 |
| Anesthesiologists of Detroit | | $3,510.00 |
| Executive Case Management | | $7,531.00 |
| Total Gross Settlement funds subject to Contingent Fee | | $697,146.45 |
| | | |
| Case Expenses | | |
| Invoice 609 | $2,404.68[2] | |
| Invoice 805/806 | $3,783.38[3] | |
| Total Expense | $6,188.06 | $6,188.06 |
| Net Proceeds Subject to Contingent Fee | | $690,958.39 |
| Contingent Fee | | |
| (1/3 Contingent Fee: $690,958.39/3 = $290,319.46)[4] | | $230,319.46 |
| Reduction of Amount due from Indemnification Agreements | | $ 97,146.45 |
| Remainder | | $363,492.48 |
| Additional funds related to payment made by Frankenmuth | | $ 162.25 |

Total funds remaining for distribution subject to Dailey Law Firm
Possessory Lien as security for payment of fees for legal services

---

[1] Exhibit 1 release and settlement agreement.
[2] Exhibit 2 Dailey Law Firm, PC invoice no. 609
[3] Exhibit 3 Dailey Law Firm, PC invoice no. 805/806
[4] Exhibit 4 Dailey Law Firm, PC No Fault Contingent Fee Agreement. See paragraph 5. "Client agrees to employ Attorney on a contingent fee of one-third (1/3) of the net recovery of any settlement, verdict award or recovery. The gross recovery shall include total monies and other elements of value recovered, including but not limited to, all past benefits, the present value of future benefits all interest and taxable costs including but not limited to **the value of forgiven debt/provider billings."**

to restore Cigna Long Term Disability Benefits:                    $363,654.73[5]/[6]


## INGRAM vs. CIGNA ERISA LTD FEE CALCULATIONS

Fees for Restoration of Cigna Long Term Disability Benefits: [7]
(This fee is calculated based upon the present value of the total future
disability payments: Total Disability Payments = $1,098,566.00
paid 2020 through 2042. Present of total disability payments = $678,528.03.
Contingent Fee of present value of total disability payments = $226,176.01.[8]

|  | $226,176.01[9]/[10] |
|---|---|
|  | $137,478.72 |
| Liens and Expenses Paid from IOLTA: |  |
|  |  |
| Expert Witness Fees: |  |
| 12/20/2018 Robert Ancell, PhD (deceased) Vocational Rehabilitation Ck. No. 15266 | $2,500.00 |
| 04/08/2019 Michigan Spine & Pain Ck. No. 15319 | $1,000.00 |
| 05/15/2019 Summit Psychiatric Ck. No. 15338 | $1,400.00 |
| 06/06/2019 Renee Applebaum Ck. No. 15358 | $3,000.00 |
| 08/29/2019 Michigan Neuropathology Ck. No. 15295 | $1,600.00 |
|  |  |
| Provider Liens: |  |
| Red Eye Transportation | $6,500.00 |
| Life Skills Village | $45,000.00 |
| Spectrum Rehabilitation | $1,180.00 |
|  |  |
| Final Amount Remaining for Distribution | $75,298.75[11] |

---

[5] Exhibit 4 paragraph 15 "Client understands and agrees that Attorney shall have all general, possessory or retaining liens and all special or charging liens known to common law, in addition to any statutory lie, upon client's claim in this matter. The same language also appears in the Contingent Fee Agreement regarding the CIGNA long term disability claim.

[6] This is the amount of money left from the no fault settlement to which the Dailey Law Firm, PC Possessory Lien attached as security for the payment of attorney fees for Dailey Law Firm, PC legal services related to the appeal of the Ingram ERISA Long Term Disability Claim against CIGNA.

[7] Exhibit 5 CIGNA Letter advising of appeal granted and full long term disability benefits are restored.

[8] Exhibit 6 Present Value Calculations performed by David Hammel, CPA, David Hammel Forensics, LLC  21420 Greater Mack Ave, St Clair Shores, MI 48080

[9] Exhibit 7 Dailey Law Firm, PC contingent fee agreement for legal services to appeal the denial by CIGNA of the long disability claim. Counsel voluntarily offered to reduce the contingent fee to the sum of $148,379.33. Plaintiff has not accepted that offer as yet. However, Counsel has not withdrawn from the Dailey Law Firm, PC IOLTA the full amount of the reduced fee.

[10] Exhibit 5 contains the following contractual term: "In the event that any settlement, verdict, award or recovery is to be paid in installments, Client agrees that Attorney may, at its sole and exclusive option, elect to take the attorney fee in full at the time of the initial payment(s), or may take the attorney fees from any installment payment. **In the event that Attorney elects to take the attorney fee in full at the time of the initial installment payment(s), the attorney fee shall be one-third (1/3) of the present cash value of all of the present and future payments**, after deduction of the costs and expenses as previously set forth.

[11] If Plaintiff had accepted the offer to reduce the fee for restoration of the CIGNA LTD Benefits to the sum of $148,137.33, then the remainder for distribution would be in the amount of $153,337.40. Having refused this offer the amount of money left for distribution, without consideration of attorney for the interpleading Plaintiff is no more than $75,298.75. Due to the unclean handS of the Defendant/Claimants, Counsel for Interpleading Plaintiff has incurred significant time and expense supporting a claim for attorney fees that can be awarded from the remaining funds referenced above to Counsel for interpleading Plaintiff.

# EXHIBIT
# 1

## RELEASE OF NO-FAULT CLAIMS

WHEREAS, FRANKENMUTH MUTUAL INSURANCE COMPANY did issue a certain automobile insurance policy containing personal protection insurance coverage in compliance with the Michigan No-Fault Law, being MCLA 500.3101, et seq. applicable to JODY INGRAM, which was in full force and effect on April 29, 2016, and

WHEREAS, JODY INGRAM, allegedly sustained accidental bodily injuries in a motor vehicle accident on or about April 29, 2016, and filed a lawsuit in Wayne County Circuit Court before the Hon. Patricia Fresard, entitled JODY INGRAM v FRANKENMUTH MUTUAL INSURANCE COMPANY, Case Number 17-003226-NI, and

WHEREAS, there is an actual controversy between FRANKENMUTH MUTUAL INSURANCE COMPANY and JODY INGRAM, (the parties) under said policy regarding payment of and/or entitlement to benefits by reason of factual and legal issues including, but not limited to, the reasonableness and necessity of certain losses, the nature and extent of any disabilities, to the causal relationship of certain injuries and disabilities to said accident, whether any benefits are overdue, and the amount, if any, of benefits that have become payable, and

WHEREAS, the parties hereto desire to amicably resolve their disputes concerning any benefits or claims under the policy for any losses whatsoever arising out of the April 29, 2016, motor vehicle accident.

NOW, THEREFORE, in consideration of the payment of SIX HUNDRED THOUSAND ($600,000.00) Dollars total to JODY INGRAM, in hand by check made payable to "Jody Ingram and Dailey Law Firm" within fourteen (14) days of the execution of this Release paid by FRANKENMUTH MUTUAL INSURANCE COMPANY (hereinafter referred to as payer), I, JODY INGRAM, do hereby release and forever discharge payer from any and all liability under the aforesaid automobile insurance policy for personal protection insurance benefits as a result of injuries sustained in the aforesaid automobile accident of April 29, 2016, past, present and forever into the future, release:

- All claims for medical bills and claims for medical services, chiropractic services, nursing services, hospital bills, prescription bills, and any other bills, invoices, or expenses of a medical nature which may be related to personal injuries sustained in the above-mentioned accident, past, present and forever into the future;

- All claims for attendant care services which may be related to personal injuries sustained in the above-mentioned accident, past, present and forever into the future;

- All interest charges which would have been owed or owing pursuant to MCL 500. 3142(3) of the Michigan No Fault Act for which may have been accrued, past, present and forever into the future;

1 of 3

- Any and all lost wages, loss of earning capacity, or the differential between lost wages and workers disability benefits and/or Social Security Benefits paid or payable, that would have been payable pursuant to MCL 500.3107(1)(b) and MCL 500.3107a of the Michigan No Fault Act, which may have been incurred at any time past, present and forever into the future;

- Any and all services or expenses which would have been reimbursed at a rate not to exceed Twenty and 0/100 ($20.00) dollars per day pursuant to MCL 500.3107(1)(c) of the Michigan No Fault Act, past, present and forever into the future;

- Any and all attorney fees which may have been payable to my attorneys, DAILEY LAW FIRM, as a result of their representation on my behalf in Wayne County Circuit Court Case No: 17-003226-NI.

- Any and all damages for mental anguish or emotional distress resulting from any alleged "bad faith" or conduct on behalf of FRANKENMUTH MUTUAL INSURANCE COMPANY and the MICHIGAN CATASTROPHIC CLAIMS ASSOCIATION, its agents, servants and/or employees of any of its subsidiaries, in the handling of this claim.

FURTHER, IT IS UNDERSTOOD AND AGREED that FRANKENMUTH MUTUAL INSURANCE COMPANY agrees to indemnify and hold harmless JODY INGRAM against any claim for any balance bill arising out of the April 29, 2016, motor vehicle accident asserted by Synergy Spine & Orthopedic Surgery Center, LLC, Executive Case Management, LLC, and/or Mobile Anesthesiologists of Metro Detroit.

FURTHER, IT IS UNDERSTOOD AND AGREED that JODY INGRAM agrees to indemnify, defend, and hold harmless FRANKENMUTH MUTUAL INSURANCE COMPANY and the MICHIGAN CATASTROPHIC CLAIMS ASSOCIATION against any claim arising out of the April 29, 2016, motor vehicle accident asserted by Life Skills Village, PLLC.

FURTHER, IT IS UNDERSTOOD AND AGREED that any liens, including any liens by Medicare, Medicaid, Blue Cross Blue Shield, any medical provider, or any other insurer, are the sole responsibility of JODY INGRAM, who agrees to indemnify FRANKENMUTH MUTUAL INSURANCE COMPANY and the MICHIGAN CATASTROPHIC CLAIMS ASSOCIATION, its agents, servants and/or employees, and hold them harmless against any lien asserted against the settlement proceeds.

FURTHER, IT IS UNDERSTOOD AND AGREED that FRANKENMUTH MUTUAL INSURANCE COMPANY hereby waives any right to reimbursement and/or set off for or from any Social Security Disability Insurance benefits paid to or for JODY INGRAM.

FURTHER, IT IS UNDERSTOOD AND AGREED that, pursuant to this Settlement, Plaintiff hereby disclaims, revokes, withdraws, and/or rescinds any prior assignment of benefits (known or unknown to Defendant), executed by her on behalf of any medical provider and/or claimant that may have a claim against Defendant for payment of benefits under

the Michigan No-Fault Act arising out of the April 29, 2016, motor vehicle accident, past, present, and forever into the future.

FURTHER, IT IS UNDERSTOOD AND AGREED that any claims based on any prior assignment of benefits (known or unknown to Defendant) are the sole responsibility of JODY INGRAM, who agrees to indemnify and defend FRANKENMUTH MUTUAL INSURANCE COMPANY, its agents, servants and/or employees, and hold them harmless against any claim asserted pursuant to an assignment of benefits executed by Plaintiff on behalf of any medical provider and/or claimant that may have a claim against Defendant for payment of benefits under the Michigan No-Fault Act arising out of the April 29, 2016, motor vehicle accident.

FURTHER, IT IS UNDERSTOOD AND AGREED that this payment is not to be construed as an admission of liability but that this payment is being made in compromise and settlement of claims which are in dispute.

FURTHER, IT IS UNDERSTOOD AND AGREED that JODY INGRAM executes this release freely, voluntarily, and after fully consulting with her attorneys and shall be enforceable in any court regardless of any past or future ruling on the interpretation of the No-Fault Act or any other legal or factual issues concerning the validity or enforceability of this release agreement.

FURTHER, IT IS UNDERSTOOD AND AGREED that the Defendant withdraws any promises it may have made to indemnify, defend, or hold harmless Plaintiff from any bill except as set forth above with regard to Synergy Spine & Orthopedic Surgery Center, LLC, Executive Case Management, LLC, and/or Mobile Anesthesiologists of Metro Detroit. Any other such agreement is hereby withdrawn.

FURTHER, IT IS UNDERSTOOD AND AGREED that FRANKENMUTH MUTUAL INSURANCE COMPANY is not admitting any liability or waiving any rights for defenses into the future.

I DECLARE THAT I HAVE READ THIS RELEASE AND THAT I UNDERSTAND ITS TERMS.

IN WITNESS WHEREFORE, JODY INGRAM, has hereunto set her hand and seal this ___ day of _____, 2018.

SIGNED, SEALED AND READ IN THE PRESENCE OF:

Witness _____

Address 2068 Orpington Dr, Troy, mi 48083

JODY INGRAM

4777088_1

# EXHIBIT

# 2

# Invoice

63 Kercheval Avenue
Suite 215
Grosse Pointe Farms, MI



**Invoice #:** 609
**Invoice Date:** 7/11/2018
**Due Date:** 7/11/2018
**Case:** No Fault PIP ...
**P.O. Number:**

Bill To:

**Jodi Ingram**
**2068 Orpington Drive**
**Troy, MI 48083-5671**

| Rep | Referral Source |
|-----|-----------------|
| MJM | Craig Peppler |

| Description | Hours/Qty | Rate | Amount |
|-------------|-----------|------|--------|
| Ingram, Jody/Injury Auto/Medical Records/Expense | | 62.28 | 62.28 |
| Ingram, Jody/Injury Auto/Medical Records/Expense | | 23.34 | 23.34 |
| Ingram, Jody/Injury Auto/Medical Records/Expense | | 78.41 | 78.41 |
| Ingram, Jody/Injury Auto/Medical Records/Expense | | 48.26 | 48.26 |
| Ingram, Jody/Injury Auto/Medical Records/Expense | | 116.73 | 116.73 |
| Hermiz, Myra/Injury PIP/Medical Records/Expense | | 30.18 | 30.18 |
| Ingram, Jody/Injury PIP/Medical Records Expense | | 30.18 | 30.18 |
| Ingram, Jody/Injury PIP/Mileage | | 25.30 | 25.30 |
| Ingram, Jody/Injury PIP/Parking | | 5.00 | 5.00 |
| Delivery and Postage | | 35.00 | 35.00 |
| Total Reimbursable Expenses | | | 454.68 |
| Circuit Court Filing Fee | | 185.00 | 185.00 |
| Motion for Sanctions and to Strike Witness List | | 20.00 | 20.00 |
| Bert Distefano Facilitator | | 1,500.00 | 1,500.00 |
| Motion to Quash Order Allowing Intervention | | 20.00 | 20.00 |
| Mileage to and from Wayne Circuit for Motion to strike witness list | | 55.00 | 55.00 |
| Mileage to and from Wayne Circuit for second hearing on Motion to Strike Witness List | | 55.00 | 55.00 |
| Mileage to and from Wayne Cicuirt for Settlement Conference as to Motion to Strike Witness List | | 55.00 | 55.00 |
| 3 hearings referred to above | 3 | 20.00 | 60.00 |

Thank you for allowing us to represent you.

| | |
|---|---|
| **Total** | $2,404.68 |
| **Payments/Credits** | -$2,404.68 |
| **Balance Due** | **$0.00** |

Phone: 3129272611   Fax: 248-744-4440

www.daileylawyers.com

# EXHIBIT
# 3

# Invoice

63 Kercheval Avenue
Suite 215
Grosse Pointe Farms, MI



**Bill To:**

**Jody Ingram**
**2068 Orpington Drive**
**Troy, MI 48083-5671**

Invoice #: 805
Invoice Date: 5/31/2019
Due Date: 5/31/2019
Case: Cigna
P.O. Number:

| Rep | Referral Source |
|-----|-----------------|
| MJM | Craig Peppler |

| Description | Hours/Qty | Rate | Amount |
|-------------|-----------|------|--------|
| pick up report from Dr. Ancell | | 50.00 | 50.00 |
| Ingram, Jody/Injury LTD/Deposition Fee/Expense | | 1,000.00 | 1,000.00 |
| Ingram, Jody/Injury Disability/Expense | | 25.99 | 25.99 |
| Ingram, Jody/Injury Disability/Expense | | 19.21 | 19.21 |
| Ingram, Jody/Injury Disability/Expense | | 16.95 | 16.95 |
| Ingram, Jody/Injury Disability/Expense | | 24.86 | 24.86 |
| Total Reimbursable Expenses | | | 1,137.01 |

Thank you for allowing us to represent you.

| | |
|---|---|
| Total | $1,137.01 |
| Payments/Credits | -$1,137.01 |
| Balance Due | $0.00 |

Phone: 3129272611    Fax: 248-744-4440

www.daileylawyers.com

# Invoice

63 Kercheval Avenue
Suite 215
Grosse Pointe Farms, MI



**Bill To:**

**Jody Ingram**
**2068 Orpington Drive**
**Troy, MI 48083-5671**

Invoice #: 806
Invoice Date: 5/31/2019
Due Date: 5/31/2019
Case: Cigna
P.O. Number:

| Rep | Referral Source |
|-----|-----------------|
| MJM | Craig Peppler |

| Description | Hours/Qty | Rate | Amount |
|-------------|-----------|------|--------|
| Ingram, Jody/Injury PIP/Mileage to WCCC/05.25.2018 | | 23.10 | 23.10 |
| Ingram, Jody/Injury PIP/Mileage to WCCC/05.31.2018 | | 23.10 | 23.10 |
| Ingram, Jody/Injury PIP/Mileage to Facilitation/06.21.2018 | | 4.18 | 4.18 |
| Ingram, Jody/Injury PIP/Parking at WCCC/05.25.2018 | | 10.00 | 10.00 |
| Ingram, Jody/Injury Auto PIP/Deposition of Peppler/Expense | | 384.29 | 384.29 |
| Ingram, Jody/Injury Auto PIP/Deposition Costs/Expense | | 100.00 | 100.00 |
| Ingram, Jody/Injury Auto/Facilitation Fees | | 1,350.00 | 1,350.00 |
| Deposition of Dr. Bleiberg | | 100.00 | 100.00 |
| Deposition of Craig Peppler | | 367.50 | 367.50 |
| Deposition of Marvin Bleiberg | | 284.20 | 284.20 |
| Total Reimbursable Expenses | | | 2,646.37 |

Thank you for allowing us to represent you.

| | |
|---|---|
| **Total** | $2,646.37 |
| **Payments/Credits** | -$2,646.37 |
| **Balance Due** | $0.00 |

Phone:  3129272611   Fax:  248-744-4440

www.daileylawyers.com

# EXHIBIT

# 4

# CONTINGENCY FEE AGREEMENT

This Agreement is made between <u>Jody Ingram</u> ("Client") and the Dailey Law Firm, PC (Attorney):

1.     The undersigned Client, on the following terms and conditions, requests and authorizes Attorney to represent Client as legal counsel for all purposes in connection with:

> All claims arising from auto accident on <u>O4 / 29</u> , 2016, including 1st and 3rd party automobile negligence and underinsured motorist claims, if any.

2.     Client agrees and acknowledges that this Agreement does not require Attorney to provide any legal services other than those described above and Client further agrees and acknowledges that this agreement does not require Attorney to provide any legal services for appeals or post judgment relief unless specifically agreed to in writing by both parties.

3.     Client has been advised by the firm that a claim for No Fault PIP (Personal Injury Protection) benefits may be initiated and recovered from the client's No Fault Insurance Carrier without assistance from the firm or that Attorney. Accordingly client elects one of the following options:

> a.     Attorney will process a claim for no fault benefits on behalf of the client and the client will pay the firm/attorney a contingent fee in the amount of 1/3 of the net recovery of any settlement, verdict, award or recovery after deduction of the costs and expenses stated herein.



Initials:

Client

Firm

> b.     Client will process claims for no fault benefits without the assistance of attorney and firm and firm further agrees that Attorney and Firm do not represent client in connection with any attempt by client to recover said benefits or to pursue any claim or lawsuit for said benefits.

4.     Client has been advised that he/she may represent him or herself without an attorney, but elects to retain Attorney who agrees to represent Client. Client agrees to cooperate fully with Attorney and to sign all forms, authorizations and documents deemed necessary in the sole discretion of Attorney. Neither party will settle or otherwise dispose of the case without the other's approval. Attorney may, in his discretion, withdraw from the case at any time with reasonable notice to Client. Client agrees to reimburse Attorney all costs incurred by Attorney on behalf of Client in pursuit of Client's interests as defined in this Agreement. Said costs include but are not limited to court fees, filing fees (including late fees), investigation fees, telephone charges, mileage, postage, travel, delivery fees, experts, photocopies/photographs and any other costs deemed necessary in the sole discretion of the Attorney in the handling of Client's legal matter (s).

5.     Client agrees to employ Attorney on a contingent fee of one-third (1/3) of the net recovery of any settlement, verdict, award or recovery. The gross recovery shall include total monies and other elements of value recovered, including, but not limited to, all past benefits, the present value of future benefits all interest and taxable costs including but not limited to the value of forgiven debt/provider billings. Attorney shall further be entitled to deduct all costs and expenses from the gross recovery. Net recovery shall mean the amount remaining following deduction from Gross Recovery the expenses incurred by Attorney in pursuit of the claims arising from this case.

6.     If actual attorney fees are awarded, recovered or paid pursuant to a settlement, Attorney may at its sole and exclusive option, elect to add this attorney fee to the gross recovery for purposes of computing the one-third (1/3) fee, or it may accept the actual attorney fee instead of the one-third (1/3) fee.

7.     In the event that any settlement, verdict, award or recovery is to be paid in installments, Client agrees that Attorney may, at its sole and exclusive option, elect to take the attorney fee in full at the time of the initial payment(s), or may take the attorney fees from any installment payment. In the event that Attorney elects to take the attorney fee in full at the time of the initial installment payment(s), the attorney fee shall be one-third (1/3) of the present cash value of all of the present and future payments, after deduction of the costs and expenses as previously set forth.

8.	Client acknowledges that _____ has referred this matter to _____ of the _____ , The client further acknowledges and understands that _____ has no responsibility in connection with the legal services which are to be performed and does not exercise any supervision or control over the performance of the legal services. The client understands that a division of fees will be made between the _____ , and _____ and the client agrees that such division of fees be permitted.

Initial

Client

Firm

9.	If there is no settlement, verdict, award or recovery in this matter, no attorney fees will be due. At the conclusion of this matter, Attorney shall provide Client with a written statement of the matter's outcome and, if there is any settlement, verdict, award or recovery, show the remittance to Client and the method of its determination.

10.	Client authorizes Attorney, in his/her sole discretion, to retain possession or dispose of Client file (s) and records after 5 years of the date of Attorney's last representation of the Client in the particular matter as to which the file is made. However, Client may obtain, after providing 30 days written notice to Attorney at Attorney's address before the 5th annual anniversary date of the last representation, a copy of Client's files provided that Client reimburses Attorney for the reasonable cost of a copy of the files requested.

11.	Client agrees that Attorney has made no promises or guarantees regarding the outcome of Client's legal matter, claim or lawsuit. Client agrees and understands that all representations made by Attorney are given in good faith and based upon his professional judgment.

12.	Client binds his heirs, executors, and legal representatives to the terms and conditions set forth in this Agreement. Client has read this contract, received a copy of it, and agrees to the terms and conditions. There are no other agreements, oral or otherwise, between Client and Attorney.

13.	In the event that there is any settlement, verdict, award or recovery in this matter, Client authorizes and grants to Attorney the power-of-attorney to sign on Client's behalf any check or draft received and to deposit said funds in the Attorney's (IOLTA) Trust Account for disbursement in accordance with this Agreement.

14.	Attorney, at its discretion, may withdraw from representation of Client at any time and on reasonable notice to Client. If Attorney has filed an appearance on behalf of Client, Attorney, at its discretion, may petition the court at any time and on reasonable notice to Client to allow Attorney to withdraw from representation of Client.

15.	Client understands and agrees that Attorney shall have all general, possessory or retaining liens, and all special or charging liens known to the common law, in addition to any statutory lien, upon Client's claim in this matter. Such lien shall attach to any settlement, verdict, award or recovery in the Client's favor and to the proceeds thereof into whomsoever's hands they may come. Attorney shall not be, in any way, obligated to waive its Attorney's lien until its Attorney fees and any and all disbursements made upon Client's behalf have been fully paid. Attorney shall not be liable to the Client in any way whatsoever for any loss Client may incur or suffer because of Attorney's exercising its attorney's lien in order to secure full payment of its legal fees and proper costs, expenses and disbursements under this Agreement.

Dated:	December 5, 2016

JODY INGRAM

Dailey Law Firm, PC
36700 Woodward Ave, Suite 107
Bloomfield Hills, MI 48304

2

# EXHIBIT

# 5



*Facsimile Transmission Cover Sheet*

| Transmit to FAX number | Date | Time |
|---|---|---|
| 1.248.744.4440 | August 14, 2020 | 2:31:53 PM |

| To: | From: |
|---|---|
| Dailey Law Firm, PC. | Edward |
| | **Phone:** |
| | 888.842.4462 ext.5059270 |

**Subject:**     Cigna Incident # 4068628-02

**Comments:**
Please see the following correspondence for your review. Please contact us with any questions.

CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.

*Edward*
*Cigna*
PO Box 29221
Phoenix, AZ 85038-9221

Phone 888.842.4462 ext.5059270
Fax 866.472.3221

www.mycigna.com



DAILEY LAW FIRM, PC.
36700 WOODWARD AVE
STE 107
BLOOMFIELD HILLS, MI 48304

August 14, 2020

| **Name:** | Jody Ingram |
|---|---|
| **Incident Number:** | 4068628-02 |
| **Policy Number:** | LK -0980015 |
| **Policy Name:** | HENRY FORD HEALTH SYSTEM |
| **Underwriting Company:** | Life Insurance Co of North America |

Dear Dailey Law Firm, PC.:

This letter is in reference to your client's appeal for Long Term Disability (LTD) benefits under policy number LK -0930015.

Based on the independent review of the adverse claim determination, including information submitted in support of the appeal, a determination has been made that the prior decision should be overturned. This means that your client is entitled to benefits payable under the above policy so long as they continue to meet the terms and conditions of the policy.

Your client's claim is being referred to the following claim management team for processing and payment of any due benefits. You should hear from a representative of this team within 10 days:

*Josh T.*
412.505.9245

Please contact our office at 412.505.9270 should you have any questions.

Sincerely,

*Edward*

Edward
Appeals Specialist



All Cigna products and services are provided exclusively by or through operating subsidiaries of Cigna Corporation, including Life Insurance Company of North America and Cigna Life Insurance Company of New York (New York, NY). The Cigna name, logo, and other Cigna marks are owned by Cigna Intellectual Property, Inc.

# EXHIBIT
# 6

# Jody Ingram
## Present Value Calculations

#### Assumptions

| | |
|---|---|
| DOB | 07/23/75 |
| Interest Rt. | 5.0% |
| Starting Date | 11/01/20 |

| Year | Periods | Total Annual Pmt. $ 4,193.00 | $ 1,699.00 | Present Value Period | Factor | PV of Payments $ 4,193.00 | $ 1,699.00 |
|---|---|---|---|---|---|---|---|
| 2020 | 2 | $ 8,386.00 | $ 3,398.00 | 0.082 | 0.996 | $ 8,352.46 | $ 3,384.41 |
| 2021 | 12 | $ 50,316.00 | $ 20,388.00 | 0.663 | 0.968 | $ 48,705.89 | $ 19,735.58 |
| 2022 | 12 | $ 50,316.00 | $ 20,388.00 | 1.662 | 0.922 | $ 46,391.35 | $ 18,797.74 |
| 2023 | 12 | $ 50,316.00 | $ 20,388.00 | 2.661 | 0.878 | $ 44,177.45 | $ 17,900.66 |
| 2024 | 12 | $ 50,316.00 | $ 20,388.00 | 3.663 | 0.836 | $ 42,064.18 | $ 17,044.37 |
| 2025 | 12 | $ 50,316.00 | $ 20,388.00 | 4.663 | 0.797 | $ 40,101.85 | $ 16,249.24 |
| 2026 | 12 | $ 50,316.00 | $ 20,388.00 | 5.662 | 0.759 | $ 38,189.84 | $ 15,474.49 |
| 2027 | 12 | $ 50,316.00 | $ 20,388.00 | 6.661 | 0.723 | $ 36,378.47 | $ 14,740.52 |
| 2028 | 12 | $ 50,316.00 | $ 20,388.00 | 7.663 | 0.688 | $ 34,617.41 | $ 14,026.94 |
| 2029 | 12 | $ 50,316.00 | $ 20,388.00 | 8.663 | 0.655 | $ 32,956.98 | $ 13,354.14 |
| 2030 | 12 | $ 50,316.00 | $ 20,388.00 | 9.662 | 0.624 | $ 31,397.18 | $ 12,722.11 |
| 2031 | 12 | $ 50,316.00 | $ 20,388.00 | 10.661 | 0.594 | $ 29,887.70 | $ 12,110.47 |
| 2032 | 12 | $ 50,316.00 | $ 20,388.00 | 11.663 | 0.566 | $ 28,478.86 | $ 11,539.61 |
| 2033 | 12 | $ 50,316.00 | $ 20,388.00 | 12.663 | 0.539 | $ 27,120.32 | $ 10,989.13 |
| 2034 | 12 | $ 50,316.00 | $ 20,388.00 | 13.662 | 0.513 | $ 25,812.11 | $ 10,459.04 |
| 2035 | 12 | $ 50,316.00 | $ 20,388.00 | 14.661 | 0.489 | $ 24,604.52 | $ 9,969.73 |
| 2036 | 12 | $ 50,316.00 | $ 20,388.00 | 15.663 | 0.466 | $ 23,447.26 | $ 9,500.81 |
| 2037 | 12 | $ 50,316.00 | $ 20,388.00 | 16.663 | 0.444 | $ 22,340.30 | $ 9,052.27 |
| 2038 | 12 | $ 50,316.00 | $ 20,388.00 | 17.662 | 0.422 | $ 21,233.35 | $ 8,603.74 |
| 2039 | 12 | $ 50,316.00 | $ 20,388.00 | 18.661 | 0.402 | $ 20,227.03 | $ 8,195.98 |
| 2040 | 12 | $ 50,316.00 | $ 20,388.00 | 19.663 | 0.383 | $ 19,271.03 | $ 7,808.60 |
| 2041 | 12 | $ 50,316.00 | $ 20,388.00 | 20.663 | 0.365 | $ 18,365.34 | $ 7,441.62 |
| 2042 | 7 | $ 29,351.00 | $ 11,893.00 | 21.662 | 0.348 | $ 10,214.15 | $ 4,138.76 |
| | | $ 1,098,566.00 | $ 445,138.00 | | | $ 678,528.03 | $ 274,938.96 |

# EXHIBIT
# 7

## CONTINGENCY FEE AGREEMENT

This Agreement is made between **JODY INGRAM** ("Client") and the Dailey Law Firm, PC (Attorney)

1.    The undersigned Client, on the following terms and conditions, requests and authorizes Attorney to represent Client as legal counsel for all purposes in connection with:

### ERISA LONG TERM DISABILITY TERMINATION

2.    Client agrees and acknowledges that this Agreement does not require Attorney to provide any legal services other than those described above and Client further agrees and acknowledges that this agreement does not require Attorney to provide any legal services for appeals or post judgment relief unless specifically agreed to in writing by both parties. This agreement does not retain Attorney for purposes of resolving post recovery liens for goods, services or loans/advances to or for the benefit of Client. Client may retain Attorney to resolve post recovery liens under a separate fee agreement so long as same is in writing and executed by both Attorney and Client.

3.    Client has been advised by the firm that a claim for No Fault PIP (Personal Injury Protection) benefits may be initiated and recovered from the client's No Fault Insurance Carrier without assistance from the firm or that Attorney. Accordingly client elects one of the following options:

> a.    Attorney will process a claim for no fault benefits on behalf of the client and the client will pay the firm/attorney a contingent fee in the amount of 1/3 of the net recovery of any settlement, verdict, award or recovery after deduction of the costs and expenses stated herein.
>
> b.    Client will process claims for no fault benefits without the assistance of attorney and firm and further agrees that Attorney and Firm do not represent client in connection with any attempt by client to recover said benefits or to pursue any claim or lawsuit for said benefits.

| Initials: |
|---|
| Client |
| Firm |

4.    Client has been advised that he may represent himself without an attorney, but elects to retain Attorney who agrees to represent Client. Client agrees to cooperate fully with Attorney and to sign all forms, authorizations and documents deemed necessary in the sole discretion of Attorney. Neither party will settle or otherwise dispose of the case without the other's approval. Attorney may, in his discretion, withdraw from the case at any time with reasonable notice to Client. Client agrees to reimburse Attorney all costs incurred by Attorney on behalf of Client in pursuit of Client's interests as defined in this Agreement. Said costs include but are not limited to court fees, filing fees (including late fees), investigation fees, telephone charges, mileage, postage, travel, delivery fees, experts, photocopies/photographs and any other costs deemed necessary in the sole discretion of the Attorney in the handling of Client's legal matter (s).

5.    Client agrees to employ Attorney on a contingent fee of one-third (1/3) of the net recovery of any settlement, verdict, award or recovery. The gross recovery shall include total monies and other elements of value recovered, including, but not limited to, all past benefits, the present value of future benefits all interest and taxable costs including but not limited to the value of forgiven and/or compromised debt/provider billings. Attorney shall further be entitled to deduct all costs and expenses from the gross recovery. Net recovery shall mean the amount remaining following deduction from Gross Recovery the expenses incurred by Attorney in pursuit of the claims arising from this case.

6.    If actual attorney fees are awarded, recovered or paid pursuant to a settlement, Attorney may at its sole and exclusive option, elect to add this attorney fee to the gross recovery for purposes of computing the one-third (1/3) fee, or it may accept the actual attorney fee instead of the one-third (1/3) fee.

7.    In the event that any settlement, verdict, award or recovery is to be paid in installments, Client agrees that Attorney may, at its sole and exclusive option, elect to take the attorney fee in full at the time of the initial payment(s), or may take the attorney fees from any installment payment. In the event that Attorney elects to take the attorney fee in full at the time of the initial installment payment(s), the attorney fee shall be one-third (1/3)

of the present cash value of all of the present and future payments, after deduction of the costs and expenses as previously set forth.

8.    Client acknowledges that _____ has referred this matter to the Dailey Law Firm, PC, The client further acknowledges and understands that _____ has no responsibility in connection with the legal services which are to be performed and does not exercise any supervision or control over the performance of the legal services. The client understands that a division of fees may be made between the Dailey Law Firm, PC and _____ and the client agrees that such division of fees be permitted.

Initial

Client

Firm

9.    If there is no settlement, verdict, award or recovery in this matter, no attorney fees will be due. At the conclusion of this matter, Attorney shall provide Client with a written statement of the matter's outcome and, if there is any settlement, verdict, award or recovery, show the remittance to Client and the method of its determination.

10.    Client authorizes Attorney, in his/her sole discretion, to retain possession or dispose of Client file (s) and records after 5 years of the date of Attorney's last representation of the Client in the particular matter as to which the file is made. However, Client may obtain, after providing 30 days written notice to Attorney at Attorney's address before the 5th annual anniversary date of the last representation, a copy of Client's files provided that Client reimburses Attorney for the reasonable cost of a copy of the files requested.

11.    Client agrees that Attorney has made no promises or guarantees regarding the outcome of Client's legal matter, claim or lawsuit. Client agrees and understands that all representations made by Attorney are given in good faith and based upon his professional judgment.

12.    Client binds his heirs, executors, and legal representatives to the terms and conditions set forth in this Agreement. Client has read this contract, received a copy of it, and agrees to the terms and conditions. There are no other agreements, oral or otherwise, between Client and Attorney.

13.    In the event that there is any settlement, verdict, award or recovery in this matter, Client authorizes and grants to Attorney the power-of-attorney to sign on Client's behalf any check or draft received and to deposit said funds in the Attorney's (IOLTA) Trust Account for disbursement in accordance with this Agreement.

14.    Attorney, at its discretion, may withdraw from representation of Client at any time and on reasonable notice to Client. If Attorney has filed an appearance on behalf of Client, Attorney, at its discretion, may petition the court at any time and on reasonable notice to Client to allow Attorney to withdraw from representation of Client.

15.    Client understands and agrees that Attorney shall have all general, possessory or retaining liens, and all special or charging liens known to the common law, in addition to any statutory lien, upon Client's claim in this matter. Such lien shall attach to any settlement, verdict, award or recovery in the Client's favor and to the proceeds thereof into whomsoever's hands they may come. Attorney shall not be, in any way, obligated to waive its Attorney's lien until its Attorney fees and any and all disbursements made upon Client's behalf have been fully paid. Attorney shall not be liable to the Client in any way whatsoever for any loss Client may incur or suffer because of Attorney's exercising its attorney's lien in order to secure full payment of its legal fees and proper costs, expenses and disbursements under this Agreement.

Dated:   August 25, 2017

X_____ JODY INGRAM

Dailey Law Firm, PC
36700 Woodward Avenue
Suite 107
Bloomfield Hills, MI 48304

2

In Re: Dailey Law Firm, PC,

        Debtor.

_____/

Case No. 23-45970-mlo
Chapter 11
Hon: Maria L. Oxholm

## CERTIFICATE OF SERVICE

    I hereby certify that on August 8, 2023 the following papers were electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to the following ECF Participants:

| | |
|---|---|
| Documents Filed: | Answer to Motion of Court Appointed Receiver to Confirm Automatic Stay Is Not in Effect or in the Alternative to Life Stay as to the Interpleader Case and this Certificate of Service |
| ECF Participants: | All parties listed by the Court for service via electronic mailing |

    And I hereby certify that I mailed the documents by United States Postal Service to the following non-ECF participants:

| |
|---|
| NONE |

/s/ Jennifer L. Gamalski
Jennifer L. Gamalski
4000 Town Center, Suite 1200
Southfield, MI 48075
Phone: (248) 355-5300
Fax: (248) 355-4644
Scott M. Kwiatkowski P-67871
email scott@bk-lawyer.net

Dated: August 8, 2023