UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Dailey Law Firm PC,                          Case No. 23-45970-MLO
                                         Chapter 7
                 Debtor.                    Hon. Maria L. Oxholm
_____/

## CHAPTER 7 TRUSTEE'S MOTION TO
## REJECT COMMERCIAL LEASES

### Jurisdiction

1.      Dailey Law Firm PC ("Debtor") filed a petition for relief under

Chapter 11 of the U.S. Bankruptcy Code on July 7, 2023 (Docket #1). The case

was converted to a Chapter 7 on September 14, 2023 (Docket #127).

2.      Chapter 7 Trustee Mark H. Shapiro ("Trustee") brings this motion

under 11 U.S.C. § 365 and Fed. R. Bankr. P 6006 and 9014.

3.      The Court has jurisdiction over this Chapter 7 bankruptcy case. *See* 28

U.S.C. § 1334. The case, and all related proceedings and contested matters, have

been referred to this bankruptcy court for determination. *See* 28 U.S.C. §§ 157(a)

and 157(b); LR 83.50 (E.D. Mich.).

4.      This is a core proceeding over which this Court has authority to enter

a final order. *See* 28 U.S.C. 28 U.S.C. § 157(b)(2)(A) (matters concerning

administration of the estate) and § 157(b)(2)(O) (other proceedings affecting the liquidation of assets of the estate).

## Lease Rejection

5.      The Debtor is a tenant in the following commercial leases (together, "Leases"):

| Address | Landlord |
|---|---|
| 63 Kerchevel Avenue, Suite 215 Grosse Pointe, MI 48236 ("Kerchevel Office Lease") | 63 Kerchevel Associates, LLC |
| 201 W. Washington Zeeland, MI 49464 ("Zeeland Office Lease") | ILH, L.L.C. |

6.      The Debtor entered into the Kerchevel Office Lease on October 31, 2021, effective November 1, 2021, with an expiration date of September 30, 2026 (Exhibit A, Kerchevel Office Lease).

7.      The Kerchevel Office Lease is for shared office space, including offices A, B, and C in Suite 215.

8.      The Debtor entered into the Zeeland Office Lease on October 12, 2021, effective November 1, 2021, for 36 months, with an option to renew an additional term of three years if not in default (Exhibit B, Zeeland Office Lease).

9.      The Debtor ceased operating on September 14, 2023.

10. The Debtor used the Leases for office space to conduct business as a law firm.

11. Given the liquidation nature of these proceedings and the lack of an operating company, the Leases are not necessary for reorganization or a sale of a going concern business.

12. There is no perceived value in assuming and assigning the Leases.

13. Section 365(a) of the bankruptcy code provides in part that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

14. Under § 365(d)(3) of the bankruptcy code, the Trustee must timely perform the obligations of the debtor under the Leases, arising from and after the order for relief, until such lease is assumed or rejected. *See* 11 U.S.C. 365(d)(3).

15. Thus, the Leases are burdensome to the estate and are of inconsequential value and benefit to the estate and should be rejected.

16. Rejection of the Leases must be accomplished by motion. *See* Fed. R. Bankr. P. 6006.

17. The Trustee seeks to exercise his rights under 11 USC § 365(a) to reject the Leases, effective upon the earlier of October 31, 2023, or the entry of an order granting this Motion.

Wherefore, the Trustee requests that this Court grant his Motion as set forth in the attached proposed order and grant such further relief as the Court deems appropriate.

Steinberg Shapiro & Clark

/s/ Tracy M. Clark (P60262)
Attorney for Chapter 7 Trustee
25925 Telegraph Rd., Suite 203
Southfield, MI 48033
(248) 352-4700
clark@steinbergshapiro.com

Date: October 3, 2023

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Dailey Law Firm PC,

Case No. 23-45970-MLO
Chapter 7

Debtor.

Hon. Maria L. Oxholm

_____/

**ORDER REJECTING COMMERCIAL LEASES**

This matter is before the Court on the Chapter 7 Trustee's Motion to Reject Commercial Leases (the "Motion"). Notice of the Motion was served on the landlords and no objections were timely filed.

IT IS ORDERED that, pursuant to 11 USC §365(a) and to the extent not previously terminated by operation of law or otherwise, the following leases are rejected effective as of the earlier of October 31, 2023, or the entry of this Order:

| Address | Landlord |
|---|---|
| 63 Kerchevel Avenue, Suite 215 Grosse Pointe, MI 48236 | 63 Kerchevel Associates, LLC |
| 201 W. Washington Zeeland, MI 49464 | ILH, L.L.C. |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

| | |
|---|---|
| Dailey Law Firm PC, xx-xxx8199 | Case No. 23-45970-MLO |
| 63 Kercheval Ave., Suite 215 | Chapter 7 |
| Grosse Pointe, MI 48236 | Hon. Maria L. Oxholm |

       Debtor.

_____/

## NOTICE OF CHAPTER 7 TRUSTEE'S
## MOTION TO REJECT COMMERCIAL LEASES

Chapter 7 Trustee Mark H. Shapiro filed a motion to reject the following commercial leases: 63 Kercheval Avenue, Suite 215, Grosse Pointe, Michigan (Landlord: 63 Kercheval Associates, LLC); and 201 W. Washington, Zeeland, Michigan (Landlord: ILH, L.L.C.).

**Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the Court to grant the Trustee's motion, or if you want the Court to consider your views on the motion, then within 14 days from the date of service of this notice, you or your attorney must:

File with the Court a written objection or request for hearing, explaining your position at:[1]

   U.S. Bankruptcy Court
   211 West Fort Street
   Detroit, Michigan 48226

If you mail your objection or request for hearing to the Court for filing, you must mail it early enough so the Court will **receive** it before the 14-day period expires. All attorneys are required to file pleadings electronically.

---

[1] Objection or request for hearing must comply with F. R. Civ. P. 8(b), (c), and (e).

You must also send a copy to:

> Tracy M. Clark, Esq.
> Steinberg Shapiro & Clark
> 25925 Telegraph Rd., Suite 203
> Southfield, Michigan 48033

If an objection or request for hearing is timely filed, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of the hearing.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.

Steinberg Shapiro & Clark


/s/ Tracy M. Clark (P60262)
Attorney for Trustee
25925 Telegraph Rd., Suite 203
Southfield, MI 48033
(248) 352-4700
clark@steinbergshapiro.com

Date: October 3, 2023

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Dailey Law Firm PC,                          Case No. 23-45970-MLO
                                             Chapter 7
                    Debtor.                  Hon. Maria L. Oxholm
_____/

## CERTIFICATE OF SERVICE

I certify that on October 3, 2023, I served copies as follows:

Documents Served:      Chapter 7 Trustee's Motion to Reject Commercial
                       Leases; Notice; Certificate of Service

Served Upon:           63 Kercheval Associates, LLC
                       c/o Alan J. Taylor, Esq.
                       Segal McCambridge Singer & Mahoney
                       29100 Northwestern Hwy., Suite 240
                       Southfield, MI 48034

Method of Service:     ECF Notification Service

Served Upon:           ILH, L.L.C.
                       c/o Tyler D. Gaastra, Esq.
                       David, Wierenga & Lauka, PC
                       99 Monroe Ave. NW, Suite 1210
                       Grand Rapids, MI 49503

Method of Service:     First Class Mail

                                   /s/ Christine T. Leach, Legal Assistant
                                   Steinberg Shapiro & Clark
                                   Attorneys for Trustee
                                   25925 Telegraph Rd., Suite 203
                                   Southfield, MI 48033
                                   (248) 352-4700
                                   cleach@steinbergshapiro.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Dailey Law Firm PC,                           Case No. 23-45970-MLO
                                              Chapter 7
                    Debtor.                   Hon. Maria L. Oxholm
_____/

## EXHIBIT LIST

| Exhibit | Description |
|---------|-------------|
| A | Kercheval Office Lease |
| B | Zeeland Office Lease |

# EXHIBIT A

Kercheval Office Lease

DocuSign Envelope ID: 87D680D0-36F4-4726-A007-0C3C3BE86D50



## LICENSE AGREEMENT

DS
*BTD*

October 31, 2021

DS
*EJR*

THIS IS A LICENSE AGREEMENT ("*this Agreement*") dated as of ~~September ___, 2021~~ ("*the Effective Date*") is made by and between 63 KERCHEVAL ASSOCIATES, L.L.C., a Michigan limited liability company ("*Licensor*"), whose address is 130 Kercheval, Suite 200, Grosse Pointe Farms, Michigan 48236, and DAILEY LAW FIRM, PC, ("*Licensee*"), whose address is 63 Kercheval Avenue, Suite 215, Grosse Pointe Farms, Michigan 48236 (each a "*Party*" and collectively, "*the Parties*").

Licensor makes available to others shared office and support space at "Suites @ 63" in Licensor's building at 63 Kercheval Avenue, Grosse Pointe Farms, Michigan ("*the Building*"), including Suite 215 offices A, B and C in the Building. Licensee wants the right to use certain such space in Suite 215, and Licensor is willing to make such space available to Licensee, on the terms and conditions set forth in this Agreement.

> **This Agreement supersedes and replaces the License Agreement dated as of June 16, 2020, between the Parties ("*the 2020 License Agreement*"), effective on and after the Commencement Date (as defined in Section 2 of this Agreement).**

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

**1. Grant of License.** Licensor hereby grants to Licensee (together, "*the License*"):

    (a)    An exclusive license to use the three offices shaded in blue on **Exhibit A**.

    (b)    A non-exclusive license to use the reception area, conference room, kitchenette and hallways in Suite 215 on **Exhibit A**, which will be shared with other licensees.

The spaces referred to in Sections 1(a) and 1(b) are referred to in this Agreement collectively as "*the Licensed Space.*" The areas marked in red on **Exhibit A** are not part of the Licensed Space.

November 1, 2021 **2. Term and Commencement.** The term of this Agreement and the License will commence on ~~October 1, 2021~~ ("*the Commencement Date*") and end at 11:59 p.m., Eastern Time, on September 30, 2026. Licensee shall have free access to the Licensed Space to install furniture, fixtures, and equipment upon execution of this Agreement by the Parties.

DS
*BTD*

DS
*EJR*

**3. License Fees.** Licensee shall pay Licensor the following monthly "license fees" on the Commencement Date and on the first day of each calendar month thereafter during the term on this Agreement:

    (a)    $3,302 per month for the period beginning the Commencement Date and ending September 30, 2022;

    (b)    $3,401 per month for the period beginning October 1, 2022 and ending September 30, 2023;

    (c)    $3,503 per month for the period beginning October 1, 2023 and ending September 30, 2024.

    (d)    $3,608 per month for the period beginning October 1, 2024 and ending September 30, 2025;

    (e)    $3,716 per month for the period beginning October 1, 2025 and ending September 30, 2026.

Licensor acknowledges that it is holding the $2,500 Security Deposit that Licensee made under the 2020 License Agreement. Upon execution of this Agreement, Licensee shall pay Licensor (a) the first month's license fee and (b) an additional $1,216 to increase the Security Deposit to $3,716, which will be held in a non-interest-bearing account and may be co-mingled with Licensor's funds.

Licensor will hold the Security Deposit as security for the faithful performance by Licensee of all of its obligations under this Agreement. Licensor may, but is not obligated to, apply the Security Deposit to pay license fees or other charges in arrears or damages for Licensee's failure to perform such obligations. If and whenever Licensor so applies the Security Deposit, in whole or in part, Licensee on demand promptly shall restore the Security Deposit to its original amount. If not so applied, the Security Deposit is to be returned, without interest, to Licensee when (i) this Agreement and the License are terminated and (ii) Licensee has vacated the Licensed Space and delivered possession to Licensor.

Licensee will have a Right of First Offer to occupy and use any of the remaining offices in Suite 215 (shaded in red on **Exhibit A**) as a licensee. Landlord will not grant a license to use any of such offices to any third party without first offering them to Licensee. Licensee shall have seven days from the date it receives Licensor's offer to accept such offer in writing.

If any monthly license fee is not paid within five business days after it is due, Licensee shall pay Licensor a late charge equal to 3.00% of the overdue payment within ten days after the monthly license fee was due.

**4. Insurance, Taxes, Utilities and Other Charges.** Licensee will not be responsible for insurance (except as provided in Section 8(a) of this Agreement), real property taxes, operating expenses or utility charges for water, electricity or gas. Licensee shall be responsible for all installation and other costs associated with any wi-fi or Internet services that Licensee requires.

**5. Possession and Condition of Licensed Space; Alterations: Signage and Advertising.** Licensor will deliver possession of the Licensed Space to Licensee on the Commencement Date. Licensee has inspected the Licensed Space and will accept it on the Commencement Date in its condition on the Effective Date. Licensor will perform Licensor's Work described on **Exhibit B** before the Commencement Date. Licensee acknowledges that Licensor has no obligation whatsoever to make any other improvements or alterations to the Licensed Space or the Building. Licensee may not alter the Licensed Space or the Building in any way, and may not display signs or advertising in or on the Licensed Space or the Building, except as approved in writing by Licensor.

**6. Use and Occupancy.** During the term of this Agreement, Licensee shall use the Licensed Space only for general office purposes and in conformity with: (a) all rules and regulations at any time established by Licensor for licensees' use of space in Suites @ 63, including (without limitation) the Suites @ 63 Conference Room Use Agreement (a copy of which is attached as **Exhibit C**), which Licensee will sign on or before the Commencement Date; and (b) all applicable laws, ordinances, regulations, orders and decrees of any federal, state or local authority. Licensee shall not perform any act or carry on any activity in the Licensed Space or the Building that may injure or damage the Licensed Space or the Building or that will be a nuisance, disturbance or menace to other licensees. Licensee shall (i) maintain the Licensed Space in a clean, sanitary and safe condition and free from its own clutter and papers at all times, (ii) move its copy machine to Office C and (iii) keep all shared areas (referred to in Section 1(b) hereof) broom clean.

**7. Utilities.**

(a)     Licensor will ensure that water, electricity, gas and sewer services are available for Licensee's use in the Licensed Space during the term of this Agreement. Licensee understands that any one or more of

2

such services may be interrupted by accident, emergency or other causes beyond Licensor's control or may be discontinued or diminished temporarily until repairs, alterations or improvements can be made. Licensor will make a reasonable effort to give notice to Licensee if Licensor is aware that an interruption to such services may occur, but Licensor shall not be liable to Licensee for failure to give such notice. Licensor shall not be responsible for any such interruption in such services or for stoppages or interruptions of such services for the purpose of making necessary repairs or improvements. No failure, interruption or delay in such services shall operate as a release of Licensee from timely payment of license fees or punctual performance of any of its other duties under this Agreement, unless such services are not available for a period of 15 consecutive days. If such utilities are unavailable for more than 15 consecutive days, the license fees otherwise payable thereafter shall be abated on a per diem basis until such services are available.

(b)     Licensor shall not be liable to Licensee for any injury, loss or damage occasioned by the bursting, stoppage or leaking of water, gas, sewer or other pipes.

## 8. Indemnity, Insurance and Property Loss or Damage.

(a)     Licensee shall indemnify Licensor and save Licensor harmless from any and all liability, claims and expenses for damages to any person or property in the Licensed Space from any cause whatsoever except liabilities, claims and expenses incurred as a result of negligence and/or intentional/willful acts of Licensor, its employees, agents or contractors. During the term of this Agreement, Licensee at all times shall keep in full force policies of public liability and property damage insurance with insurance companies acceptable to Licensor with respect to the Licensed Space and the business operated therein by Licensee with limits of liability of not less than $2,000,000 per person and $3,000,000 for each accident or occurrence and $1,000,000 for property damage. Licensee shall furnish Licensor with copies of such policies or certificates of insurance therefor or evidence otherwise acceptable to Licensor that such insurance is in full force at all times during the term of this Agreement. Licensor shall be named as additional insured in all such policies and shall be notified at least 15 days before any cancellation. If Licensee fails to maintain insurance, Licensor at its option, after notice to Licensee and Licensee's failure to obtain the required insurance within 15 days of such notice, may procure the same for the account of Licensee and the cost thereof shall be paid to Licensor by Licensee immediately upon receipt by Licensee of a statement from Licensor for the cost thereof.

(b)     Licensor shall defend, indemnify and hold harmless Licensee from and against any demand, claim, cause of action, judgment, expense and all loss and damage which may arise from any injury or damage to person or property where the injury or damage or loss is caused by any negligence or misconduct of Licensor or any of Licensor's agents, employees or contractors. Licensee shall be liable for any deductible or self-insured retention under any insurance policy carried by Licensor if the loss was a result of negligent or willful acts or omissions of Licensee, its employees, agents or contractors.

9. **Waiver of Subrogation.** Each Party hereby releases and discharges the other Party, and any officer, agent, employee or representative of such other Party, of and from any liability hereafter arising from loss, damage or injury caused by fire or other casualty for which insurance is carried by the injured Party at the time of such loss, damage or injury, to the extent of any recovery by the injured Party under such insurance.

10. **Repairs and Maintenance.** Licensee shall repair the Licensed Space to the extent of any damage caused or committed by Licensee, its agents, guests, invitees, employees and/or independent contractors. Licensee immediately shall report any issue that reasonably can be anticipated to have an effect on the structural integrity of the Building for which Licensee has actual knowledge. Licensee shall keep the Licensed Space and all other parts of Suite 215 free from any and all liens arising out of any work performed, materials furnished and/or obligations incurred by or for Licensee. Licensee, its agents, employees or contractors shall not enter upon the roof of the Building without Licensor's prior written

3

consent.

**11. Licensor's Rights.** In addition to the rights specified elsewhere in this Agreement, Licensor shall have the following rights regarding the Licensed Space and the Building, each of which may be exercised without notice or liability to Licensee:

    (a) Licensor may install such signs, advertisements, notices or other identification information as it shall reasonably deem necessary or proper;

    (b) Licensor shall have the right, at any time, to change or otherwise alter the Building so long as it does not materially affect Licensee's use of the Licensed Space;

    (c) Licensor shall have the right, in Licensor's sole discretion, to reconfigure or amend the electrical, water, natural gas, heating and cooling, sewer and/or fire suppression systems contained within the Building in any manner that Licensor desires so long as any action taken relative to such systems conforms with the applicable building codes and Licensor has obtained a permit from the appropriate governmental authority.

    (d) Licensor reserves the right to relocate Licensee to an "office" of similar size and finish in the Building. Licensor shall provide Licensee with a 45-day relocation notice and will pay Licensee's reasonable moving costs. Licensee's license fees shall be adjusted on a pro-rated basis if the licensed space in the relocated "office" differs in gross square footage from the Licensed Space. Licensee shall have the right to terminate this Agreement rather than relocating at the end of the 45-day relocation notice period. Licensee shall exercise its right to terminate this Agreement rather than relocate by giving Licensor written notice of termination within 30 days after Licensee receives the 45-day relocation notice.

Licensor or its representatives shall be permitted to inspect the Licensed Space at any time by providing Licensee with reasonable advance notice, and Licensor shall have the right to make any repairs, alterations, improvements or additions to the Licensed Space that Licensor deems necessary or desirable. If an event occurs that reasonably could affect the structural integrity of the Building, Licensor shall have the right to enter the Licensed Space without providing notice to Licensee and without incurring liability for such entry. If Licensee is not present to provide access to the Licensed Space at any time when such entry is necessary or permitted hereunder, Licensor's representatives may enter the Licensed Space by using a master or pass key or otherwise. Licensor shall incur no liability for such entry.

**12. Defaults and Remedies.** If either Party shall fail to perform any obligations under this Agreement (the "*Breaching Party*") and such failure continues for 30 days after written notice from the other Party (the "*Non-Breaching Party*") specifying such default, the Non-Breaching Party, at its option and with written notice to the Breaching Party, may terminate this Agreement, *provided, however*, that if the nature of Breaching Party's failure cannot reasonably be cured within such 30-day period, the time for curing such failure shall be extended for such period of time as may be necessary to complete such cure, so long as Breaching Party proceeds promptly, in good faith and with due diligence, to effect such cure.

**13. Surrender of Possession.** Upon the expiration of the term of this Agreement or earlier termination, (a) Licensee's right to occupy the Licensed Space and exercise the privileges and rights granted under this Agreement shall cease, (b) Licensee shall vacate and surrender the Licensed Space in good order, repair and condition, normal wear and tear excepted, and (c) Licensor immediately shall revoke Licensee's physical access to both the Licensed Space and Building. If any goods, equipment, supplies, furniture, furnishings, machinery, appliances and other personal property belonging to Licensee remain anywhere within the Licensed Space or the Building, Licensor may dispose of any of the foregoing without liability

4

to Licensee, *provided* that upon Licensee's request Licensor shall provide Licensee with access to the Leased Space or the Building for five days after such expiration or termination to remove such property.

**14. Holding Over.** If Licensee holds over after expiration of the term of this Agreement or earlier termination, the monthly license fee automatically shall be increased to 175% of the license fee in effect for the month immediately preceding such expiration or termination.

**15. Subordination.** This Agreement shall be subordinate to any existing and future mortgage covering the Building or the land it occupies.

**16. No Assignment.** This Agreement and the License are personal to Licensee. Licensee shall not assign or sublicense its rights hereunder or thereunder without the prior written consent of Licensor.

**17. Entire Agreement.** This Agreement constitutes the entire agreement of the Parties with respect to the Licensed Space. Any earlier agreements between the Parties, whether written or oral, are of no force or effect except that the 2020 License Agreement will remain in effect until the Commencement Date. This Agreement cannot be changed, modified or discharged except by a written agreement signed by the Parties.

**18. No Recording.** Neither this Agreement nor any memorandum of this Agreement shall be recorded.

**19. No Property Interest.** This Agreement is, and is intended by the Parties to be, a mere license and not a lease, and it does not grant or create any interest in real property.

**20. Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed as of the Effective Date.

**LICENSOR:**

63 KERCHEVAL ASSOCIATES, L.L.C.

By _____
A83C80C06C894A9...
    Edward J. Russell III, Member

**LICENSEE:**

THE DAILEY LAW FIRM, PC

By _____ 10/31/2021
    Brian Dailey, Principal

5

# EXHIBIT A
## FLOOR PLAN

### Suite 215, 63 Kercheval Avenue, Grosse Pointe Farms, Michigan

DocuSign Envelope ID: 87D680D0-36F4-4726-A007-0C3C3BE86D50

# EXHIBIT B
## LICENSOR'S WORK

Licensor will perform the following work at its sole expense before the Commencement Date:

1. Replace the glass with drywall and paint the drywall as shown on Exhibit A.
2. Install curtain as shown on Exhibit A.
3. Install a TV set in the conference room.

# EXHIBIT C

### Suites @ 63 Conference Room
### USE AGREEMENT

## PURPOSE

This Agreement establishes the policies, terms, and conditions to use the conference room located on the second floor of 63 Kercheval Ave, Grosse Pointe, MI 48236.

## CONFERENCE ROOM POLICIES

The conference room is provided as a free of charge service to tenants of the building. The landlord reserves the right to allow or deny usage to any user for any reason.

The conference room is available for use Monday – Friday from 7:00 am to 7:00pm.

## RESERVATIONS

Tenants wishing to use a conference room may make advance booking for a **maximum of three (3) hours per day**. The conference room may be booked seven (7) calendar days in advance. All users of the conference room will need to sign in and reserve the conference room online without exception.

A Licensee representative must sign this form prior to occupying the room.

## HOUSEKEEPING PROCEDURES

* Food and alcoholic drinks are not permitted in the conference room at any time
* All personal items must be removed from the conference room when not in use. If personal items are not removed then the building custodial staff will discard them at the end of the day.
* Nothing may be affixed or mounted in any way to the walls of the conference room, except where tackable surfaces are provided

I understand and agree to the above Suites @ 63 Conference Room Use Agreement

User Name: _Brian Deily for Deily Law Firm - PL_

# EXHIBIT B

## Zeeland Office Lease

# COMMERCIAL LEASE AND DEPOSIT RECEIPT

**Dailey Law Firm, PC** of 63 Kercheval Ave, Suite 215, Grosse Pointe Farms, MI 49236 hereinafter referred to as LESSEE and **ILH LLC**, hereinafter referred to as Lessor agree to the following:

Lessee hereby offers to lease from Lessor the premises situated in the City of Zeeland, County of Ottawa, State of Michigan, described as **201 W. Washington**, upon the following terms and conditions:

**Lease starts 1/01/2021 for 36 months** — BD / BL

1. **TERM:** The term shall commence on ~~October 1, 2021~~ and expire after a term of 3 years. **1/01/2021 BL** BL
   The Lessee by executing this lease accepts the buildings, improvements, and any equipment on or in the leased premises in their existing condition. Any damaged or unfinished drywall will be finished before the commencement date. No representation, statement or warranty, express or implied, has been made by or on behalf of the Lessor as to such condition or as to the use that may be made of such property. Lessee agrees to accept the premises subject to any existing building and use restriction, zoning ordinances, easements and the Lessor's use of the premises as set forth herein. In no event shall the Lessor be liable for any defect in such property or for any limitation on its use. In the case of the suite being occupied at an earlier or later date the lease will be prorated.

2. **OPTION TO RENEW:** Provided that Lessee is not in default in the performance of this lease, Lessee shall have the first right to renew the lease for an additional term of three (3) years at rates to be negotiated. The option shall be exercised by written notice given to Lessor not less than 60 days prior to the expiration of the initial lease term. If notice is not given in the manner provided herein within the time specified, this option shall expire.

3. **RENT:** The monthly rent shall be $610 per month for 320 square feet on the upper floor and 100 square feet on the lower level, payable in advance due on the twenty fifth of each month. All rents shall be paid to Lessor or his authorized agent, at the following address ILH,LLC, 201 W. Washington Suite 310, Zeeland, MI 49464, or at such other places as may be designated by Lessor from time to time. The Lessee shall have the opportunity to relocate in the building at mutually agreeable terms during the duration of the lease. The space is leased as is other than the agreed upon dividing wall by the Lessor. All other changes are the responsibility of the Lessee. The Lessee shall pay the amount of $375 for the construction of a wall and door to the storage space upon lease initialization.

   Late Payment Penalty: If Lessee fails to pay any rent or other billed additional charges within 3 days of the day when due, the amount delinquent will be subject to a late charge of $100 and will also bear interest at the lesser of 15 percent per month or the highest lawful rate until paid in full. The late charges and interest will be due immediately upon demand. Since Lessee has adequate legal remedies, Lessee will pay all rent and other sums due Lessor in full without deduction or set-off for any claims of Lessee.

4. **USE:** The premises are to be used for an office for Lessee, and for no other purpose, without prior written consent of Lessor.

5. **USES PROHIBITED:** Lessee shall not use any portion of the premises for purposes other than those specified hereinabove, and no use shall be made or permitted to be made upon the premises, nor acts done, which will increase the existing rate of insurance upon the property, or cause cancellation of insurance policies covering said property.

6. **ASSIGNMENT AND SUBLETTING:** Lessee shall not assign this lease or sublet any portion of the premises without prior written consent of the Lessor, which shall not be unreasonably withheld. Lessor's grant of consent to assign on one occasion shall not be deemed a waiver of its right to refuse to grant consent to assign on subsequent occasions. Notwithstanding any permitted assignment or subletting, Lessee shall at all times remain fully responsible and liable for the payment of the rent herein specified and for compliance with all of Lessee's other obligation under the terms, provisions and covenants of this lease. Any such assignment or subletting without consent shall be void and, at the option of the Lessor, may terminate this lease.

7. **ORDINANCES AND STATUTES:** Lessee shall comply with all statutes, ordinances and requirements of all municipal, state and federal authorities now in force, or which may hereafter be in force, pertaining to the premises, occasioned by or affecting the use thereof by Lessee. The commencement or pendency of any state or federal court abatement proceeding affecting the use of the premises shall, at the option of the Lessor, be deemed a breach hereof.

8. **MAINTENANCE, REPAIRS:** Lessee acknowledges that the premises are in good order and repair, unless otherwise indicated herein. Lessee shall, at his own expense and at all times, maintain the premises in good and safe condition, including plate glass, electrical wiring, plumbing and heating installations and any other system or equipment upon the premises and shall surrender the same, at termination hereof, in as good condition as received, normal wear and tear excepted. Lessor shall be responsible for all repairs required to the roof, exterior walls, and structural foundations. Lessor shall also maintain in good condition such portions adjacent to the premises, such as sidewalks, parking lots, driveways, lawns and shrubbery, which affect the premises. Lessee shall not commit any waste upon the premises, or any nuisance or act which may disturb the quiet enjoyment of any Lessee in the building.

9. **ALTERATION:** No alteration, addition or improvement to the leased property shall be made by the Lessee without written notice to and consent of the Lessor. If the Lessor objects to the proposed improvement, he shall so notify Lessee in writing within 10 days. If the Lessor does not object, the consent requirement herein will be satisfied. Any alteration, addition or improvement made by the Lessee after such consent shall have been given, and fixtures installed as part thereof, shall at the Lessor's option become the property of the Lessor upon the expiration or other sooner termination of this lease; provided, however, that the Lessor shall have the right to require the Lessee to remove such fixtures at the Lessee's cost upon such termination of this lease, and in that event, the Lessee shall, at its sole cost, restore the lease premises to the same condition they were in at the beginning of the lease term. Provided, however, Lessee shall have right to remove trade fixtures so long as damage of installation and removal is completely repaired.

   Liens: Lessee agrees to indemnify and save Lessor harmless on account of any claim or lien of mechanics, material men or others in connection with any repairs, alteration, additions or improvements of or to the Demised Premises including those to which Lessor may have given its consent. If any such lien if filed, Lessee shall cause same to be removed or shall take appropriate legal action to have lien removed within 30 days. Lessee shall furnish such waiver or waivers of liens and appropriate affidavits from the general contractor or subcontractors as Lessor may require before Lessee starts any such work.

10. **ENTRY AND INSPECTION:** Lessee shall permit Lessor or Lessor's agents to enter upon the premises at reasonable times and upon reasonable notice, for the purpose of inspecting the same, and will permit Lessor at any time within sixty (60) days prior to the expiration of his lease, to place upon the premises any usual "For Lease" signs, and permit persons desiring to lease the same to inspect the premises thereafter.

11. **INDEMNIFICATION OF LESSOR:** Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof, and Lessee agrees to hold Lessor harmless from any claims for damages, no matter how caused.

12. **POSSESSION:** At execution of Lease, Lessee is in possession of Premises and accepts such in its "as is" condition.

13. **REAL ESTATE TAXES:** Lessee shall not be responsible for the cost of the real estate taxes for the premises.

1

**Back to top**

14. **INSURANCE:** Lessee shall not be responsible for the cost of the real estate insurance for the premises. Lessee agrees that all personal property upon the Demised Premises shall be there at the risk of Lessee only and that Lessor shall not be liable for any damage thereto or theft thereof. Lessee shall indemnify and save harmless Lessor against and from all liabilities, obligations, damages, penalties, claims, costs and expenses, incurred as a result of any breach by Lessee, Lessee's agents, contractors, employees, invitees, or licensees of any covenant or condition of this lease or the carelessness, negligence or improper conduct of the Lessee, Lessee's agents, contractors, employees, invitees, or licensees.

15. **UTILITIES:** Lessee shall not be responsible for the payment of any utilities, including water, gas, electricity, heat and other services delivered to the premises. Lessee is responsible for telephone and data services.

16. **SIGNS:** Lessee shall not construct any projecting sign or awning without the prior written consent of Lessor which consent shall not be unreasonably withheld.

17. **ABANDONMENT OF PREMISES:** Lessee shall not vacate or abandon the premises at any time during the term hereof, and if Lessee shall abandon or vacate the premises, or be dispossessed by process of law, or otherwise, any personal property belonging to Lessee left upon the premises shall, at the option of the Lessor, be deemed to be abandoned.

18. **CONDEMNATION:** If any part of the premises shall be taken or condemned for public use, and a part thereof remains which is susceptible of occupation hereunder, this lease shall, as to the part taken, terminate as of the date the condemnor acquires possession, and thereafter Lessee shall be required to pay such proportion of the rent for the remaining term as the value of the premises remaining bears to the total value of the premises at the date of condemnation; provided however, that Lessor may at his option, terminate this lease as of the date the condemnor acquires possession. In the event that the demised premises are condemned in whole, or that such portion is condemned that the remainder is not acceptable for use hereunder, this lease shall terminate upon the date upon which the condemnor acquires possession. All sums which may be payable on account of any condemnation shall belong to the Lessor, and Lessee shall not be entitled to any part thereof, provided however, that Lessee shall be entitled to retain any amount awarded to him for his trade fixtures or moving expenses.

19. **TRADE FIXTURES:** Any and all improvements made to the premises during the term hereof shall belong to the Lessor, except trade fixtures of the Lessee. Lessee may, upon termination hereof, remove all his trade fixtures, but shall repair or pay for all repairs necessary for damages to the premises occasioned by removal.

20. **DESTRUCTION OF PREMISES:** In the event of a partial destruction of the premises during the term hereof, from any cause, Lessor shall forthwith repair the same provided that such repairs can be made within ninety (90) under existing governmental laws and regulations, but such partial destruction shall not terminate this lease, except that Lessee shall be entitled to a proportionate reduction of rent while such repairs are being made, based upon the extent to which the enjoyment of such repairs shall interfere with the possession of Lessee on the premises. If such repairs cannot be made within said ninety (90) days, Lessor, at his option, may make the same within a reasonable time, this lease continuing in effect with the rent proportionably abated as aforesaid, and in the event that Lessor shall not elect to make such repairs which cannot be made within ninety (90) days, this lease may be terminated at the option of either party.

In the event that the building in which the demised premises may be situated is destroyed to an extent of not less than one-third of the replacement costs thereof, Lessor may elect to terminate this lease whether the demised premises be injured or not. A total destruction of the building in which the premises may be situated shall terminate this lease.

21. **HAZARDOUS SUBSTANCES.** The term "Hazardous Substances," as used in this lease shall mean pollutants, contaminants, toxic or hazardous wastes, or any other substances, the use and/or the removal of which is required or the use of which is restricted, prohibited or penalized by an "Environmental Law," which term shall mean any federal, state or local law, ordinance or other statute of a governmental or quasi-governmental authority relating to pollution or protection of the environment. Lessee hereby agrees that (a) no activity will be conducted on the premises that will produce any Hazardous Substance; (b) no portion of the premises will be used as a landfill or a dump; and (c) Lessee will not permit any Hazardous Substances to be brought onto the premises. Should it be determined, in Lessor's sole opinion, that said materials are being improperly stored, used, or disposed of, the Lessee shall immediately take such corrective action as required by Lessor. Should Lessee fail to take such corrective action within 24 hours, Lessor shall have the right to perform such work and Lessee shall promptly reimburse Lessor for any and all costs associated with said work. If at any time during or after the term of the lease, the premises is found to be so contaminated or subject to said conditions arising from or as a result of the use of the premises by Lessee, Lessee shall diligently institute proper and thorough cleanup procedures at Lessees' sole cost, and Lessee agrees to indemnify and hold Lessor harmless from all claims, demands, actions, liabilities, costs, expenses, damages, and obligation of any nature. The foregoing indemnification and the responsibilities of Lessee shall survive the termination or expiration of this lease. Provided, however, Lessee shall not be responsible for any contamination in existence prior to Lessee's occupancy.

22. **DEFAULT:** In the event of any default by Lessee in the payment of any rent provided for herein on the day it becomes due and payable, and if such default continues for Ten (10) days, or if default shall be made or suffered by Lessee in any of the other covenants and conditions of this Lease required to be kept or performed by Lessee (other than payment of rent), and if Lessee fails to cure such default or defaults within Fifteen (15) days after written notice thereof given by Lessor to Lessee, specifying the default or defaults complained of; or if Lessee shall become insolvent or make an assignment for the benefit of creditors, file, or have filed against it, a petition in bankruptcy, which shall not be vacated, set aside or dismissed within Thirty (30) days, or seek the benefit of any bankruptcy, composition or insolvency law or act, or if Lessee shall be adjudged a bankrupt, or if Lessee's leasehold interest herein shall be levied on execution, or a receiver be appointed for Lessee, whether by virtue of state or Federal law; then Lessor may, in addition to any other remedy, re-enter into and repossess the Premises and remove Lessee and every other occupant, and may relet the Premises or any part thereof for any term, either shorter, longer, or the same, at a higher, lower, or the same rental, making such alterations as may be necessary, without working a termination of this Lease; provided, however, that Lessor, at its option, may, in any of such events, terminate this Lease effective on the date specified in written notice from Lessor to Lessee.

23. **REMEDIES ON DEFAULT:** In the event of any default of this lease by Lessee, Lessor may, at his option, terminate the lease and recover from Lessee: (a) the worth at the time of award of the unpaid rent which was earned at the time of termination; (b) the worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of the award exceeds the amount of such rental loss that the Lessee proves could have been reasonably avoided; (c) the worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that Lessee proves could be reasonably avoided; and (d) any other amount necessary to compensate Lessor for all detriment proximately caused by Lessee's failure to perform his obligations under the lease or which in the ordinary course of things would be likely to result therefrom. Lessor may, in the alternative, continue this lease in effect, as long as Lessor does not terminate Lessee's right to possession, and Lessor may enforce all his rights and remedies under the lease, including the right to recover the rent as it becomes due under the lease. If said breach of lease continues, Lessor may, at any time thereafter, elect to terminate the lease. Nothing contained herein shall be deemed to limit any other rights or remedies which Lessor

2

Back to top

24. **DEPOSIT:** A one month security deposit shall be paid upon lease signature. Lessor may, but shall not be obligated to apply all or portions of said deposit on account of Lessee's obligations hereunder. Any balance remaining upon termination shall be returned to Lessee. Lessee shall not have the right to apply the security deposit in payment of the last month's rent

25. **ADVICE OF COUNSEL.** The Lessor and Lessee herewith acknowledge that each has retained an attorney to advise them as to all aspects of this transaction.

26. **ARBITRATION AND ATTORNEY'S FEES:** In the event of any dispute, the prevailing party will have its attorney fees reimbursed by the losing party.
   In the event of any dispute between Lessor and Lessee with respect to the provisions hereof, the matter shall be settled by arbitration in such a manner as the parties may agree upon, or if they cannot agree, in accordance with the rules of the American Arbitration Association.

27. **WAIVER:** No failure of Lessor to enforce any term hereof shall be deemed to be a waiver.

28. **NOTICES:** Any notice which either party may or is required to give, shall be given by mailing the same, postage prepaid, to Lessee at the premises, or Lessor at the address shown below, or at such other places as may be designated by the parties from time to time:

    ILH LLC.
    201 W. Washington Suite 310
    Zeeland, MI 49464

29. **HOLDING OVER:** Any holding over after the expiration of this lease, with the consent of Lessor, shall be construed as a month-to-month tenancy at the same rate if a renewal is not negotiated, otherwise in accordance with the terms hereof, as applicable

30. **TIME:** Time is of the essence of this lease.

31. **HEIRS, ASSIGNS, SUCCESSORS:** This lease is binding upon and inures to the benefit of the heirs, assigns and successors in interest to the parties.

32. **SURRENDER UPON TERMINATION:** At the expiration of the lease term the Lessee shall surrender the leased property in as good condition as it was in at the beginning of the term, reasonable use and wear and damage by the elements excepted. Lessee shall not abate or abandon the leased premises during the term of the lease. If the premises are vacated or abandoned, or at the end of the lease term, any personal property owned by Lessee which is left on the premises shall, at the option of the Lessor, be deemed abandoned and the Lessor may dispose of the same. The Lessee agrees to pay the cost related to removing, storing and disposing of such personal property

33. **LESSOR'S LIABILITY:** The term "Lessor," as used in this paragraph, shall mean only the owner of the real property or a Lessee's interest in a ground lease of the premises. In the event of any transfer of such title or interest, the Lessor named herein (or the grantor in case of any subsequent transfers) shall be relieved of all liability related to Lessor's obligations to be performed after such transfer. Provided, however, that any funds in the hands of Lessor or Grantor at the time of such transfer shall be delivered to Grantee. Lessor's aforesaid obligations shall be binding upon Lessor's successors and assigns only during their respective periods of ownership. The Lessor shall not be liable for any injury or damage to person or property occurring within the leased property. The Lessor shall not be liable for any personal injury to the Lessee or its officers, agents and employees or for any damage to any property of the Lessee irrespective of how such injury or damage may be caused, whether from the action of the elements or acts of negligence.

34. **MUTUAL RELEASES.** Lessor and Lessee, and all parties claiming under them, hereby mutually release and discharge each other from all claims and liabilities arising from or caused by any hazards covered by insurance on the Premises, or covered by insurance in connection with the Premises on, or activities conducted on the Premises regardless of the cause of the damage or loss

35. **ESTOPPEL CERTIFICATE:**
    (a) Lessee shall at any time upon not less than **ten (10) days prior written notice** from Lessor execute, acknowledge and deliver to Lessor a statement in writing [1] certifying that this Lease is unmodified and in full force and effect (or, if modified, stating the nature of such modification and certifying that this lease, as so modified, is in full force and effect), the amount of any security deposit, and the date to which the rent and other charges are paid in advance, if any, and [2] acknowledging that there are not, to Lessee's knowledge, any uncured defaults on the part of Lessor hereunder, or specifying such defaults if any are claimed. Any such statement may be conclusively relied upon by any prospective purchaser or encumbrancer to the Premises.
    (b) At Lessor's option, Lessee's failure to deliver such statement within such time shall be a material breach of this Lease or shall be conclusive upon Lessee [1] that this lease is in full force and effect, without modification excepted as may be represented by Lessor, [2] that there are no uncured defaults in lessor's performance, and [3] that not more than one month's rent has been paid in advance or such failure may be considered by Lessor as a default by Lessee under this lease.
    (c) If Lessor desires to finance, refinance, or sell the Premises, or any part thereof, Lessee hereby agrees to deliver to any lender or purchaser designated by Lessor such financial statements of Lessee as may be reasonably required by such lender or purchaser. Such statements shall include the past three years' financial statements of Lessee. All such financial statements shall be received by Lessor and such lender or purchaser in confidence and shall be used only for the purposes herein set forth.

**ENTIRE AGREEMENT:** The foregoing constitutes the entire agreement between the parties and may be modified only by a writing signed by both parties

3

Back to top

The undersigned Lessee hereby acknowledges receipt of a copy hereof.

DATED: Oct 12 2021

_____ Lessee

Brian Dailey

By ___Brian Dailey_____

Its: CEO

## ACCEPTANCE

The undersigned Lessor accepts the foregoing offer and agrees to lease the herein described premises on the terms and conditions herein specified.

The undersigned Lessor hereby acknowledges receipt of a copy hereof.

DATED: 9.9.2021

ILH, LLC _____ Lessor

By ___Bryan Lasser_____

Its: Member

4

Back to top

## Signatures

Date: Oct 13 2021

Signature: _Bryan Lanser_
Bryan Lanser

Back to top

5